**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHEASTERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM and JULIE HULL, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) | Case No. 17-cv-8085 |
| Plaintiffs, | ) ) ) | Judge <br> Magistrate Judge |
| COOK COUNTY; LAW OFFICE OF THE COOK COUNTY PUBLIC DEFENDER; AMY CAMPANELLI, in her official and individual capacity as Public Defender of Cook County; and THOMAS DART, in his official and individual capacity as Sheriff of Cook County, | ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

**COMPLAINT**

The Named Plaintiffs Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim and Julie Hull ("Plaintiffs") on behalf of themselves and a class of similarly situated persons, complain of the Defendants Cook County; Law Office of the Cook County Public Defender; Public Defender Amy Campanelli (Official Capacity); Amy Campanelli (Individual Capacity); Cook County Sheriff's Office; Cook County Sheriff Thomas Dart (Official Capacity); and Thomas Dart (Individual Capacity), as follows:

**Nature of the Action**

1.      Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim and Julie Hull bring this class action lawsuit against Defendants for causing and conspiring to cause female Assistant Public Defenders ("APDs") and female law clerks in the Law Office of the Cook County Public Defender to suffer a continuing severe and/or pervasive

1

hostile work environment on the basis of sex in violation of the Equal Protection Clause of the United States Constitution and pursuant to 42 U.S.C. §§1983, 1985(3) and 1986 and the Illinois Gender Violence Act, 740 ILCS 82/1 et seq.

2.      Public Defenders like the Plaintiffs and the class they represent are tasked with defending the legal rights of those who do not have access to private attorneys. Law clerks are students, many of whom are allowed to practice law in a limited capacity and under the supervision of a licensed attorney, and assist APDs with cases.

3.      Plaintiffs and the APDs represent some of society's most vulnerable members. They work every day to protect their clients' rights and litigate their cases, often with very few resources. The work is grueling and their caseloads are heavy, but they are almost uniformly driven by their love of the important work they do. However, as a result of a toxic work environment caused and perpetuated by Defendants in concert, they are forced to regularly endure heinous sexual misconduct, robbing many of their love of the job, maybe permanently.

4.      For at least two years, and continuing through the present, female APDs and law clerks have been increasingly subjected to offensive incidents whereby male detainees in the courtroom lockups and Divisions 9 and 10 of the Cook County Jail (collectively, "detainees") have repeatedly exposed their penises, masturbated, and engaged in other acts of sex-based aggression, verbal threats and harassment, and on an almost daily basis.

5.      Defendants have been aware of this offensive and dangerous conduct by detainees for more than two years but have knowingly permitted it to continue. As a result of Defendants' actions and inactions, incidents of obscene exposure, masturbation, and harassment against female APDs have increased in frequency and severity. See Exhibit I, Campanelli/CCPD Flowchart; Exhibit B, March 21, 2017 Campanelli Letter to Dart.

6.     Male APDs are not similarly targeted by detainees for indecent exposure, masturbation, assault, and battery. To the contrary, detainee masturbation and exposure in lockup and at the jail is specifically and systematically directed toward female APDs and law clerks.

7.     As a result of Defendants' deliberate actions and inactions in concert, female APDs and law clerks have suffered and continue to suffer significant damages, including but not limited to severe emotional distress and trauma, both emotional and physical.

## Jurisdiction and Venue

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 and 42 U.S.C. §§1985 and 1986. The Court has supplemental jurisdiction over Count III which arises under Illinois law pursuant to 28 U.S.C. §1367(a).

9.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Defendants reside in this District and the events giving rise to this suit occurred therein.

## The Parties

10.     Plaintiffs are female attorneys who are currently employed as APDs by Defendants County of Cook and the Law Office of the Cook County Public Defender (hereafter, "the County" and the "CCPD," respectively). They were hired on or about the dates noted: Ms. Brown May 2013; Ms. Crayton June 2010; Ms. Addyman 2010; Ms. Knierim February 2010; Ms. Slonim February 2010; and Ms. Hull August 1986.

11.     Defendant Cook County is a municipality organized under the laws of the State of Illinois.  55 ILCS 5/1-1001 et seq.

12.     The CCPD is an independent agency within the County and provides legal representation to indigent persons in criminal and related proceedings and is organized under the laws of Illinois, 55 ILCS 5/3-4000 et seq.

13.     Defendant Amy Campanelli ("Campanelli") is the Cook County Public Defender. She was appointed to this office by the Cook County Board of Directors and its President in or about March 2015 pursuant to the laws of Illinois, 55 ILCS 5/3-4004.1. Defendant Campanelli's actions complained of herein were taken under color of state law and were related to the performance of the duties of her office. She is sued in her official and individual capacities.

14.     Defendant Campanelli is a policy maker for the Cook County Public Defender's Office and has final policy making authority for the Cook County Public Defender's Office with regard to her acts and conduct alleged herein.

15.     The Cook County Sheriff's Office is organized under the laws of Illinois pursuant to 55 ILCS 5/3-6001 et seq. Defendant Thomas Dart is the Sheriff of Cook County having been elected in 2006. The Sheriff has authority and responsibility over the custody and care of the jails and courthouses in Cook County pursuant to 55 ILCS 5/3-6017. Defendant Dart and his deputy sheriffs assigned to the Courtroom Services Division are responsible for all aspects of court security, which includes "inmate control." http://www.cookcountysheriff.org/courtservices/CourtroomServices.html

16.     At all times relevant to this complaint, Defendant Dart's actions complained of herein were taken under color of state law and were related to the performance of the duties of his office. He is sued in his official and individual capacities.

17.     Defendant Dart is a policy maker for the Sheriff's Office and has final policy making authority for the Sheriff's Office with regard to his acts and conduct alleged herein.

**Relevant Facts**

18.     Defendant CCPD currently employs over 400 public defenders, of which over 60% are female.  See https://www.cookcountyil.gov/service/employment-public-defender

4

19.     APDs provide legal services to, *inter alia*, detainees in Cook County jails throughout Cook County and in the Cook County Department of Corrections ("CCDOC") lockups at courthouses within the Circuit Court of Cook County, including in the Leighton Criminal Courts Building ("Leighton") located at 26th Street and California Avenue, and at the Cook County Jail.

20.     The CCDOC lockups are holding areas in each of the courthouses where detainees and pre-trial detainees wait for court proceedings and where APDs and law clerks meet their clients at the courthouses.

21.     APDs and law clerks also meet with their clients in the Cook County Jail, including clients housed in Division 9 or 10, which are considered maximum security and super max facilities.

22.     Defendants are fully aware and have knowledge of the following facts.

23.     During the last two years, the named Plaintiffs and other similarly situated female APDs and law clerks have been repeatedly and increasingly subjected to incidents of indecent exposure, masturbation, assault and battery. Specifically, when female APDs and law clerks are visiting their clients in lockup or in Divisions 9 and 10 of the Cook County Jail, male detainees regularly expose their penises to female APDs and law clerks, attempt and threaten to assault female APDs and law clerks, and masturbate at female APDs and law clerks, often with their penises fully exposed. The detainees' actions are made aggressively and with the intent to threaten female APDs and law clerks.

24.     These incidents occur on a daily basis, and some female APDs have been subjected to multiple incidents, by multiple detainees on the same day.

25.     Almost all female APDs and law clerks have been subjected to masturbation or exposure incidents by male detainees in Divisions 9 and 10 of the Cook County jail and/or courtroom lockups.

26.     Many of the clients represented by APDs and law clerks are in custody.  As a result, visiting pre-trial detainees in the courthouse lockups and jail is an essential job requirement. Defendants have provided no other place for APDs and law clerks to meet face-to-face with their clients except the courthouse lockup or jail.

27.     It is necessary for APDs to meet with and to have confidential conversations with their clients face-to-face during the course of the representation, including to review and discuss discovery, evidence, plea offers and strategy. Female APDs and law clerks visit clients at the jail and/or courthouse lockup on a weekly and often daily basis.

**Courtroom Lockups**

28.     When female APDs or law clerks visit male clients in lockup, as many as twenty or more male detainees may be detained in the same holding area with them. During these visits, APDs and law clerks attempt to speak quietly and confidentially with their clients through the bars, window and/or door, while other detainees are generally sitting or standing in the background. While a female APD or law clerk is conversing with her client, another detainee will frequently walk behind the client in full view of the female APD or law clerk and expose himself and/or masturbate, including with his penis fully exposed, while staring threateningly at the female APD or law clerk.

29.     There is also an Illinois Department of Corrections ("IDOC") lockup facility in Leighton's basement. APDs are allowed to visit IDOC detainees in the basement lockup but are not similarly subjected to sexual harassment because those detainees are shackled and/or

handcuffed, unlike in the CCDOC section of the lockup at Leighton.

**Divisions 9 and 10 of the Cook County Jail**

30.     Masturbation and indecent exposure by detainees also occurs with great frequency in the Cook County Jail, in particular in Divisions 9 and 10, which are maximum security divisions where thousands of male detainees are housed. All of these detainees have been classified as requiring "super-max" and maximum security facilities.

31.     When a female APD or law clerk visits a client in Division 9 they are required to walk through the facility unescorted, and go directly to the tiers where the detainees are housed. They meet with their clients inside of a room on the tier that has a large window in both the wall and adjacent door. There is also a large window in the wall and adjacent door to the individual tiers/housing units where detainees are housed directly kitty corner to, and within view of, the room where APDs and/or law clerks meet with their clients.

32.     On the other side of a narrow hallway, and slightly elevated, is a room that is manned by at least one Cook County Sheriff's Correctional Officer. From this location, the Cook County Sheriff Correctional Officer has a clear view of both the detainees in the housing units and the attorney-client consultation room.

33.     Other detainees in the surrounding hallways and housing units can see the attorneys as they enter the room in Division 9, and can see into the room while the attorney is meeting with their client. Detainees often crowd around the glass and expose themselves and/or masturbate through the windows while staring lewdly and aggressively at female APDs and law clerks as they attempt to discuss legal matters with their clients.

34. When a female APD or law clerk visits a client in Division 10 of the Cook County Jail, they are locked in a room with their clients sitting directly next to them in close proximity. The room is surrounded by Plexiglas and is commonly referred to as a fish bowl.

35. Detainees housed in Division 10 are given free rein to move thru the corridor directly next to the room where the attorney-client consultations occur. On the other side of this corridor is a sheriff's station that is manned by at least one Cook County Sheriff's Correctional Officer.

36. Other detainees can see into the room where the attorneys or law clerks are meeting with their clients. The Cook County Sheriff's officer also has a clear view of both the detainees in the housing units and the attorney-client consultation room.

37. Detainees also congregate around the glass to their housing unit and expose/masturbate at the female APD and law clerks while staring at them in a lewd and threatening manner.

38. Because the rooms in Division 10 are locked, APDs and law clerks cannot leave the room until a Sheriff unlocks the door, removes the client, and then unlocks a separate door to allow the attorney to exit. Each of these processes often takes several minutes.

**Named Plaintiffs**

39. Ms. Brown has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. As just one example, in approximately January 2017, a detainee exposed himself and masturbated to Ms. Brown on two separate occasions in the same day. That detainee was removed from lockup only to be followed by a second detainee who exposed himself to Ms. Brown, later that day in the same lockup. See Exhibit C, Brown EEOC Class Charges.

8

40.     Ms. Crayton has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. There have been weeks when Ms. Crayton experienced a detainee exposure or masturbation incident every day. As just one example, on or about October 3, 2017, Ms. Crayton was speaking with a client in lockup and another detainee exposed his penis and masturbated while standing behind him in Ms. Crayton's line of sight. Ms. Crayton told him to stop and walked out of the lockup. When she returned in a second attempt to meet with her client, the same detainee began masturbating at her again. Ms. Crayton again told him to stop, and he threatened her, calling her by name. The sheriff on duty told Ms. Crayton that she should leave the lockup.

41.     Ms. Slonim has been subjected to numerous incidents of indecent exposure, assault and masturbation during the last two years, and during her time as a law clerk with the CCPD. As an example, in approximately August 2016, a detainee exposed himself and masturbated to her while in the lockup. She subsequently pressed criminal charges against the detainee. Defendants permitted her to be in the same lockup with that detainee three to four more times and as she attempted to do her job. On each such occasion the detainee yelled profanities and threats, including that he was going to 'beat the shit out of' her and 'motherfucking kill' her. On October 30, 2017, another detainee masturbated at Ms. Slonim with his penis out while she was visiting a client in lockup. Ms. Slonim had just suffered a similar incident on October 19, 2017. Both of these assaults were committed by detainees who were known offenders with prior indecent exposure charges against them.

42.     Detainees with criminal charges pending against them relating to prior incidents of exposure and/or masturbation should be subject to additional restrictions while in lockup such as special jumpsuits that restrict access to their genitals or handcuffs. Defendants failed to take

any precautions to protect Ms. Slonim or the plaintiffs and the class from these detainees, despite their prior records.

43.     Ms. Hull has been subjected to numerous incidents of detainee assaults, and in recent months has been subjected to detainees masturbating sometimes on a weekly basis. As just one example, in or about October 2017, a detainee walked behind her client while she was talking with him and began masturbating at her. She was advised by his attorney that he had done this to another female earlier in the same day.

44.     Ms. Knierim has been subjected to numerous incidents of detainee assaults. At times during the last two years she has suffered two to three incidents per week. On one occasion she asked the Sheriff to say something to the detainees and he said: there was nothing he could do about it; that she could file a charge but nothing would happen; at the end of the day it is not going to stop; and she should just do her job.

45.     Ms. Addyman has been subjected to numerous incidents of detainee assaults. On six occasions between January 2016 and the present, detainees stood behind her client and masturbated while she was speaking with him. On at least six more occasions during the last two years she walked out of lock-up when she saw an detainee move behind her client into 'position' to masturbate at her.

46.     During the last two years, female APDs and law clerks have also suffered physical touching by detainees, who have grabbed female APDs by the legs and/or buttocks. On at least one occasion, a detainee masturbated and emitted bodily fluids on a female APD. These incidents have been discussed among staff in the Public Defender's office.

**Defendants' Knowledge**

47.     The fact that male detainees have and will subject female APDs to offensive touching and batteries is well-known to all Defendants Dart and Campanelli, and is generally known to female APDs and law clerks. See e.g., Exhibit B and I.

48.     Defendants have knowingly failed to take prompt or effective corrective action to stop the harassment. Defendants have instead knowingly allowed it to occur and worsen.

49.     A group of detainees calling themselves "Savage Life" was key in organizing and directing these sexual assaults. This group views assaults on female APDs and law clerks as part of a game.  They award "points" to reward individual detainees for each incident of assault or masturbation, depending on the severity of the incident and the female attorney who is targeted. As a result, many of the detainees who commit these acts are repeat offenders.

50.     On January 31, 2016, the *Chicago Sun Times* reported that detainees in the Cook County Jail formed the group calling itself "Savage Life" in the summer of 2015, and that members of the group "expose themselves and masturbate in the presence of female defense attorneys." See Exhibit A, Jan. 31, 2016 *Chicago Sun Times* article. The article noted that "the behavior is on the rise."  The article further reported that "[t]here have been 219 incidents of detainees exposing themselves or masturbating in public between July 1, 2015, and Jan. 20, 2016" and that some of the detainees were "multiple offenders."

51.     Throughout 2016 and continuing through the present, there were numerous other reports in the Chicago-area media (including print, radio, electronic and television media) that further detailed and described the practice of detainees exposing themselves and/or masturbating to female staff including APDs and law clerks in the Cook County lockups and jail.  These media reports were widespread and provided additional notice to each and every Defendant regarding

11

the severity and extent of this practice. In fact most reports include Defendants' own comments, which confirm they have had notice of this conduct for at least two years. See e.g., Exhibit E, Oct. 28, 2017 *Chicago Sun Times* article.

52.     Numerous APDs have filed sexual harassment and masturbation criminal complaints throughout the last two years, which have provided additional notice to Defendants that the practice was severe, pervasive and ongoing. See Exhibit C.

53.     When an APD files a complaint the offender is charged with misdemeanor public indecency. The criminal complaints have been an ineffective deterrent, as the offending detainees are often facing serious felony charges. The indecency charges are often dropped by the Cook County State's Attorneys, or alternatively, result in a conviction but the offender is awarded "time served," meaning his sentence is not increased.

54.     APDs are regularly left out of the loop with respect to how their charges are being processed, are not advised of court dates, and are given no opportunity to weigh in on whether the case is prosecuted or dismissed. APDs who follow up on the charges they file often encounter rude or dismissive State's Attorneys. As a result, many APDs do not press charges because so often nothing comes of doing so.

55.     An offender is not at risk for having to register as a sex offender until he has been convicted of indecent exposure three separate times.

56.     Further, on a classwide basis APDs and law clerks are reluctant to pursue charges against offenders who may be represented by other attorneys in the CCPD's office, in part, because it can result in creating a conflict and being forced off a case or creates the perception that they are creating more work for another APD.

57.     On a classwide basis, APDs and law clerks are also reluctant to file charges against offenders because of the prevailing view that to do so would mean an attorney is not "tough" enough to be a Public Defender or cannot handle the job.

58.     At least one APD who filed charges against an offender experienced outright retaliation, including supervisors who bad-mouthed and criticized her throughout the criminal court system for filing charges. This incident was widely-known about throughout the CCPD's office and the criminal court system, generally and created a chilling effect.

59.     APDs have also repeatedly notified and/or complained to supervisors and management (including Defendant Campanelli) about incidents of indecent exposure and masturbation, verbally and in writing, on many, many occasions throughout the last two years. At various times during the last two years, the CCPD and/or the Sheriff's Office have made some attempts to keep records documenting incidents of assault and indecent exposure. The practice is a frequent topic of conversation among male and female employees and supervisors throughout the CCPD's Office and the Sheriff's Office.

60.     As a result of the media coverage, the internal complaints, the criminal charges, the ongoing internal discussions about the harassment among and between the defendants and its sheer prevalence and duration, Defendants, and each of them, have had notice that female APDs have been routinely subjected to ongoing incidents of masturbation and exposure by male detainees for more than two years.

61.     Despite having had ample notice of this practice for the last two years, Defendant Campanelli and the other Defendants have knowingly required Plaintiffs and other female APDs to continue to work in this hostile and dangerous environment. Defendant Campanelli failed to issue a clear policy instructing female APDs regarding this practice. In fact, Defendant

Campanelli disclaimed responsibility for female APDs' safety and has repeatedly stated, including during a meeting with APD's on October 18, 2017, "it is not my responsibility to keep you safe in the lockup and/or jail."

62. As early as October 2015, and on numerous occasions since, Defendant Campanelli and Sheriff Dart had discussions regarding incidents of detainee exposure and/or masturbation directed toward female APDs. See Exhibits B and I. During these discussions, they acknowledged the practice was occurring and was severe and pervasive. Their discussions failed to result in any effective corrective action for any reasonable duration. Some of the measures taken actually made matters worse.

63. In or about early 2017, the Sheriff began handcuffing detainees while they were in the courthouse lockups. This practice lasted for approximately two weeks and resulted in significantly decreased instances of masturbation and exposure at the female APDs in the courtroom lockups. This practice was discontinued after Defendant Campanelli objected, ordered it stopped immediately, without ensuring that another measure was in place to prevent detainee exposures and masturbation, and personally apologized to the detainees for the handcuffing. Indecent exposure and masturbation by detainees directed at female APDs and law clerks reverted to previous levels after the handcuffing ended.

64. In early 2017, the Defendant Dart required detainees to wear special jumpsuits to help prevent them from reaching their penises, exposing themselves and masturbating. This practice was discontinued after a small group of detainees burned the jumpsuits using microwave ovens.

65. In approximately May 2017, Defendant Dart added additional officers to the lockup. The additional officers on duty in the lockup areas significantly decreased the

14

incidences of indecent exposure and masturbation by detainees directed at female APDs and law clerks. Defendant Dart withdrew these additional officers a short time later, claiming lack of funds.

66.     At one point, Defendant Dart instituted a program rewarding serial masturbators with pizza. The program gave any detainee reported as having exposed himself or masturbated the opportunity to receive a pizza if they if they went 30 days without another sexual assault/masturbating incident. Detainees who never exposed themselves or masturbated at female APDs or law clerks were not eligible to receive pizza through this program.

67.     The Sheriff's rewards for intermittent indecent exposure and/or masturbation led to an increase in exposure incidents as detainees without prior incidents were now incentivized to commit indecent exposure and masturbation in order to qualify for a pizza reward.

68.     None of the measures taken by Defendant Dart in consultation with other defendants, including Defendant Campanelli were effective or permanent solutions, and in fact, the "pizza program" actually made the problem worse.

69.     On October 28, 2017, the *Chicago Sun Times* published another article which stated "Masturbating detainees have become a common sight on the walk to and from holding cells where defense attorneys meet clients, and at the jail and in courthouse lockups." The article reported that 29 criminal charges relating to detainee exposure incidents had been filed by female APDs in 2017, and that Defendant Campanelli admitted it was a daily occurrence and that the behavior by detainees has become "pervasive." The article further reported, "No other jail seems to have the same problem with public indecency on a similar scale to Cook County, according to the state Public Defenders Association and the Illinois Sheriffs' Association."  See Exhibit E.

70.     The article reported that Defendant Campanelli had opposed legislation that would upgrade the crime from a misdemeanor to a felony. Defendant Campanelli admitted in the article that none of the corrective measures taken had worked. Nonetheless, she "lauded Dart's efforts to combat the phenomenon," despite the complete inadequacy and half-hearted nature of those efforts, as set forth above, and despite the fact that other jails do not experience this problem on a similar scale. See Exhibit E.

71.     In October 2017, the female APDs learned that, despite their numerous complaints to Defendant Campanelli and CCPD supervisors about the sexual harassment by detainees, no one had ever informed Cook County's EEO Officer about the problem.

72.     Shortly thereafter, on October 18, 2017, Defendant Campanelli held a meeting for all APDs working at the criminal courthouse located at 26th Street and California Avenue. During this meeting, Defendant Campanelli admitted that she has known about detainees masturbating and exposing themselves to female APDs for at least two years. She recounted an incident where her husband (a private criminal defense attorney) observed an detainee in lockup at the Markham courthouse begin to masturbate and when asked what he was doing, explained that he was "getting ready for his PD" (a female). She distributed a flowchart tracking Defendants' actions and inactions for the past two years. See Exhibit I.

73.     Nevertheless, Defendant Campanelli told the female APDs, that there was nothing she could do to help them and that "it is not my responsibility to keep you safe in the lockup and jail."

74.      On October 23, 2017, sixteen female APDs assigned to the Cook County Court located at 26th Street and California Avenue filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The charges are currently

16

pending at the EEOC.

75.     On October 25, 2017, Plaintiffs, through counsel, advised Defendants of the filing
of the charges and the substance and provided a list of actions that could be taken immediately to
protect female APDs. See Exhibit D, Oct. 25, 2017 Potter Bolaños Letter

**Defendant Campanelli's Retaliation and Continued Failure to Act**

76.     On October 31, 2017, as a response to the EEOC charges and class counsel's
letter, Defendants Campanelli and CCPD issued a directive barring APDs from entering the
lockup at Leighton. See Exhibit F, CCPD Memo to APDs. Entering lockups at other court
locations, including at the Markham courthouse where sexual assaults and masturbating
remained unabated, was not prohibited.

77.     Defendant Campanelli had previously promised to wait until November 9, 2017 to
decide whether to implement this policy and after consulting with Chief Judge Timothy Evans.
However, when she received notice of Plaintiffs' EEOC charges, she and her office immediately
and unilaterally implemented the policy. See Exhibit F.

78.     Preventing APDs from entering the lockup is ineffective and actually punishes
Plaintiffs and their clients for the conduct of detainees who, in the words of the Sheriff's
representatives, seek to "wreak havoc."

79.     This directive is retaliatory and ineffective and prevents APDs from meeting with
their clients outside the public courtroom and interferes with their ability to do their jobs.

80.     Despite Defendant Campanelli's directive, many male APDs continue to go into
the lockups to meet with clients because they are not subjected to indecent exposure and
masturbation by detainees.

81.     Female APDs face negative consequences if they continue to go into lockups to meet their clients despite Defendant Campanelli's directive. They will face more sexual harassment by detainees, and when a detainee exposes himself or masturbates at them, they will be required to either press charges or sign a document saying they do not wish to press charges, either of which will put Defendant Campanelli on notice that they disobeyed her directive and make them vulnerable to disciplinary action.  Male APDs are not faced with this Catch-22.

82.     Visiting client detainees is an essential function of Plaintiffs' jobs, and there is no other place to conduct their confidential attorney client communications except the lockup or jail. Defendants have failed to provide individual meeting rooms or any other effective measure to prevent detainee sexual harassment.

83.     Although APDs are responsible to Defendant Campanelli (55 ILCS 5/3-4008.1), they have an overriding professional obligation as attorneys to the clients whom they represent. By implementing this measure, Defendant Campanelli has interfered with Plaintiffs' ability to do their jobs and caused them to suffer further distress.

84.     A Supervising Judge at Leighton told APDs he would not hesitate to report them to the Attorney Registration and Disciplinary Commission ("ARDC") if he felt their compliance with Campanelli's directive had detrimentally affected any criminal defendant.

85.     The Judge further confirmed he would not order sheriffs to bring clients out of lockup in order to speak with APDs, modify his case management orders/dates, or make any other allowance in light of Defendant Campanelli's directive.

86.     Defendant Campanelli and Defendant Dart have been personally aware of the detainees' conduct and that it is directed specifically at female APDs and law clerks and each of them has failed to take prompt or effective remedial action to protect female APDs and law

18

clerks. To the contrary their actions have put the burden on the victims of these assaults and even further endangered them.

87.     No Defendant implemented any of the suggestions included in the correspondence from class counsel. See Exhibits D and G, Oct. 31, 2017 Potter Bolaños letter.

88.     Defendants have demonstrated through their policies, practice and admissions that they are unwilling to protect the class and/or ensure that the workplace is not discriminatory and dangerous to women. See Exhibits A, B, F and I.

89.     As a result of the longevity, increasing severity and widespread nature of these incidents, female APDs live with constant and deeply rooted feelings of apprehension and/or fear that an assault or battery will occur when they visit their clients at the lockup or jail.

90.     As a result of the Defendants' conduct and inaction, the Plaintiffs and other similarly situated female APDS and female law clerks have suffered and endured a barrage of assaults because of their sex, for more than two years. They are not safe at work because of their sex, and each day live with the fear of another incident. They have suffered and will continue suffer significant damages, including but not limited to severe emotional distress that affects their daily lives.

91.     As a result of the Defendants' conduct and inaction, many APDs have either transferred in order to avoid certain lockups and jail visits, despite the negative impact it might have on their careers, or left the CCPD's office entirely.

**COUNT I**
**(42 U.S.C. §1983 – Equal Protection / Sexual Harassment – All Defendants)**
**Class Action Allegations**

92.     Plaintiffs repeat and re-allege Paragraphs 1 through 91 above as if fully set forth herein.

93.     This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

94.     Plaintiffs seek to represent a class defined as follows: All female APDs and law clerks who have worked for the County and the CCPD from November 1, 2015 through the present and who have visited or will be required to visit the jail and/or lockup in connection with their employment.

95.     The class is in excess of 200 persons and is so numerous that joinder of all class members is impracticable.

96.     The class representatives, Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, Julie Hull and other members have the class have been similarly impacted by the hostile work environment resulting from repeated and pervasive incidents of indecent exposure and/or masturbation by detainees toward female APDs.

97.     Defendants have employed more than two hundred female APDs and law clerks who have been subjected to incidents of indecent exposure and/or masturbation by detainees within the last two years.

98.     The issues involved in this lawsuit present common questions of law and fact, and these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

99.     The Named Plaintiffs and the Class have a commonality of interest in the subject matter of this suit and the remedy sought.

20

100.    The Named Plaintiffs are able to fairly and adequately represent and protect the interests of the Class.

101.    Plaintiffs' undersigned counsel is competent and experienced in litigating large class action lawsuits.

102.    If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

103.    Defendants have acted under color of state law at all times relevant hereto.

104.    Defendants intentionally subject Plaintiffs and the class to unequal and discriminatory treatment by requiring Plaintiffs to suffer incidents of assault, masturbation and/or indecent exposure by detainees and detainees during the course of their employment, by knowingly failing to take appropriate corrective action to prevent such incidents, and by knowingly failing and refusing to protect Plaintiffs and the Class from this hostile work environment, despite having ample notice of the practice for at least the past two years.

105.    The sexually and sex-based offensive conduct is severe and pervasive and alters the conditions of Plaintiffs' employment and creates an abusive working environment.

106.    The sexual harassment is because of Plaintiffs' sex.

107.    The sexual harassment has the effect of unreasonably interfering with the Plaintiffs' work performance and has created and continues to create an intimidating, hostile and offensive working environment for women.

108.    Defendants, and each of them, have had knowledge of the conduct complained of and intentionally refused and knowingly failed and declined to take action to terminate or correct

such conduct, although having the power and authority to do so.

109.    Defendants' actions as alleged above were done pursuant to one or more interrelated policies, *de facto* policies, patterns, practices and/or customs of official conduct of acquiescence and deliberate indifference to egregious sexual harassment and assault of female APDs by male detainees.

110.    Said interrelated policies, de facto policies, patterns, practices and/or customs, as set forth above, individually and together, were maintained and implemented with deliberate indifference and by requiring Plaintiffs to suffer incidents of assault, masturbation and/or indecent exposure by detainees during the course of their employment. Defendants have knowingly failed to take appropriate corrective action to prevent such incidents, or to protect Plaintiffs and the Class from this hostile work environment, despite having ample notice of the practice for at least the past two years.  Defendants' actions and inaction were and are the direct and proximate cause of the constitutional violations and injuries suffered by the Plaintiffs and the class.

111.    The actions of the Defendants violate the equal protection rights of Plaintiffs and the Class, including the right to be free from sexual harassment under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

112.    Defendants' actions have caused Plaintiffs and the Class to suffer damages, including but not limited to severe emotional distress, and other compensatory and consequential damages.

113.    Defendants' actions were intentional, willful, and malicious and in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against

Defendants for:

      A. An Order certifying this suit as a class action;
      B. An Order requiring Defendants to take effective remedial action to enjoin this practice, including by appointing a monitor to implement policies and practices necessary to stop detainee harassment of female APDs at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;
      C. A declaratory judgment that Defendants' deliberate actions and inactions violate the Fourteenth Amendment to the United States Constitution;
      D. Backpay and lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;
      E. Compensatory damages;
      F. Punitive damages against Defendants Dart and Campanelli, in their individual capacities, including as permitted by law;
      G. Attorneys' fees and costs;
      H. Post-judgment interest; and
      I. Such other and further relief as the Court deems appropriate.

## COUNT II
### (42 U.S.C. §1985 and §1986 – Conspiracy – All Defendants)
### Class Action Allegations

114.    Plaintiffs repeat and re-allege Paragraphs 1 through 113 above as if fully set forth

herein.

115.    Plaintiffs specifically incorporate and put defendants on notice that Section 1983

claims set forth in Count I are part of the basis for their conspiracy claim.

116.    This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

Plaintiffs repeat and re-allege the class allegations set forth in Count I.

117.    Each of the Defendants had and have (1) actual knowledge that some or all of the

conspiratorial wrongs that were and would be committed against the plaintiffs and the class, (2)

the power to prevent or to aid in preventing the commission of those wrongs, (3) deliberately

neglected and/or refused to prevent the Section 1985 conspiracy, (4) the wrongful acts were

committed, and (5) the wrongful acts could have been prevented by reasonable diligence.

118.   As set forth above, Defendants are and have been aware that female APDs and law clerks have been subjected to sexual assaults and batteries by detainees in a targeted campaign of harassment for more than two years. Defendants have worked hand in hand and had ongoing discussions about the masturbation and sexual assaults. Defendants have rescinded all remedial actions to prevent the masturbation and harassment, such as handcuffing, and otherwise refused to implement any measures to prevent the ongoing egregious sexual harassment.

119.   Defendants knowingly encouraged, allowed, and incentivized detainees to carry out a sustained campaign of sexual assaults, indecent exposure and masturbation incidents on female APDs, including by their inaction and rewarding detainees with "pizzas" for good behavior following masturbation incidents.

120.   Each of the Defendants could have stepped in to stop and prevent the sexual assaults and masturbation at any time in the last two years and continuing to the present, but failed to do so.

121.   Each of the Defendants could have stepped in to assure that plaintiffs could engage in confidential attorney communications with their detainee clients and in a workplace free of sexual assault and abuse, but failed and continue to fail to do so.

122.   Defendants together reached an understanding, and together engaged and continue to engage in conduct and/or have conspired among themselves to commit the unconstitutional acts set forth in the facts above.

123.   Because said conspiracy and the overt actions in furtherance thereof were done and continue to be done with the knowledge and purpose of depriving Plaintiffs and numerous other female APDs and law clerks of the equal protection of the laws and/or of equal privilege

24

and immunity under the law, the Defendants also deprived the Plaintiffs and the class of their

right to equal protection of the laws under the Fourteenth Amendment and 42 U.S.C. §§1983,

1985 and 1986.

      **WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against

Defendants for:

A. An Order certifying this suit as a class action;

B. An Order requiring Defendants to take effective remedial action to enjoin this practice, including by appointing an independent monitor to implement policies and practices necessary to stop detainee harassment of female APDs and law clerks at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;

C. A declaratory judgment that Defendants' actions violate the Fourteenth Amendments to the U.S. Constitution.

D. Backpay, lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;

E. Compensatory damages;

F. Paid time off for any member of the plaintiffs class who has or continues to suffer from trauma or injury as a result of the harassments complained of herein;

G. Punitive damages against Defendants Dart and Campanelli, including as permitted by law;

H. Attorneys' fees and costs;

I. Post-judgment interest; and

J. Such other and further relief as the Court deems appropriate.

## Count III
### (Illinois Gender Violence Act - Against Campanelli and Dart, Individually)
### Class Action Allegations

      124. Plaintiffs repeat and re-allege Paragraphs 1 through 123 above as if fully set forth

herein.

      125. This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

Plaintiffs repeat and re-allege the class allegations set forth in Count I.

126.     The Illinois Gender Violence Act ("IGVA") provides a cause of action for any person who has been subjected to gender-related violence against persons who have perpetrated that violence. 740 ILCS 82/10. For purposes of the IGVA, "perpetrated" means either personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence. *Id.*

127.     Plaintiffs and the class have suffered batteries and/or the realistic threat of batteries within the meaning of 740 ILCS 82/5, including as described above.

128.     Defendants Dart and Campanelli assisted acts of gender-related violence against the Plaintiffs by allowing incidents of assaults and batteries by detainees against female APDs and law clerks to occur on an increasingly regular basis; by rescinding corrective measures (including handcuffing detainees and/or providing additional sheriffs in the lockup and/or jail) that mitigated (but did not eliminate) the problem; and by implementing policies which encouraged detainees to commit assaults and batteries (including the "pizza" program, described above).

129.     Plaintiffs and the class have been damaged as a result of the above described threats and batteries.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants for:

A.   An Order certifying this suit as a class action;
B.   An Order requiring Defendants to take effective remedial action to enjoin this practice, including by appointing a monitor to implement policies and practices necessary to stop detainee harassment of female APDs at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;
C.   Backpay and lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;
D.   Compensatory damages;

    E.   Punitive damages as permitted by law including 740 ILCS 82/15;
    F.   Attorneys' fees and costs;
    G.  Post-judgment interest; and
    H.  Such other and further relief as the Court deems appropriate.

**COUNT IV**
**(Indemnification – County of Cook)**

130.    Plaintiffs repeat and re-allege Paragraphs 1 through 129 above as if fully set forth herein.

131.    Defendant County of Cook and its Sheriff's and Public Defender's Offices were at all times material to this Complaint, the employers of Plaintiffs and the class, as well as Campanelli.

132.    Defendant County of Cook is therefore responsible for any judgment entered against Defendant Campanelli and/or Dart for acts committed by them under the color of law thus making the County of Cook a necessary party to this Complaint.

133.    Defendant Cook County has a duty to indemnify each of the Defendants against any damages, including attorney's fees, recovered by plaintiff by judgment or settlement.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants Cook County and its Sheriff's Office and Public Defender's Office, in the amounts awarded to Plaintiffs and the class against the individual Defendants as damages, attorneys' fees, costs and interest and for whatever additional relief this Court deems equitable and just.

**PLAINTIFFS DEMAND A JURY TRIAL**

                             Respectfully submitted,

                             /s/ Robin Potter

                             /s/ M. Nieves Bolaños
                             Attorneys for Plaintiffs and the class

27

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER & BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org

Dated:  November 8, 2017