# EXHIBIT J

## DECLARATION OF CELESTE ADDYMAN

I, CELESTE ADDYMAN, on oath and under penalty of perjury, and upon my personal knowledge and belief, depose and state as follows:

1. I am over eighteen years of age.

2. I am an attorney and am licensed to practice law in the State of Illinois.

3. I am one of six plaintiffs and class representatives in the lawsuit, *Brown et al v. Cook County et al.*, which was filed on November 8, 2017 in the United States District Court for the Northern District of Illinois.

4. I am providing this Declaration in support of Plaintiffs' Motion for Temporary Restraining Order and/or Preliminary Injunction.

5. I have worked for Cook County and the Cook County Public Defender's ("CCPD") Office as an Assistant Public Defender ("APD") since on or about February 2010.

6. Male detainees have exposed their erect genitals to me and/or masturbated while looking at me when I visited clients in lockup or jail on numerous occasions during my employment with the Public Defender's office. This behavior has been occurring with increased frequency in the past two years.

7. On numerous other occasions during the last two years, male detainees have walked behind my clients and prepared to masturbate at me, at which point I walked out of lockup, in order to avoid another masturbation incident.

8. It is well known throughout our office that similar masturbation incidents are commonplace and happen frequently to female APD's when they visit inmate-clients at courtroom lockups and/or the jail.

9. Masturbation incidents are a common topic of conversation among female APD's. There have also been reports in the Chicago media during the last two years which have documented the ongoing incidents of masturbation and harassment by male detainees toward female APD's.

10. Amy Campanelli, the Cook County Public Defender, has acknowledged that female APD's have been repeatedly subjected to such incidents, including during a meeting with APD's on or about October 18, 2017, and also in statements she has made to the media.

11. This conduct is severe and pervasive. Almost every week, I have spoken with female attorneys in the office who have been victims of assaults by inmates while they were visiting their clients in lockup or in the jail. The conduct interferes with our ability to do our jobs.

12. This conduct is specifically directed toward female APD's and staff. Male APD's are not similarly targeted for harassment or masturbation incidents by detainees.

13. The Sheriff has implemented steps during the last year purportedly to address this issue, including at various times handcuffing detainees, requiring them to wear special uniforms, or providing additional sheriffs in the lockup. These measures were temporary and/or ineffective, and failed to stop detainees from masturbating toward me and other female APD's in part because they were rescinded after just short periods of time.

14. Ms. Campanelli has stated, including during a meeting on October 18, 2017, that it is not her responsibility to keep us safe in the lockup or jail.

15. I have filed charges on three separate occasions in connection with masturbation incidents. I am aware that a number of other APD's have also attempted to press charges during the last two years.

16. Pressing charges against detainees for masturbation incidents has been an ineffective deterrent and does not appear to have reduced the frequency or severity of these incidents at all.

17. On or about October 23, 2017, I filed charges of sex discrimination and retaliation with the U.S. Equal Employment Opportunity Commission (EEOC), along with fifteen other female APD's. These charges are pending at the EEOC at the present time.

18. On October 31, 2017, Amy Campanelli issued a directive barring APDs from entering the lockup at the Leighton Criminal Courts Building ("Leighton"). Ms. Campanelli previously stated she would wait until November 6, 2017 to implement this directive.

19. Visiting clients in the lockup is an essential part of our jobs. Most of my clients are in custody. It is necessary to for me to meet with clients in lockup to review discovery and to discuss evidence, plea offers and other issues that arise during the course of the representation. There is no other place for me and other APD's to have confidential discussions with our clients prior to or after scheduled court appearances besides the courtroom lockup.

20. In issuing the directive barring us from entering the lockups, Ms. Campanelli has not provided any alternative space or provisions for us to meet privately with our clients at the courthouse. As a result, her Order threatens to undermine my ability to communicate with my clients.

21. I have been told by my colleagues that a supervising Judge at Leighton told APDs he would not hesitate to report them to the Attorney Registration and Disciplinary Commission ("ARDC") if he felt their compliance with Campanelli's directive had detrimentally affected any criminal defendant.

22. After hearing this, on November 6, 2017, I called the ARDC and spoke with an attorney, Mary Andreani, to request an opinion on this matter. Ms. Andreani expressed disbelief regarding our situation. She also advised that Ms. Campanelli's workplace directive does not trump our professional obligations, including under Rules 1.4 (Communication) and 1.6 (Confidentiality) of the Illinois Rules of Professional Conduct.

23. Because there is no other place to meet privately with my clients, if this order remains in effect, I will be required to disobey Ms. Campanelli's directive (and potentially face discipline from my employer) and also face the ongoing risk of sexual assault and harassment. If I do not disregard this order and visit my clients in lockup so I can have private meetings, I could potentially face ARDC charges.

24. Once I return to lockup, there is a high likelihood that the detainees will continue to masturbate, as they have done for the last two years, unless corrective action is taken to prevent this practice.

25. It is my understanding that some APD's are already ignoring Ms. Campanelli's directive and are visiting lockup. It is easier for male APD's to ignore the directive since they are not targeted by detainees for masturbation incidents.

26. As a result of the above, my female colleagues and I will suffer irreparable harm if this directive is not rescinded and if we are not immediately afforded a safe, private location to meet with our clients.

27. Even if we eventually prevail in our class action lawsuit, an award of damages alone would be insufficient to prevent the harm which female APD's will experience in the next days and weeks due to Ms. Campanelli's order and due to the Defendants' failure to curb harassment by detainees.

28. Unless measures are taken to lift Ms. Campanelli's directive and to stop the harassment, female APD's will be unable to perform their jobs without experiencing severe sexual harassment, facing discipline from their employer, and/or facing potential charges with the ARDC. Such effects could irreparably damage our careers.

29. The judicial system and the public in general benefit from the legal services APD's provide to our clients who are unable to otherwise afford legal representation.

30. The judicial system and the public interest will be aided if the practice of detainees masturbating to female APD's is ended as this practice interferes with our ability to do our jobs.

31. A safe working environment for APD's means a safer lockup generally and that unquestionably serves the public interest.

32. Our clients, the courts, and the public will be best served if an injunction is implemented to remedy the situation described above.

DECLARANT FURTHER SAYETH NAUGHT.

_____
CELESTE ADDYMAN