**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM and JULIE HULL, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 17-cv-8085 |
| v. | ) ) | Judge Matthew F. Kennelly |
| COOK COUNTY; LAW OFFICE OF THE COOK COUNTY PUBLIC DEFENDER; AMY CAMPANELLI, in her official and individual capacity as Public Defender of Cook County; and THOMAS DART, in his official and individual capacity as Sheriff of Cook County, | ) ) ) ) ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) ) | |

**DEFENDANT SHERIFF THOMAS DART'S OPPOSITION TO PLAINTIFFS' MOTION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND
SCHEDULING OF PRELIMINARY INJUNCTION HEARING**

# TABLE OF CONTENTS

I.     FACTUAL BACKGROUND ................................................................. 4

II.    ARGUMENT ...................................................................................... 13

    A.    Legal Standard ........................................................................ 13

    B.    Plaintiffs' Requested Injunctive Relief Is Inappropriate ..................................... 14

    C.    Plaintiffs Do Not Have A Reasonable Probability Of Prevailing On The Merits Of Their Claims ................................ 16

        i.    Plaintiffs Cannot State a Section 1983 Sexual Harassment Claim Against Sheriff Dart in his Individual or Official Capacity ................... 16

            a.    Plaintiffs' Individual Liability Theories Are Not A Viable Means to Recover Against Sheriff Dart ....................................... 16

            b.    Plaintiffs' Boilerplate Monell Allegations Fail to State a Municipal Liability Claim ............................................. 18

        ii.    Plaintiffs Cannot State a § 1985 or § 1986 Conspiracy Claim Against Sheriff Dart ................................................. 19

        iii.    Plaintiffs Cannot State a Claim Under the Illinois Gender Violence Act Against Sheriff Dart ................................ 22

    D.    Plaintiffs Have Not Established That They Will Suffer Irreparable Harm Absent Injunctive Relief ............................... 23

        i.    Plaintiffs' Delay in Seeking Injunctive Relief Militates Against Finding Irreparable Harm as to Sheriff Dart ........................... 23

        ii.    Plaintiffs' Failure to Avail Themselves of Available Alternatives also Weighs Against Finding Irreparable Harm. .................... 25

        iii.    Plaintiffs' Alleged Harms are Speculative ............................. 26

        iv.    Even if Irreparable Harm Were Sufficiently Established, the Requested Relief Is Unlikely to Redress the Alleged Harm. ............ 28

    E.    Plaintiffs Cannot Establish an Inadequate Remedy at Law or Irreparable Harm Because Their Prayer for Relief Specifically Seeks Monetary Damages ............................................. 29

    F.    The Harm to the Public and CCSO if the Injunction is Issued Outweighs any Potential Harm to Plaintiffs .................................... 31

III.    CONCLUSION ................................................................................ 34

IV.    CERTIFICATE OF SERVICE .......................................................... 36

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AARP v. United States Equal Employment Opportunity Comm'n,*
    226 F. Supp. 3d 7 (D.D.C. 2016) ............................................................................... 23

*Abbott Labs. v. Mead Johnson & Co.,*
    971 F.2d 6 (7th Cir. 1992) .......................................................................................... 31

*Adamski v. McGinnis,*
    No. 13-cv-962, 2015 U.S. Dist. LEXIS 40501 (E.D. Wis. Mar. 30, 2015) .............. 21

*Am. Hosp. Ass'n v. Harris,*
    625 F.2d 1328, 1330 (7th Cir. 1980) ........................................................................ 14

*Atari Games Corp. v. Nintendo of Am., Inc.,*
    897 F.2d 1572 (Fed. Cir. 1990) ................................................................................. 30

*Baker v. City of Chicago,*
    No. 12-cv-0092, 2012 U.S. Dist. LEXIS 11428 (N.D. Ill. Jan. 30, 2012) ............... 21

*Bell v. Wolfish,*
    441 U.S. 520 (1979) ................................................................................................... 34

*Bowles v. Montgomery Ward & Co.,*
    143 F.2d 38 (7th Cir. 1944) ....................................................................................... 13

*Brazil v. Dell Inc.,*
    585 F.Supp.2d 1158 (N.D. Cal. 2008) ...................................................................... 18

*Brokaw v. Mercer County,*
    235 F.3d 1000 (7th Cir. 2000) ................................................................................... 20

*Chavez v. Illinois State Police,*
    No. 94 CV 5307, 1996 WL 66136 (N.D. Ill. Feb. 13, 1996) ...................................... 7

*Contech Casting, LLC v. ZF Steering Sys., LLC,*
    931 F. Supp. 2d 809 (E.D. Mich. 2013) ................................................................... 25

*Coronado v. Valleyview Public School District 365-U,*
    537 F.3d 791 (7th Cir. 2008) ..................................................................................... 14

*Curtis 1000, Inc. v. Youngblade,*
    878 F. Supp. 1224 (N.D. Iowa 1995) ....................................................................... 25

*Daniels v. Southfort*,
  6 F.3d 482, 485 (7th Cir. 1993) .................................................................27

*Diginet, Inc. v. Western Union ATS, Inc.*,
  958 F.2d 1388 (7th Cir. 1992) .................................................................29

*Doe v. Sobeck*,
  941 F. Supp. 2d 1018 (S.D. Ill. 2013).................................................................22

*Doe v. Univ. of Chicago*,
  No. 16 C 08298, 2017 WL 818859 (N.D. Ill. Mar. 2, 2017) ...........................28

*Doe v. Vill. of Arlington Heights*,
  782 F.3d 911 (7th Cir. 2015) .................................................................23

*Fairley v. Andrews*,
  578 F.3d 518 (7th Cir. 2009) .................................................................21

*Flood v. O'Grady*,
  No. 89 C 9043, 1990 WL 17102 (N.D. Ill. Feb. 5, 1990).........................27

*Fund for Animals v. Frizzell*,
  530 F.2d 982 (D.C. Cir. 1975) .................................................................23

*Gardner v. Dart*,
  No. 13 C 7623, 2014 WL 2611222 (N.D. Ill. June 9, 2014) ...................34

*Gatsinaris v. ART Corp. Sols., Inc.*,
  2015 WL 3453454 (C.D. Cal. May 29, 2015) ........................................30

*Genenbacher v. Centurytel Fiber Co. II*,
  244 F.R.D. 485 (C.D. Ill. 2007) .................................................................18

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.*,
  549 F.3d 1079 (7th Cir. 2008) .................................................................13

*Godinez v. Lane*,
  733 F.2d 1250 (7th Cir. 1984) .................................................................33

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
  546 U.S. 418 (2006) .................................................................14

*Gonzalez-Koeneke v. Rockford Dist. 205*,
  No. 12 C 50311, 2014 WL 11370445 (N.D. Ill. June 16, 2014) ...........18

*Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*,
  430 F.3d 432 (7th Cir. 2005) .................................................................13, 14

*Henderson v. Marker*,
581 F.App'x 577 (7th Cir. 2014) (unpublished) .................................................................20

*Hernandez ex rel. Hernandez v. Foster*,
657 F.3d 463 (7th Cir. 2011) ......................................................................................17, 18

*Illinois Migrant Council v. Pilliod*,
398 F. Supp. 882 (N.D. Ill. 1975) ...............................................................................13

*Johnson v. County of Cook*,
No. 08-cv-2139, 2009 U.S. Dist. LEXIS 10251 (N.D. Ill. Feb. 10, 2009) ..........................21

*Jones v. Infocure Corp.*,
310 F.3d 529 (7th Cir. 2002) ......................................................................................29

*Jordan v. Wolke*,
593 F.2d 772 (7th Cir. 1978) ......................................................................................14

*Kyle v. Morton High School*,
144 F.3d 448 (7th Cir. 1998) ......................................................................................20

*Lane v. Buckley*,
643 Fed.Appx. 686 (10th Cir. 2016) ...........................................................................30

*Linda Constr. Inc. v. Allied Waste Indus.*,
No. 15-cv-8714, 2017 U.S. Dist. LEXIS 48367 (N.D. Ill. Mar. 31, 2017) ...................20, 21

*Locke v. Haessig*,
788 F.3d 662 (7th Cir. 2015) ................................................................................16, 17

*Long v. Bd. of Educ., Dist. 128*,
167 F.Supp.2d 988 (N.D.Ill. 2001) ..............................................................................13

*Martin v. Helstad*,
699 F.2d 387 (7th Cir. 1983) ......................................................................................31

*Matthews v. City of East St. Louis*,
675 F.3d 703, 708 (7th Cir. 2012) ..............................................................................17

*McCauley v. City of Chicago*,
671 F.3d 611 (7th Cir. 2011) ......................................................................................19

*McDavid Knee Guard, Inc. v. Nike USA, Inc.*,
683 F. Supp. 2d 740 (N.D. Ill. 2010) ...........................................................................30

*O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*,
389 F.3d 973 (10th Cir. 2004) ...................................................................................14

iv

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*,
  536 F.2d 730 (7th Cir. 1976) ..................................................................23

*Payne v. Churchich*,
  161 F.3d 1030 (7th Cir. 1998) ................................................................23

*Phillips v. Baxter*,
  No. 16-cv-8233, 2017 U.S. Dist. LEXIS 79239 (N.D. Ill. May 24, 2017).......................20, 21

*Recycled Paper Greetings, Inc. v. Davis*,
  533 F. Supp. 2d 798 (N.D. Ill. 2008) .....................................................13

*Robinson v. City of Chicago*,
  868 F.2d 959 (7th Cir.1989), *cert. denied,* 493 U.S. 1035 (1990).........................................27

*Robinson v. Maentanis*,
  No. 95 C 6982, 1997 WL 391830 (N.D. Ill. June 9, 1997) ....................................27

*RoDa Drilling Co. v. Siegal*,
  552 F.3d 1203 (10th Cir. 2009) ..............................................................23

*Roland Machinery Co. v. Dresser Industries, Inc.*,
  749 F.2d 380 (7th Cir. 1984) ..................................................................29

*Sallenger v. City of Springfield, Ill.*,
  630 F.3d 499 (7th Cir. 2010) ..................................................................18

*Schroeder v. Hamilton Sch. Dist.*,
  282 F.3d 946 (7th Cir. 2002) ..................................................................17

*Smith v. Gomez*,
  550 F.3d 613 (7th Cir. 2008) ..................................................................22

*Students v. United States Dep't of Educ.*,
  No. 16-CV-4945, 2016 WL 6134121 (N.D. Ill. Oct. 18, 2016) ........................................25, 30

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*,
  695 F.3d 676 (7th Cir. 2012) ..................................................................25

*Summers v. Smart*,
  65 F.Supp.3d 556 (N.D. Ill. 2014) ..........................................................24

*Tough Traveler, Ltd. v. Outbound Prods.*,
  60 F.3d 964 (2d Cir. 1995).................................................................23, 24

*Turley v. Rednour*,
  729 F.3d 645 (7th Cir. 2013) ..................................................................21

v

*Ty, Inc. v. Jones Grp. Inc.*,
   237 F.3d 891 (7th Cir. 2001) ........................................................23

*University of Texas v. Camenisch*,
   451 U.S. 390 (1981)........................................................14

*Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*,
   No. 14-cv-6, 2017 U.S. Dist. 10203 (N.D. Ind. Jan. 25, 2017) ............16

*Whitby v. Dr. John Warner Hosp.*,
   No. 11-3112, 2011 WL 1670458 (C.D. Ill. Apr. 29, 2011)............26, 27

*Williams v. Lane*,
   851 F.2d 867 (7th Cir. 1988) ........................................................16

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)........................................................26, 28, 33

*Wright v. Illinois Dept't of Children & Family Servs.*,
   40 F.3d 1492 (7th Cir. 1994) ........................................................21

*Zentmyer v. Kendall County*,
   220 F.3d 805, 811 (7th Cir. 2000) ........................................................17

**State Cases**

*Doe v. PSI Upsilon Int'l*,
   963 N.E.2d 327 (Ill. App. Ct. 1st Dist. 2011) ...............................22

*United States v. Cook County, et. al.*,
   10 C 2946 ........................................................5

*Watkins v. Steiner*,
   No. 5-11-421, 2013 Ill. App. (5th) 110421-U...............................22

**Federal Statutes**

42 U.S.C. 1985 and 1986 ........................................................19

**State Statutes**

225 ILCS 60/22(A)(16)........................................................26

225 ILCS 60/22(A)(37)........................................................26

740 ILCS 82/10........................................................22

745 ILCS 10/2-201, 204, 205 ........................................................23

**Rules**

Fed. R. Civ. P.
    8(a)(1)(C) ................................................................................................................35
    23(c)(3) .................................................................................................................18
    53(a)(1)(B) ...........................................................................................................15
    53(a)(1)(C) ...........................................................................................................16

**Regulations**

Ill. Admin. Code Title 20,
    § 720.60(b) ......................................................................................................9, 32

**DEFENDANT SHERIFF THOMAS DART'S OPPOSITION TO PLAINTIFFS' MOTION
FOR ENTRY OF TEMPORARY RESTRAINING ORDER AND
<u>SCHEDULING OF PRELIMINARY INJUNCTION HEARING</u>**

Cook County Sheriff Thomas Dart ("Sheriff Dart") and the Cook County Sheriff's Office
("CCSO") have been combatting a prevalent practice over the last two years of criminal and
prohibited behavior occurring in the jail and courthouse lockups in which male detainees are
exposing themselves and masturbating in the presence of Cook County Public Defender's Office
("CCPD") female assistant public defenders ("APDs"). Sheriff Dart has utilized many different
tools and attempted to work jointly with other stakeholders in order to make every effort to curb
this prohibited detainee behavior and is continuing to do so. In addition to the internal disciplinary
process of handling these violations of jail policy which can result in administrative sanctions,
Sheriff Dart has gone beyond traditional mechanisms for preventing, deterring and punishing this
conduct. Such measures have included: seeking statewide legislative change to increase the
penalties for the offenses; designing and creating modified jumpsuits to prevent exposure when
worn by detainees who have engaged in this conduct; increased handcuffing procedures for
detainees who have engaged in this conduct; as well as numerous other steps.

Plaintiffs, however, have moved this Court for a temporary restraining order requiring
Sheriff Dart to take three steps which are essentially already in place and requesting the
appointment a "Sexual Harassment monitor" as someone who will purportedly provide "policies,
practices, and long range solutions" that will "stop detainee harassment" of female APDs. This
Court should deny their request as (1) it fails to meet the legal standard for a temporary restraining
order and (2) as a factual matter is entirely misplaced.

Plaintiffs fall far short of the clearing the legal bar governing issuance of a temporary
restraining order. To begin with, Plaintiffs cannot meet the three threshold requirements. *First*,

1

Plaintiffs have not established that *they* would suffer certain irreparable harm absent their requested injunctive relief or that their requested relief would eliminate any harm they may face. *Second*, Plaintiffs have adequate legal remedies through their request for monetary damages. *Third*, Plaintiffs do not have a reasonable probability of prevailing on the merits of their equal protection, conspiracy and Illinois Gender Violence Act ("IGVA") claims against Sheriff Dart. Plaintiffs cannot state a personal liability equal protection claim against Sheriff Dart, who is not their employer, does not employ their alleged harassers and is not alleged to have treated the female APDs differently because of their gender. Likewise, Plaintiffs' boilerplate conspiracy, IGVA and official capacity claims are likewise insufficient and contradicted by their own pleadings.[1] Plaintiffs' novel equal protection and conspiracy theories against Sheriff Dart in his individual capacity are also subject to qualified immunity. Moreover, though Plaintiffs have failed to even meet the threshold requirements, should the court engage in a balancing assessment, it is clear that Plaintiffs' proposed "long-range" relief will cause irreparable harm to the public, including detainees, and the CCSO, which harm greatly outweighs any speculative harm Plaintiffs may suffer if their requested relief is not provided.

Additionally, from a factual standpoint, the relief Plaintiffs have requested is either in place or inapposite to the issue. Plaintiffs request four things relevant to Sheriff Dart in their order: (1) require detainees to wear jumpsuits that restrict their ability to reach and expose their genitals; (2) handcuff detainees who have previous indecency or sex crimes charges and/or convictions; (3)

---

[1] In their Complaint and Motion, Plaintiffs essentially argue (without any factual support or citation to evidence) that Defendants have "turned a blind eye" and/or engaged in a "conspiracy" to facilitate the detainees' conduct. (Dkt. # 1 ¶¶ 1, 109–10, 122–23; Dkt. # 9 at 2, 10). As detailed below, Plaintiffs' claim is baseless and belied by statements made in Plaintiffs' own filings. *See* (Dkt. # 9 at 6–7) (acknowledging that Sheriff Dart has attempted to stop detainees from indecently exposing themselves by "handcuffing detainees for short periods while they were in the courtroom lockups," requiring "detainees charged with sexual misconduct or public indecency to wear special jumpsuits so that they could not easily expose their penises and/or masturbate" and assigning additional officer to the Leighton Criminal Courthouse lockup); (Dkt. # 1 ¶¶ 62–66, 68) (alleging corresponding allegations regarding the allegedly ineffective measures Sheriff Dart has taken since 2015).

assign deputy sheriffs to all lockup locations; and (4) the appointment of an outside and experienced "Sexual Harassment monitor." As set forth in detail below, the first three items requested by Plaintiffs are essentially in place.

- Uniforms: Detainees who have been administratively found guilty of engaging in such conduct are required to wear, at all times and for the remainder of their stay in Cook County, a modified uniform which restricts their ability to reach their genital area in that the opening to the uniform is higher up on the torso. This is an administrative punishment and correspondingly is viewed as such by the detainees, who find the modified uniforms to be restrictive. While Plaintiffs apparently request that all detainees, regardless of whether they have engaged in such conduct, be required to wear the jumpsuits, Sheriff Dart is not administratively punishing those detainees who have not been found to have engaged in such behavior, which would be inconsistent with jail standards.

- Handcuffs: Detainees who have been administratively found guilty of engaging in such conduct remain handcuffed while in the Leighton Criminal Courthouse. To the extent that Plaintiffs' request applies to the jail as well, Sheriff Dart does not require detainees who have been found guilty of this conduct to remain handcuffed at all times while in the jail, which would be inconsistent with jail standards.

- Deputy Assignments: Deputy sheriffs are currently assigned to cover areas to include all lockup locations. In the Leighton Criminal Courthouse, there are typically four deputies assigned to cover two courtrooms and the adjoining lock up area. There are also four to six additional staff assigned to provide additional monitoring of the lockups on the four floors containing the courtrooms. (It is of significance to note, however, that the presence of a deputy does not deter this conduct as a separate lawsuit has been brought by female deputy sheriffs who have been subjected to the same conduct by male detainees.) The CCSO has previously asked the CCPD to ask its APDs not to go into the lock up areas without a deputy present.

With respect to Plaintiffs' fourth request —the ordering of a "Sexual Harassment monitor"— such a request is inapposite in this case. While one might see the appropriateness or necessity of such a monitor in a case involving a company whose employees have engaged in pervasive sexual harassment in order to have that monitor investigate (1) the type of harassment, (2) the employees perpetrating the harassment, (3) the company culture, and to provide training to employees to deter such conduct from occurring in the future, this matter is an entirely different

scenario. It is not CCSO employees who are engaging in the indecent exposure and masturbation, it is the detainees. There is no question that the detainee's indecent conduct is occurring. Educating the detainees on sexual harassment is not going to deter the conduct. The solutions that might be provided by such a monitor simply do not fit in a jail where those guilty of the harassing behavior are individuals in custody for having committed serious crimes and facing lengthy sentences of incarceration.

For all these reasons, as more fully discussed *infra*, the Court should deny Plaintiffs' motion for a temporary restraining order and request for a preliminary injunction hearing.

## I.  FACTUAL BACKGROUND[2]

### *The Cook County Sheriff's Office*

The CCSO is the main law enforcement agency serving Cook County. It contains several departments, including the Cook County Sheriff's Police, the Court Services Division, and the Cook County Department of Corrections and has over 6,900 members. Among its many mandates, it is responsible for individuals in Cook County remanded to its custody by the Circuit Court pending resolution of criminal charges.

Cook County detainees are held in custody at the Cook County Department of Corrections (CCDOC or jail), which currently houses approximately 6,500 individuals at any given time. There are fourteen courthouses comprising the Cook County Judicial system. The Leighton Criminal Courthouse is the largest of the courthouses with the most number of criminal courts. Detainees are regularly transported from the jail to those courthouses for court appearances. On an average day, approximately 700 to 900 detainees are transported to and from court, with the majority of them traveling to the Leighton Criminal Courthouse. Correctional officers from CCDOC and

---

[2] This Factual Background section is supported by the attached Declaration of Mr. Curry.

deputy sheriffs in Court Services are responsible for overseeing the detainees in either the jail itself or the lock ups in the courthouses.

### *Incidents of Public Indecency in the Presence of APDs in the Jail and Courthouse Lockups*

Beginning in 2015, the CCSO saw a noticeable increase in instances of public indecency by male detainees at the CCDOC and, at times, in the presence of and directed at female APDs. These incidents involved male inmates exposing themselves and masturbating in front of and directed at female APDs. Although they have occurred in other Cook County courthouses, the incidents of public indecency and masturbation are most prevalent at the Leighton Criminal Courthouse in the lockup areas behind the courtrooms. And, although these incidents have occurred in multiple areas of the CCDOC, they are most prevalent in Divisions 9 and 10, which are the divisions that house the maximum security detainees and the most serious offenders.

When detainees are remanded to CCDOC custody, the CCDOC provides every detainee a handbook during their intake process which describes the rules and regulations they must follow while in custody. The first information provided to detainees, after explaining the intake process, addresses a zero tolerance policy for sexual conduct and harassment of any kind.

Detainees who engage in this prohibited conduct can be charged in two ways. The first way is through an administrative charge of indecent exposure or masturbation. The CCSO has established a comprehensive disciplinary system for the prevention, deterrence, and punishment of inappropriate conduct by detainees.[3] When a detainee is identified as having engaged in such conduct, an officer writes a disciplinary ticket for indecent exposure or masturbation. The detainee

---

[3] The current Inmate Disciplinary System was established pursuant to the Consent Decree entered into by the CCSO and the Department of Justice in the case of the *United States v. Cook County, et. al.*, 10 C 2946. In June, 2017, after eight years of federal court monitoring, the CCSO was dismissed from that Decree for establishing and maintaining substantial compliance with the Decree's requirements. The Agreed Order included important provisions regarding Protection from Harm including use of force, safety and supervision, security staffing, incidents and referrals, investigations, inmate disciplinary process, classification, inmate grievance procedure, and access to information. *Id.* at ECF No. 13, §§ III.A-H.

will then have an administrative hearing in front of a hearing board, which occurs within approximately a week.  If found guilty, the board may impose sanctions.

The second way is through a criminal charge of public indecency, which is a Class A misdemeanor. When a detainee is identified as having engaged in such conduct, an officer reports the incident.  Depending on whether the incident occurred in the jail or courthouse, either the CCSO Police or the deputy sheriff in the courthouse, respectively, will reach out to the victim to find out if he or she is willing sign a complaint.  If a complaint is filed, it is forwarded to the States Attorney's Office for a criminal charging decision, and the criminal process proceeds accordingly.

### *CCSO Actions to Prevent Public Indecency Misconduct by Detainees*

Besides providing appropriate response to the conduct through discipline and criminal charges, the CCSO set out to prevent this behavior.  Those measures include implementing the very steps that Plaintiffs now request: (1) the use of modified uniforms that restrict detainees' ability to reach and expose their genitals; (2) the use of handcuffs for those detainees who have engaged in this conduct; and (3) deputy sheriffs' monitoring of lockup locations.  Additionally, the CCSO has undertaken numerous other additional efforts to stop this prohibited conduct.

#### *Modified Uniforms*

In an effort to prevent the conduct from occurring at all, the CCSO has implemented the use of modified uniforms that restrict immediate access to the detainee's genitalia.  These uniforms were designed and made by the CCSO.  These uniforms are not available for wholesale purchase and must be manufactured in house by a seamstress who removes the buttons on the lower opening, sews it shut, and sews a new opening higher on the jumpsuit.  The uniforms are a specific green color, which is important to the deputies in order to visually identify those who have been found guilty of this conduct and more easily intercept any attempts to repeat such conduct despite the

modified uniform. (In addition to the modified uniforms, the CCSO also issued public indecency offenders a special ID so they could be easily identifiable to deputies.)

In August 2016, the uniforms were first designed and in October 2016, the uniforms were implemented. Prior to dispersing the uniforms, the CCSO apprised detainees of the modified uniforms, in town hall style meetings, to inform them of the modified uniform and how they would be used based on their inappropriate conduct. To date, the CCSO has made over 400 modified uniforms. Approximately 129 detainees currently wear the modified uniforms because they were found guilty of having engaged in indecent exposure or masturbation. Once found guilty, the detainees must wear the jumpsuit for the entirety of their incarceration at CCDOC.

The use of the uniform is punishment for engaging in indecent exposure or masturbation. Detainees do not like wearing the uniforms as they are more restrictive and difficult to put on and take off. Detainees who have been required to wear the uniforms have engaged in conduct objecting to the use of the modified uniforms, including ripping or burning them in microwave. The modified uniforms are viewed by detainees as a punishment for engaging in this conduct as well as an administrative sanction for engaging in the prohibited conduct.

Accordingly, the CCSO has not implemented the use of these uniforms for all detainees without a showing of such behavior, due process, and a guilty finding. Requiring all detainees to wear the modified uniforms would effectively impose a punishment on the entire detainee population, regardless of whether they have engaged in the prohibited conduct. Additionally, it would impair the deputies' ability to identify those detainees who have been found guilty administratively of having engaged in this conduct and more readily be able to intercept any attempts to repeat the conduct despite the modified uniform.

### *Handcuffing Procedures for Court Hearings at the Leighton Criminal Courthouse*

The CCSO has also tried to prevent detainee indecent exposure behavior through modified handcuffing procedures at the Leighton Criminal Courthouse. The CCSO enacted the following measures in March 2017, which are currently in effect. For those detainees who have been found administratively guilty of engaging in this conduct, the CCSO restricts the movement of these detainees, keeping them in the basement area of the courthouse until their case is called in the courtroom, rather than being placed un-handcuffed in the lock ups adjacent to the courtroom. Originally, the CCSO separated conduct that occurred in the jail and conduct that occurred in the courthouse lockups. The handcuffing procedure was used only for those who had committed the conduct in the courthouse lockups. In October 2017, however, the CCSO expanded the program to include all such conduct regardless of where the incident took place.

Also in October 2017, the CCSO began a new handcuffing initiative with respect to those detainees who have not engaged in such conduct. The CCSO brings those detainees up to the courthouse lockups as per common practice but handcuffs those detainees behind the back for transport to and from the courtroom, which had not been the practice prior to this conduct becoming so prevalent. Those detainees are reminded of why they are being handcuffed behind the back, namely because of this issue, and informed that if any of them engage in this behavior, all detainees in that particular lockup will be handcuffed behind the back for the remainder of their time in the courthouse that day.

The CCSO previously tried other measures regarding handcuffing in the Leighton courthouse. For example, in January 2016, the CCSO handcuffed all detainees in the courthouse lockups, regardless of whether they had been found guilty of engaging in such conduct. The CCSO

8

faced opposition from certain of the judges as well as certain of the APDs and subsequently discontinued this practice.

With respect to procedures regarding handcuffing detainees in the areas of Division 9 and 10 in jail to which APDs have access to visit clients, detainees utilizing their dayroom time generally must be unrestrained. See Section 720.60(b), Illinois Administrative Code, Municipal Jail and Lockup Standards: Supervision. As such, the CCSO does not handcuff detainees when they are permitted to move around the tier during their dayroom time. The detainees moving around the tiers are visually able to observe APDs meeting in private glass visiting rooms with their clients. The CCSO does not restrict the days and times when APDs can visit their clients, and thus they are permitted to visit their clients during times when detainees are moving about the tier on their dayroom time.

However, four tiers in Division 9 are part of the special management unit. Detainees found administratively guilty of engaging in this behavior are sentenced to a period of days in the special management unit. Pursuant to jail standards, detainees are not kept in the special management unit indefinitely, only to the extent of their sentence. Individuals in the special management unit are subject to special restrictions including having to wear a waist restraint system which restricts the use of their hands when moving about the tier. They are not subject to these same restrictions once they have completed their sentence in the special management unit.

Accordingly, the CCSO currently handcuffs in the Leighton Criminal Courthouse all detainees who have been found administratively guilty of engaging in such conduct. Consistent with jail standards as noted above, the CCSO does not handcuff those detainees when they are in the jail utilizing their dayroom time and visually able to observe APDs meeting with their clients.

### *Deputy Monitoring*

The CCSO has also tried to prevent detainee indecent exposure and masturbation incidents by using deputies to monitor the lockups in the courthouses. In the Leighton Criminal Courthouse, there are four courtrooms on a floor. In between each set of two courtrooms, there is a lockup area. There are typically four deputies assigned to each set of two courtrooms to monitor the two courtrooms and the adjoining lock up area. The APDs have been asked to adopt the following precautions: (1) not to enter the holding cell for visits with their clients without a deputy escorting them; (2) use a talk through box located on the 2nd and 3rd floors to conduct their client meetings; (3) or conduct their client meetings at the jail.

In February 2017, the CCSO placed five additional deputies on floors 4 through 7 in the Leighton Criminal Courthouse to provide additional monitoring in the holding cells. There was at least one additional deputy on each of the four floors with the courtrooms. In August 2017, due to Cook County budget constraints, the CCSO was required to reduce overtime costs and discontinued the use of the additional deputies. However, since that time the CCSO has assigned an additional between four and six management staff not subject to overtime pay requirements to provide additional monitoring in the lockups at the Leighton Criminal Courthouse, and as set forth above, to explain to those detainees in the courtroom lockups that if any detainee engaged in prohibited sexual activity, all detainees in that lockup will be handcuffed for the remainder of the court call. Accordingly, the CCSO currently has deputy sheriffs assigned to areas to include the lockup locations.

### *Other Measures*

The CCSO has employed several other measures to attempt to control this behavior by detainees. Listed below are some of the additional steps that the CCSO has taken.

- The CCSO has tried to prevent this behavior through changes in the law. In January 2016, the CCSO attempted to increase criminal penalties for public indecency, which is currently a Class A Misdemeanor. Only upon an individual's third conviction are felony charges and registration as a sex offender triggered. The CCSO introduced Senate Bill 2220 which would have triggered felony charges and sex offender registration upon the second conviction, if the act was committed in a custodial environment. The bill faced opposition from the CCPD. The bill was not passed. In early 2017, the CCSO also attempted to change the Cook County Code of Ordinances to allow the CCSO to issue citations in order to fine detainees who engage in public indecency acts. The Chief of Administrative Hearings for Cook County reviewed the proposal and found that Cook County lacked jurisdiction to issue and enforce such citations.

- The CCSO has tried to prevent this behavior through administrative sanctions as provided by jail standards. For example, the CCSO at various points in time has used the following measures with those detainees found administratively guilty of having engaged in such conduct: (1) revocation of "good time" credits; (2) transferring repeat offenders to jails in outlying counties; (3) restricting the visits of repeat offenders to only attorneys, clergy and parents; (4) requiring service of any special management unit time in Division 9 (viewed as undesirable by detainees) rather than any other division in which they were originally located; and (5) loss of commissary.

- The CCSO has also tried to prevent this behavior through other deterrent tactics. For example, the CCSO has used the following measures for those detainees found administratively guilty of having engaged in this behavior; (1) requiring those detainees to have an ID identifying them as having engaged in this conduct; (2) creating an Officer Safety Alert board with pictures of those detainees; and (3) calling the parents of those repeat detainees to explain why other family members were no longer permitted to visit.

- The CCSO created a special unit that only would house those detainees found administratively guilty of engaging in this conduct. In October 2016, the CCSO created a tier for such detainees in which placement imposed as a result of the administrative proceeding was 60 days for initial exposure offense and 90 days for multiple exposure offense. Detainees in that unit had restricted visits, restricted movement, restricted time out of the cell, and limited group interactions. Due to a number of issues, including some detainees believing it gave them a heightened status to be a part of the special unit, the CCSO discontinued the use of this special unit. Detainees who are administratively found guilty of this behavior and sentenced administratively to serve time in the special management unit now serve it with the general special management unit.

- The CCSO implemented measures to ensure that those detainees found administratively guilty of engaging in such conduct are tracked. Every detainee found guilty of such conduct is issued an "alert" in the Cook County Offender Management System. The CCSO is able to monitor those individuals through the alert to ensure that they are wearing the modified uniforms and being held handcuffed in the basement at the courthouse.

- The CCSO has worked to counteract any unintended benefits from detainees engaging in such conduct. In 2016, when the CCSO learned that some detainees were specifically engaging in such conduct so that they could leave the jail for transport to outlying courthouses for their criminal charge hearings (a trip detainees see as a benefit because they get a change of scenery), the CCSO worked with the Cook County Judiciary, the CCPD and the Cook County States Attorney's Office ("SAO") to move indecency court hearings to the Leighton Criminal Courthouse, in order to remove that incentive.

- The CCSO has increased regular internal assessment of this conduct to closely monitor the conduct. In 2016, the CCSO began monthly panel reviews to address this conduct as well as other types of incidents occurring in each division in the jail. The panel reviews are designed to help identify solutions to deal with these problematic issues and particular detainees. These monthly panel reviews remain in place.

- The CCSO has worked in concert with other stakeholders to try and prevent this behavior. Soon after the CCSO saw a rise in such incidents, in October 2015, CCSO executive staff contacted the CCPD and requested assistance in dealing with this behavior, including conducting town halls with detainees. The CCSO and the CCPD jointly held town halls during which they together explained the consequences related to this behavior, particularly having to register as a sex offender. Signs were also posted at the jail informing the detainees of the potential consequences for acts of indecent exposure in the jail and courthouses. In January 2016, CCSO executive staff again met with the assistant public defenders in person and by telephone to discuss actions that could be taken to decrease this behavior, including criminal prosecutions of the detainees engaging in the behavior. When the CCSO was advised that the APDs were reluctant to press charges against their clients, the CCSO urged the CCPD to reconsider, highlighting the need for all parties to present a consistent and unified approach. The CCSO has continued to work with the SAO to bring criminal charges against detainees who engage in this conduct asking that they expedite the prosecution of such cases.

In short, the CCSO has been vigilant in its work to prevent this prohibited conduct on the part of detainees. There are certain realities that must be regarded however. *First*, the CCSO must operate within the boundaries of the law, which include not only the constitutional rights of detainees but the various rules and regulations that govern their treatment. *Second*, there are other partners who play key roles in reaching an effective resolution. The CCSO has engaged other relevant entities, including the CCPD, the SAO, and the judiciary, to partner in its efforts to achieving effective solutions. Such solutions cannot be reached without the cooperative engagement of all of these important stakeholders working together in concert.

## II.     ARGUMENT

### A.     Legal Standard

In the Seventh Circuit it is well settled that "a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the USA, Inc.,* 549 F.3d 1079, 1085 (7th Cir. 2008) (internal citations and quotations omitted). The requirements for a temporary restraining order are the same as for a preliminary injunction. *Long v. Bd. of Educ., Dist. 128,* 167 F.Supp.2d 988, 990 (N.D.Ill. 2001). The moving party bears the burden of making a ***clear showing*** that it is entitled to the injunctive relief it seeks. *Goodman v. Ill. Dep't of Fin. & Prof'l Regulation,* 430 F.3d 432, 437 (7th Cir. 2005); *see also Recycled Paper Greetings, Inc. v. Davis*, 533 F. Supp. 2d 798, 803 (N.D. Ill. 2008) (stating that a "temporary restraining order or a preliminary injunction is an extraordinary and drastic remedy, which should not be granted unless the movant carries the burden of persuasion by a clear showing."). In supporting a motion for injunctive relief, the moving party must assert facts that demonstrate its right to relief—it cannot rely upon unverified allegations, allegations based upon information and belief, or conclusions. *See Illinois Migrant Council v. Pilliod*, 398 F. Supp. 882, 891 (N.D. Ill. 1975) (allegations "made in an unverified complaint . . . cannot be considered in support of the motion for preliminary injunction."); *see also Bowles v. Montgomery Ward & Co.*, 143 F.2d 38, 42 (7th Cir. 1944) (an application "for a preliminary injunction cannot be based upon information and belief, but must be based upon facts"). To determine whether a situation warrants a preliminary injunction, the Court engages in an analysis that proceeds in two distinct phases: a threshold phase and a balancing phase. *Girl Scouts,* 549 F.3d at 1085–86.

In the threshold phase, the party seeking must show that: (1) it will suffer irreparable harm without the injunction; (2) traditional legal remedies are inadequate; and (3) its claim has some

likelihood of success on the merits. *Goodman,* 430 F.3d at 1086. Only if the moving party meets its threshold burden, should the Court proceed to weigh the remaining factors "to determine whether the balance of harms weighs in favor of the moving party or whether the nonmoving party or public interest will be harmed sufficiently that the injunction should be denied." *Coronado v. Valleyview Public School District 365-U*, 537 F.3d 791, 795 (7th Cir. 2008) (citation omitted).

**B.      Plaintiffs' Requested Injunctive Relief Is Inappropriate**

As a threshold issue, the relief Plaintiffs seek in their motion for a temporary restraining order is improper. A preliminary injunction is intended to *preserve*, not change, the status quo while the court determines the merits of the case. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980) ("The purpose of a preliminary injunction is to preserve the status quo pending a final hearing on the merits."); *Jordan v. Wolke*, 593 F.2d 772, 773-74 (7th Cir. 1978) (denying a request for a preliminary injunction that did not maintain the status quo, but instead mandated the construction of new facilities); *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 1012 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006) ("before there has been a trial on the merits, the function of the court is not to take whatever steps are necessary to prevent irreparable harm, but primarily to keep things as they were, until the court is able to determine the parties' respective legal rights").

Here, as to Sheriff Dart, Plaintiffs request the Court to mandate the following relief:

- Order the CCSO to (1) require detainees to wear jumpsuits that restrict their ability to reach and expose their genitals; (2) handcuff detainees who have previous public indecency or sex crimes charges and/or convictions; and (3) assign deputy sheriffs to all lockup locations; and

14

- Appoint a "Sexual Harassment monitor" to complete an investigation and promptly implement policies, practices, and long-range solutions at the monitor's suggestion.

(Dkt. # 9 at 14). The aforementioned requests are either already in place and therefore moot or seek to alter —rather than preserve— the status quo. As evidenced by the CCSO's ongoing efforts to combat detainee indecency incidents, Sheriff Dart does not contend that the Court or the Parties should be content with the current level of such incidents occurring in Cook County facilities. However, as is clear by Plaintiffs' transformative relief requests, a temporary restraining order or preliminary injunction is simply not the appropriate mechanism for addressing this issue.

Moreover, Plaintiffs' request for the appointment of a "Sexual Harassment monitor" to "complete an investigation and promptly implement policies, practices, and long-range solutions" is improper. (Dkt. # 9 at 14). This request ignores that Plaintiffs have moved for *temporary* relief. By Plaintiffs' own words, a monitor would provide "long-range" relief and thus is patently inappropriate for a temporary restraining order.

Additionally, nowhere in Plaintiffs' Motion do they set forth any legal authority or reasoning for this request. In particular, Plaintiffs have failed to explain how the recommendation of a "Sexual Harassment monitor" would, or could, be binding on the Sheriff and his Office. To the extent Plaintiffs are seeking appointment of the monitor under Federal Rule of Civil Procedure 53, the appointment of a trial master is barred in jury trial cases such as this one, except if the parties consent. Fed. R. Civ. P. 53(a)(1)(B). Plaintiffs' suggestion that the Court should appoint a master to investigate and order the CCSO to take certain remedial actions, is also clearly impermissible under Rule 53.

Appointments of pretrial and post-trial masters must also meet standards that Plaintiffs have not met. A pre- or post-trial master may be appointed only when there are "matters that

cannot be effectively and timely addressed" by the court, a need that must be "clear." *Id.* 53(a)(1)(C), 2003 Amendment Committee Notes on Rules. The Seventh Circuit has held that "[i]t is axiomatic that judicial supervision of court orders should ordinarily be exercised directly by a judge rather than by referral to a master" and called the use of masters "the exception and not the rule." *Williams v. Lane*, 851 F.2d 867, 884 (7th Cir. 1988); *see Valley Forge Ins. Co. v. Hartford Iron & Metal, Inc.*, No. 14-cv-6, 2017 U.S. Dist. 10203 (N.D. Ind. Jan. 25, 2017) (recognizing a presumption against the use of masters). Given this exacting standard, the Court should not appoint a monitor here when plaintiffs have made no effort to identify any reason why the Court cannot supervise its own orders.

**C. Plaintiffs Do Not Have A Reasonable Probability Of Prevailing On The Merits Of Their Claims**

     *i.*     *Plaintiffs Cannot State a Section 1983 Sexual Harassment Claim Against Sheriff Dart in his Individual or Official Capacity.*

Plaintiffs' sexual harassment claim, asserted under section 1983, is one of two things—either (1) an untenable supervisory liability claim; or (2) a boilerplate *Monell* claim against Sheriff Dart in his official capacity.

        a.     Plaintiffs' Individual Liability Theories Are Not a Viable Means to Recover Against Sheriff Dart.

Under section 1983, a supervisor may be held individually liable for a *subordinate's* sexual harassment if he undertook a course of action related to the harassment "only because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015). Plaintiffs cannot satisfy this standard.

First, the alleged sexual harassment is being committed by detainees, not Sheriff Dart's subordinates. Second, Plaintiffs fail to allege that Sheriff Dart's efforts to prevent detainee indecency incidents were *intended* to be ineffective because of the impact this would have on

female PD employees. *Locke*, 788 F.3d at 670–71 (citations omitted).  Plaintiffs simply have not

pled, and in good faith cannot plead, allegations that would allow a jury to conclude that *Sheriff*

*Dart* had a purpose of discriminating against female PD employees because of their gender or

intended to treat them differently than male PD employees. *Id.; see also Schroeder v. Hamilton*

*Sch. Dist.*, 282 F.3d 946, 955 (7th Cir. 2002) (affirming that employee could not prevail on claim

that his supervisors violated his equal protection rights because the defendants allegedly failed to

address sexual harassment complaints one hundred percent effectively and to the employee's

satisfaction). To the contrary, as Plaintiffs admit in their own filing, Sheriff Dart has taken

numerous measures specifically designed to combat this behavior.  There is simply no good faith

basis to allege Sheriff Dart intentionally implemented ineffective measures in an effort to harass

female PD employees or otherwise treat them different them differently than male PD employees.

*See* (Dkt. # 9 at 6–7).[4]

Alternatively, the individual capacity claims against Sheriff Dart should be dismissed pursuant

to qualified immunity. "Qualified immunity shields government actors from liability for civil

damages where their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have been aware." *Hernandez ex rel. Hernandez v. Foster,*

657 F.3d 463, 473 (7th Cir. 2011) (internal citations omitted). "When making a qualified immunity

determination, a court considers (1) whether the plaintiff's allegations show that the defendant

violated a constitutional right, and (2) whether that right was 'clearly established' at the time of

defendant's conduct." *Id.*  While supervisors can be held liable under section 1983 for the sexual

---

[4] Plaintiffs also have not alleged, and cannot allege, that Sheriff Dart was personally involved in or acquiesced to Plaintiffs being treated differently because of their female gender, which likewise dooms their section 1983 claims. *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) (personal involvement required for section 1983 claims); *Zentmyer v. Kendall County,* 220 F.3d 805, 811 (7th Cir. 2000) (Although direct participation is not necessary, there must at least be a showing that the Sheriff acquiesced in some demonstrable way in the alleged constitutional violation).

harassment conducted *by and to their subordinates*, Sheriff Dart has not located any precedent in place as of November 2015[5] concerning a sheriff's, or comparable final policymaker's, individual liability to nonemployees for equal protection violations as a result of nonemployees being sexual harassed by other independent actors. Sheriff Dart, therefore, is entitled to qualified immunity on Plaintiffs' individual capacity claims. [6]

> b.      Plaintiffs' Boilerplate *Monell* Allegations Fail to State a Municipal Liability Claim.

To the extent that Count 1 (or Count 2) are intended to be *Monell* claims, these claims fail for the primary reason that Plaintiffs cannot state a constitutional claim against Sheriff Dart in his individual capacity. *Gonzalez-Koeneke v. Rockford Dist. 205*, No. 12 C 50311, 2014 WL 11370445, at *4 (N.D. Ill. June 16, 2014), *aff'd sub nom. Gonzalez-Koeneke v. West*, 791 F.3d 801 (7th Cir. 2015) ("[A] *Monell* claim cannot stand on its own, there must be an underlying violation of a constitutional right") citing *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010).

Additionally, Plaintiffs allege nothing more than boilerplate *Monell* allegations, which are insufficient to state a claim. In order to state a facially plausible equal-protection claim under *Monell,* Plaintiffs must allege factual allegations that allow for the reasonable inference that Sheriff

---

[5] As discussed *supra*, for qualified immunity purposes the law must be clearly established *at the time of the defendant's allegedly unconstitutional conduct. Hernandez,* 657 F.3d at 473. Because Plaintiffs allege here that Sheriff Dart's conduct has violated their constitutional rights since 2015 (and the statute of limitations for their federal claims runs from November 8, 2015— 2 years before their filing) the law deeming Sheriff Dart's conduct as unconstitutional must have been clearly established on November 8, ***2015***.

[6] Plaintiffs also will be unable to meet the requirements of class certification because the composition of the proposed class depends on a legal conclusion that Sheriff Dart is liable. Such a "fail safe" class is impermissible because it "precludes the possibility of an adverse judgment against class members [because] the class members either win or are not in the class." *See e.g. Genenbacher v. Centurytel Fiber Co. II*, 244 F.R.D. 485, 488 (C.D. Ill. 2007) (holding that proposed "fail-safe" class failed to meet the requirements of Rule 23(c)(3) because it precluded the Court from entering an enforceable adverse judgment against at least some of the proposed class members); *see also Brazil v. Dell Inc.*, 585 F.Supp.2d 1158, 1167 (N.D. Cal. 2008) (holding that proposed class of citizens who purchased products that "Dell *falsely* advertised" could not be ascertained because the court would have to first resolve a legal question that implicated the merits of the underlying claims).

Dart established or promulgated a policy or practice of intentionally discriminating against female PD employees in the provision of protection from detainee sexual harassment. *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011). "Because the Equal Protection Clause is "concerned ... with equal treatment rather than with establishing entitlements to some minimum of government services, [it] does not entitle a person to adequate, or indeed to any, [law enforcement] protection."" *McCauley*, 671 F.3d at 618 (citations omitted).

Here, Plaintiffs simply allege that "[n]one of the measures taken by Defendant Dart… were effective or permanent solutions" and that this (somehow) amounts to "*de facto* policies, patterns, practices and/or customs of official conduct of acquiescence and deliberate indifference to" detainees' sexual harassment of female APDs. (Dkt. # 1 ¶¶ 68, 109–10). If, as here, the factual allegations in the complaint at most plausibly suggest the uneven allocation of limited protection services, but do *not* suggest the intentional omitting of protective services exclusively from a particular protected class, a *Monell* equal protection claim will not stand. *Id.* at 619. That is the case here. "In essence, the complaint alleges that [the CCSO] failed to promulgate specific policies for this particular class of crime victims [female PD employees], not that [the CCSO] denied this class of victims *equal* protection." Thus, to the extent Plaintiffs are attempting to state a *Monell* equal protection claim, it will be dismissed.

ii.    *Plaintiffs Cannot State a § 1985 or § 1986 Conspiracy Claim Against Sheriff Dart*

Plaintiffs assert in a single sentence that the liability under 42 U.S.C. 1985 and 1986 is clear, but provide no support or argument to this effect. Far from being likely to succeed on the merits, Plaintiffs' conspiracy claims are not made in good faith and are subject to dismissal.

To show liability under section 1985(3), Plaintiffs must demonstrate "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection under the

laws, (3) an act in furtherance of the alleged conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens." *Brokaw v. Mercer County*, 235 F.3d 1000, 1024 (7th Cir. 2000). Even at the pleadings stage, Plaintiffs' claim fails for several reasons.

*First*, Plaintiffs have failed to allege the required mental state. Plaintiffs must allege some "class-based invidiously discriminatory animus behind the conspirator's action." *Id.; see also Kyle v. Morton High School*, 144 F.3d 448, 457 (7th Cir. 1998) (A plaintiff "must allege a conspiracy motivated by a racial or other class-based animus" to state a § 1985 conspiracy claim). Simple conclusory allegations or the recitation of legal terms is insufficient. *Henderson v. Marker*, 581 F.App'x 577, 579–80 (7th Cir. 2014) (unpublished) (affirming dismissal of section 1985 claim); *Phillips v. Baxter*, No. 16-cv-8233, 2017 U.S. Dist. LEXIS 79239, at *7 (N.D. Ill. May 24, 2017) (dismissing section 1985 claim when plaintiff merely asserted a discriminatory motivation, without citation to facts); *Linda Constr. Inc. v. Allied Waste Indus.*, No. 15-cv-8714, 2017 U.S. Dist. LEXIS 48367, at *16–21 (N.D. Ill. Mar. 31, 2017) (same). Here, Plaintiffs have not alleged a discriminatory animus or intent, much less proffered any facts or evidence that would establish such an intent.

*Second*, Plaintiffs have failed to allege any facts establishing a conspiracy. Rather, Plaintiffs' entire "conspiracy theory is based upon a boilerplate allegation that defendants "reached an understanding." (Dkt. # 1 ¶ 122). However, Plaintiffs' own allegations clearly undermine any "conspiracy" between Sheriff Dart and Defendant Campanelli. Indeed, Plaintiffs allege that Sheriff Dart and Defendant Campanelli *disagreed* on several suggested remedies —including— handcuffing detainees in lockup. (Dkt. # 1 ¶ 63.) Moreover, Sheriff Dart's efforts to implement effective statutory changes were opposed by Defendant Campanelli. Curry Dec. ¶ 29. The Complaint's threadbare assertion of an "understanding" is wholly unsupported by any factual

20

allegations and fails to render the required element of conspiracy plausible. *Adamski v. McGinnis*, No. 13-cv-962, 2015 U.S. Dist. LEXIS 40501, at *10 (E.D. Wis. Mar. 30, 2015); *Linda Constr. Inc.*, 2017 U.S. Dist. LEXIS 48367, at *25–28.

*Third*, Plaintiffs' claim is barred because they attempt to claim a conspiracy among members of a single government entity, who cannot have conspired with one another under the intracorporate conspiracy doctrine. *Wright v. Illinois Dept't of Children & Family Servs.*, 40 F.3d 1492, 1508–09 (7th Cir. 1994); *Phillips v. Baxter*, 2017 U.S. Dist. LEXIS 79239, at *7–8. A conspiracy cannot exist solely among members of Cook County. *Johnson v. County of Cook*, No. 08-cv-2139, 2009 U.S. Dist. LEXIS 10251, at *22–26 (N.D. Ill. Feb. 10, 2009) (holding intracorporate conspiracy doctrine applied and dismissing claim that Cook County employees had conspired to violate plaintiff's rights).

*Fourth*, Plaintiffs' section 1985 claim is superfluous of their section 1983 claim. The Seventh Circuit has held that the purpose of section 1985 is to impose liability on "a private actor who has conspired with state actors." *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009). When all defendants are state actors, "a § 1985(3) claim does not add anything except needless complexity." *Id.*; *accord Turley v. Rednour*, 729 F.3d 645, 649 & n.2 (7th Cir. 2013). Thus, to survive dismissal, "a conspiracy claim requires that private actors are involved." *Baker v. City of Chicago*, No. 12-cv-0092, 2012 U.S. Dist. LEXIS 11428 (N.D. Ill. Jan. 30, 2012). Here, Plaintiffs have not alleged that any private actors are involved in a "conspiracy."

Accordingly, Plaintiffs' section 1985 individual capacity claim against Sheriff Dart is deficient and subject to dismissal. Their section 1986 claim similarly fails, because it is dependent on the section 1985 claim. *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008). Likewise, to the extent these are attempts at *Monell* claims, they fail for the reasons discussed in Section C.i.b.

      iii.     *Plaintiffs Cannot State a Claim Under the Illinois Gender Violence Act Against Sheriff Dart*

Plaintiffs cannot state a cause of action against Sheriff Dart under the Illinois Gender Violence Act ("IGVA"). In order to state a claim under the IGVA, Plaintiffs must prove that Sheriff Dart perpetrated gender-related violence by "personally committing the gender-related violence or personally encouraging or assisting the act or acts of gender-related violence." 740 ILCS 82/10. The mere suggestion that Sheriff Dart engaged in such conduct is absurd and possibly defamatory.

*First*, Plaintiffs do not (and cannot in good faith) allege any facts suggesting that Sheriff Dart encouraged and/or assisted detainees in committing acts of gender-related violence. For this reason alone, Plaintiffs' claim will fail.

At most, Sheriff Dart's actions allegedly amount to deficient supervision through failing to implement Plaintiffs' preferred harassment prevention policies, not the encouraging or assisting harassment required by the IGVA. But, this too fails as allegations of inaction or failure to supervise or do not amount to encouraging or assisting under the Act. *Doe v. PSI Upsilon Int'l*, 963 N.E.2d 327, 329, 331–32 (Ill. App. Ct. 1st Dist. 2011) (holding plaintiff could not allege liability under the IGVA by alleging that the defendant fraternity had permitted drinking and made plaintiff more susceptible to violence); *Watkins v. Steiner*, No. 5-11-421, 2013 Ill. App. (5th) 110421-U, at *P13 (Ill. App. Ct. 5th Dist. Jan. 14, 2013) (unpublished) (holding that failure to supervise is not encouraging or assisting); *see also Doe v. Sobeck*, 941 F. Supp. 2d 1018, 1028 (S.D. Ill. 2013) (defendants who failed to act were not liable under the act).

*Second*, Sheriff Dart is immune from liability under the Illinois Tort Immunity Act, which provide that a public employee is not liable for, among other things, an act or omission in determining policy, a failure to enforce any law, or an injury caused by the act or omission of

another person. 745 ILCS 10/2-201, 204, 205. Under these provisions of the Tort Immunity Act, Sheriff Dart is immune from any claim for the alleged failure to protect or prevent actions by the detainees. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 920–21 (7th Cir. 2015) (affirming dismissal of claims that defendant police office and municipality failed to protect plaintiff from criminal acts of others on immunity grounds); *Payne v. Churchich*, 161 F.3d 1030, 1044 (7th Cir. 1998) (sheriff immune from vicarious liability under state law).

**D.  Plaintiffs Have Not Established That They Will Suffer Irreparable Harm Absent Injunctive Relief**

Even if Plaintiffs had viable claims and their requested remedies were appropriate for an injunction, the record is devoid of evidence that Plaintiffs will *clearly* be irreparably harmed absent their requested relief.

*i.  Plaintiffs' Delay in Seeking Injunctive Relief Militates Against Finding Irreparable Harm as to Sheriff Dart.*

The moving party bears the burden to show that the irreparable injury is more than merely speculative. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 536 F.2d 730, 736–37 (7th Cir. 1976) ("[o]ne prerequisite for injunctive relief is, of course, irreparable injury, and that injury must be more than speculative."). "Several Circuits have observed that delay in pursuing a preliminary injunction undercuts a claim of irreparable injury." *AARP v. United States Equal Employment Opportunity Comm'n*, 226 F. Supp. 3d 7, 22 (D.D.C. 2016) citing *Ty, Inc. v. Jones Grp. Inc.*, 237 F.3d 891, 903 (7th Cir. 2001); *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995); *Fund for Animals v. Frizzell*, 530 F.2d 982, 987 (D.C. Cir. 1975); *see also RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1211 (10th Cir. 2009) ("delay in seeking preliminary relief cuts against finding irreparable injury") (citations omitted). Simply put, unexplained delay may "standing alone, ... preclude the granting of preliminary injunctive relief ... because the failure to

act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd.*, 60 F.3d at 968 (internal quotation marks and citations omitted).

Plaintiffs' delay in seeking injunctive relief militates against a finding of irreparable harm as to Sheriff Dart. As detailed above and in Plaintiffs' Complaint, the Parties acknowledge that since 2015, the CCSO has implemented (or attempted to implement) various policies and procedures to combat detainee public indecency incidents directed at female APDs. Plaintiffs allege that "[d]uring the last two years, the named Plaintiffs and other similarly situated female APDs and law clerks have been repeatedly and increasingly subjected to incidents of indecent exposure, masturbation, assault and battery." (Dkt. #1 at ¶ 23; *see also* ¶¶ 39–41, 43–45, 51–52, 118). Indeed, Plaintiffs cite the "longevity" of the ongoing indecent exposure incidents. (Dkt. # 1 at ¶ 89). Nevertheless, Plaintiffs' motion for injunctive relief comes more than two years after the start of these incidents.[7] Plaintiffs' "wait-and-see" response to the CCSO's continuing efforts to stop detainee indecency incidents contradicts the appropriateness of a temporary restraining order as to Sheriff Dart. *See Summers v. Smart*, 65 F.Supp.3d 556, 568, n.8 (N.D. Ill. 2014) (denying motion for preliminary injunction where plaintiffs adopted a "wait-and-see" strategy before moving for a preliminary injunction to address the chief sources of the constitutional harms that they advance). Accordingly, Plaintiffs' actions of waiting more than two years before moving for a temporary restraining order belie any argument that an injunction is necessary to prevent irreparable harm. As evidence thereof, the CCSO has seen a decrease in the number of detainee indecent exposure incidents in 2017.

---

[7] Sheriff Dart acknowledges that Plaintiffs' motion may be appropriate as to removing the PD's October 31, 2017 directive restricting Plaintiffs' access to their clients.

24

ii.    *Plaintiffs' Failure to Avail Themselves of Available Alternatives also Weighs Against Finding Irreparable Harm.*

In the context of a request for injunctive relief, the movants' failure to avail themselves of potentially mitigating alternatives undermines any claim of irreparable harm. *Students v. United States Dep't of Educ.*, No. 16-CV-4945, 2016 WL 6134121, at *38 (N.D. Ill. Oct. 18, 2016) citing *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 679 (7th Cir. 2012); *see also Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F.Supp.2d 809, 818 (E.D. Mich. 2013) ("'[I]rreparable harm will not be found where alternatives already available to the plaintiff make an injunction unnecessary.'") quoting *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1248 (N.D. Iowa 1995).

The CCSO continues to provide female APD employees with many avenues through which their exposure to detainee indecency incidents can be mitigated. The CCSO asked female APD employees to do the following:

- enter the lockups for visits with detainees only with a deputy escort;

- use a talk through box located in certain lockup cells in the Leighton courthouse

- conduct their client meetings at the CCDOC; and

- file criminal complaints against detainees who engage in indecent exposure conduct.

*See* Curry Dec. ¶¶ 9, 25.

However, many female PD employees chose not to avail themselves of these potentially mitigating alternatives; indeed, "many APDs do not press charges." (Dkt. # 1 at 12). Thus, to the extent that Plaintiffs have failed to avail themselves of these mitigating alternatives, their claims of irreparable harm are futile.[8]

---

[8] At this juncture, it is uncertain whether Plaintiffs themselves did not avail themselves of the Sheriff's mitigating alternatives. Due to the potentially dispositive nature of these facts, Sheriff Dart requests that the Court permit them to engage in limited discovery on this issue prior to ruling on Plaintiffs' motion for injunctive relief.

     *iii.     Plaintiffs' Alleged Harms are Speculative*

     Plaintiffs also fail to satisfy their burden of clearly showing they are likely to experience irreparable harm because they have alleged nothing more than speculative injury. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The case of *Whitby v. Dr. John Warner Hosp.*, No. 11-3112, 2011 WL 1670458, at *3 (C.D. Ill. Apr. 29, 2011) is directly on-point. In *Whitby*, the plaintiff had a three-year employment contract with the defendant hospital, but in the second year of the contract the hospital terminated the agreement. *Id.* at *1-3. Plaintiff sought an injunction asking the court to stay her termination of employment so that she could provide her patients with notice of her departure. *Id.* at *3. Plaintiff argued that she would suffer irreparable harm because: "(1) she could potentially be subject to a charge under 225 ILCS 60/22(A)(16) for willfully abandoning her patients; and (2) a health-care practitioner leaving her practice must provide the public with 30 days' notice … and the failure to do so could subject her to a disciplinary charge under 225 ILCS 60/22(A)(37)." *Id.* at *7. In denying the injunction, the Court held that the plaintiff failed to show irreparable harm because the claimed harm was pure speculation and an award of damages would adequately compensate her. *Id.* at *7-8.

     Similarly, here, Plaintiffs appear to argue that they will suffer irreparable harm because if their requested relief is not granted, they may face ARDC charges, discipline from CCPD, or additional instances of detainee indecent exposure. (Dkt. # 9 at 12–13). However, the Supreme Court's "frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). As the Court recognized in *Whitby*, even if Plaintiffs may be subject to professional

or internal discipline from CCPD, "whether Plaintiff[s] would be so disciplined is merely speculative." *Id*. at *3.[9]

So too is the notion that Plaintiffs will immediately experience further incidents of detainee indecent exposure, especially because (1) Plaintiffs claim they are currently not visiting their clients in Cook County facilities due to the PD's directive (Dkt. #1 at ¶¶ 77, 88; Dkt. # 9 at 8, 12–13); and (2) the CCSO continues to implement new measures to combat these incidents (*See generally* Curry Dec.).[10] *See Flood v. O'Grady*, No. 89 C 9043, 1990 WL 17102, at *1 (N.D. Ill. Feb. 5, 1990) (denying motion for injunctive relief despite plaintiff's assertion "that he could in the future be subject to some other kind of harassment."); *see also Robinson v. Maentanis*, No. 95 C 6982, 1997 WL 391830, at *2 (N.D. Ill. June 9, 1997), *aff'd*, 139 F.3d 902 (7th Cir. 1998) ("absent a sufficient likelihood that an individual will be wronged in a similar way, that individual is not entitled to an injunction") citing *Daniels v. Southfort,* 6 F.3d 482, 485 (7th Cir. 1993) (plaintiff who sought to enjoin police officers from "harassing" him was denied relief where he failed to establish a reasonable probability that future violations would occur); *Robinson v. City of Chicago,* 868 F.2d 959, 966 (7th Cir.1989), *cert. denied,* 493 U.S. 1035 (1990) (plaintiff had no standing to seek injunctive relief where the possibility that he would suffer any injury as a result of the City's detaining practice was "too speculative"); *Chavez v. Illinois State Police,* No. 94 CV 5307, 1996 WL 66136, *5 (N.D. Ill. Feb. 13, 1996). Issuing a temporary restraining order based on the *possibility* of such harm, much less irreparable harm, is inconsistent with the Supreme

---

[9] Sheriff Dart also notes that any alleged irreparable harm as a result of the PD's Directive (over which the Sheriff has no control) is occurring to the PD's *clients* who are allegedly being prohibited from meeting with their attorneys as a result of this directive. The PD's female employees are being protected, not harmed, by the directive.

[10] As discussed above, recent measures that the CCSO introduced to combat detainee indecent exposure and masturbation incidents include keeping detainees found administratively guilty of such conduct out of the courtroom lockups and warning detainees who have not engaged in such conduct, and thus are in courtroom lockups during court calls, that they will be handcuffed for the duration of the call if any detainee in the courtroom lockup engages in such conduct. *See* Curry Dec.

Court's "characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S.at 22.

> iv. *Even if Irreparable Harm Were Sufficiently Established, the Requested Relief Is Unlikely to Redress the Alleged Harm.*

Even if it was likely that Plaintiffs will immediately experience additional incidents of detainee indecent exposure and/or professional discipline if they visit detainees in the Sheriff's facilities, it is not clear that the injunctive relief sought would actually redress the harm alleged in this case. In their Motion, Plaintiffs cite *Doe v. Univ. of Chicago,* No. 16 C 08298, 2017 WL 818859, at \*3 (N.D. Ill. Mar. 2, 2017) to support that they have carried their burden of clearly showing they would suffer irreparable harm absent injunctive relief. (Dkt. # 9 at 11). However, the Court in *Doe v. Univ. of Chicago* found that the plaintiff *failed* to establish irreparable harm despite his claimed psychological injuries due to university policies that may not be fully addressed by an award of damages. *Id.* The Court reasoned that because the Universities conduct was not the sole cause of the plaintiff's alleged injuries, it was not clear that a preliminary injunction would actually redress the harm alleged. *Id.*

Here, Sheriff Dart certainly cannot be said to be the sole cause of Plaintiffs' alleged injuries. It is indisputable that the underlying cause of Plaintiffs' injuries is the independent criminal conduct of the detainees. Plaintiffs also claim that the PD's directive (over which Sheriff Dart has no control) is causing them harm. (Dkt. # 9 at 12–13). Therefore, even if Sheriff Dart provided the relief requested, it is not clear that Plaintiffs' claimed harm would be remedied. Indeed, as Plaintiffs acknowledge in their Complaint, the CCSO has attempted constitutionally permissible forms of the suggested avenues of relief (i.e., placing detainees adjudicated guilty of this conduct in restrictive jumpsuits and requiring them to remain in handcuffs while awaiting their court hearings, assigning extra deputies to court lockup locations, and implementing a variety of

other new policies and practices to stop detainee harassment of female APDs, law clerks and deputies), and none of these measures were able to fully eradicate the problem. For this additional reason, Plaintiffs' motion for a temporary restraining order should be denied.

**E.    Plaintiffs Cannot Establish an Inadequate Remedy at Law or Irreparable Harm Because Their Prayer for Relief Specifically Seeks Monetary Damages.**

It is axiomatic that "[t]he absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Machinery Co. v. Dresser Industries, Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). When damages are available as a remedy, it is beyond question that the plaintiff has an adequate remedy at law. *Id.* ("[i]n saying that the plaintiff must show that an award of damages at the end of trial will be inadequate, we do not mean wholly ineffectual; we mean seriously deficient as a remedy for the harm suffered."); *see also See Jones v. Infocure Corp.*, 310 F.3d 529, 535 (7th Cir. 2002) (holding that injunctive relief was not appropriate where "money damages, should [plaintiffs] be able to prove that they are entitled to any, will be an adequate remedy."); *Diginet, Inc. v. Western Union ATS, Inc.*, 958 F.2d 1388, 1393 (7th Cir. 1992) ( "a harm that will be cured by the entry of the final judgment supplies no reason for interim relief.")

By citing *Roland Machinery Co.*, 749 F.2d at 386, Plaintiffs acknowledge that they must show that the monetary damages they seek to recover from Sheriff Dart are "seriously deficient as a remedy for the harm suffered." (Dkt. # 9 at 13). Yet, Plaintiffs have failed to meet this burden. Plaintiffs claim that their injunctive relief is adequate because this alone will allow them safe access to their clients without fear of professional discipline. (Dkt. # 9 at 13–14). However, as discussed *supra*, it is far from certain that the requested injunctive relief would stop detainees from committing crimes of public indecency in front of female APDs and law clerks.

Moreover, to the extent Plaintiffs claim they may endure emotional suffering if injunctive relief is not granted, it is well established that only in extraordinary circumstances will monetary

damages be insufficient to rectify emotional harm. *Students*, at 2016 WL 6134121, at *37 (finding inadequate remedy at law prong was not met because plaintiffs' alleged emotional distress could be repaired by money damages after a final judgment).  Plaintiffs clearly recognize this as they seek a monetary damages award for Sheriff Dart's alleged wrongdoing.  As their prayers for relief request:

- Backpay and lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;

- Compensatory damages;

- Punitive damages against Defendants Dart and Campanelli, in their individual capacities, including as permitted by law;

- Paid time off…;

- Attorneys' fees and costs; and

- Post-judgment interest

(Dkt. # 1 at 23, 25–27).  Accordingly, if Plaintiffs ultimately prevail on the merits of this action, they can be fully compensated pursuant to an award of damages.  Plaintiffs' general, speculative and conclusory claims that they lack adequate legal remedies are insufficient to carry their burden. *Students*, 2016 WL 6134121, at *37 citing *Lane v. Buckley*, 643 Fed.Appx. 686, 689 (10th Cir. 2016) ("'As a general rule, ... a district court should be wary of issuing an injunction based solely upon allegations and conclusory affidavits submitted by plaintiff.'") quoting *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1575 (Fed. Cir. 1990); *Gatsinaris v. ART Corp. Sols., Inc.*, 2015 WL 3453454, at *8 (C.D. Cal. May 29, 2015); *McDavid Knee Guard, Inc. v. Nike USA, Inc.*, 683 F. Supp. 2d 740, 749 (N.D. Ill. 2010).

**F.    The Harm to the Public and the CCSO if the Injunction is Issued Outweighs any Potential Harm to Plaintiffs**

Assuming, *arguendo*, that Plaintiffs could meet the threshold requirement, weighing of the respective harms favors denying an injunction.  The equitable inquiries—whether the threatened injury to Plaintiffs outweighs the harm an injunction would inflict on the public and the CCSO— may be considered together. *Martin v. Helstad*, 699 F.2d 387, 392 (7th Cir. 1983). In this context, the public interest means "the consequences of granting or denying the injunction to non-parties." *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11-12 (7th Cir. 1992).

Here, the relief Plaintiffs request related to Sheriff Dart will cause substantial harms to his Office and the public.  Plaintiffs' injunctive relief related to Sheriff Dart is that he: (1) require detainees to wear jumpsuits that restrict their ability to reach and expose their genitals; (2) handcuff detainees who have previous public indecency or sex crimes charges and/or convictions; (3) assign deputy sheriffs to all lockup locations; and (4) that the Court appoint a "Sexual Harassment monitor" to investigate and make policy recommendations to stop detainee harassment of female PD employees. (Dkt. # 9 at 14–15).

Plaintiffs' first request —that all detainees be required to wear restrictive jumpsuits— essentially seeks to impose an unwarranted punishment on approximately 6,400 out of 6,500 detainees in the Sheriff's custody who are not involved in public indecency incidents. (Dkt. # 9 at 14; Curry Dec. ¶ 11).  Since October 2016, the CCSO has required detainees *found guilty of indecently exposing themselves to or masturbating in the presence of* the PD's or Sheriff's employees to wear uniforms that restrict their immediate access to their genitalia. Curry Dec. ¶¶ 10, 13.  Extending the modified uniform requirement to *all* Cook County detainees would indiscriminately punish detainees without cause, which may constitute a constitutional violation. Moreover, because the modified uniforms are not available for purchase, they must be individually

tailored by the CCSO's sole seamstress. Curry Dec. ¶ 9.  Thus, the request that the CCSO produce and thousands of additional modified uniforms and that the detainees wear these modified uniforms regardless of whether they have been adjudicated of having engaged in prohibited sexual conduct is potentially violative of detainee rights, burdensome, and certainly impossible in Plaintiffs' requested twenty-four hour period.

Plaintiffs request that detainees who have engaged in this conduct and other sex crimes be handcuffed at all times also may tread on the constitutional rights of those detainees.  Presently, the CCSO handcuffs detainees who have been administratively adjudicated guilty of indecent exposure or masturbation while they have been pre-trial detainees. Curry Dec. ¶ 15.  To the extent that Plaintiffs are also requesting these detainees be handcuffed at all times while in the jail, adopting such a procedure would present both a safety risk to the handcuffed detainees and violate Municipal Jail and Lockup Standards outlined in the Illinois Administrative Code. Curry Dec. ¶ 17; Ill. Admin. Code tit. 20, § 720.60(b).  The requested relief would also restrict detainees from using their recreational and dayroom time, which correctional research and experience has shown increases positive behavior and supports the mental health of detainees. Curry Dec. ¶ 22.  The harm to the CCSO and non-parties if Plaintiffs' overreaching handcuffing request is granted clearly outweighs any potential harm to Plaintiff if this relief is not provided.

Plaintiffs' third request —that deputies be assigned to all lockup locations— is already essentially in place in that in the Leighton courthouse two deputies are typically assigned to oversee and monitor a courtroom and its adjacent lockup area.  *See* Curry Dec. ¶ 22.  Despite budget constraints, the CCSO has also instituted the additional measure of placing between four and six staff (who are not entitled to overtime) to provide monitoring covering the lockups on the four courtroom floors in the Leighton courthouse. Curry Dec. ¶ 26.

Lastly, appointment of a "Sexual Harassment monitor" would be a great detriment to the public while at best yielding uncertain results for Plaintiffs. Plaintiffs' request for a "Sexual Harassment monitor" is puzzling in light of the fact that the sexual harassment at issue here is not being perpetuated by the Sheriff's employees or Plaintiffs' coworkers, but rather detainees in a penal institution. A "Sexual Harassment monitor" may have expertise to advise on sexual harassment policies and practices in the context of a typical work environment. However, the "monitor" is unlikely to have the necessary expertise on jail standards and regulations to opine on implementing legally permissible and advisable jail policies and practices to handle *detainees'* sexual harassment of females within a penal environment. The Sheriff's experienced jail executives have been unable to completely eradicate detainee public indecency incidents despite two years of implementing a wide variety of efforts. *See generally* Curry Dec. Appointing a "Sexual Harassment monitor" will not yield better results, will merely saddle the Cook County taxpayers with paying for a service that offers little value and may reduce the effectiveness of the Sheriff's current specialized efforts to combat detainee public indecency incidents. *See e.g. Godinez v. Lane*, 733 F.2d 1250, 1261–62 (7th Cir. 1984) (reversing preliminary injunction and modification requiring prison to provide additional security because "the district court's interference in the daily operation and maintenance of the Pontiac maximum security prison conflicts with Illinois law and, in turn, the interests of Illinois citizens" and went "far beyond the scope of a preliminary injunction."); *see also Winter*, 555 U.S. at 26 (finding that the lower courts failed properly to defer to senior Navy officers' judgments about how the requested injunction would reduce the effectiveness of their training exercises).

"[T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging

deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *see also Gardner v. Dart*, No. 13 C 7623, 2014 WL 2611222, at *2 (N.D. Ill. June 9, 2014) (recognizing same that deference should be given to prison officials' policies related to visitor safety). Sheriff Dart respectfully requests that the Court accord deference to the CCSO as it continues its ongoing efforts to prevent and deter detainee indecency efforts while respecting constitutional rights, balancing budgets and preserving security, order and discipline within the Cook County jail and courthouses.

## III.    CONCLUSION

Plaintiffs' request for a temporary restraining order and preliminary injunction hearing should be denied because it seeks relief that seeks inappropriate relief that abrogates the Supreme Court's stated purpose for granting injunctive relief and otherwise has no basis in the law. Plaintiffs also cannot meet the threshold requirements for an injunction because they have failed to clearly showing they will suffer irreparable injury absent the Court granting their requested relief. Furthermore, Plaintiffs will not succeed on the merits as they cannot state their purported claims against Sheriff Dart, nor have they demonstrated that they lack an adequate remedy in law. Even if Plaintiffs had met their threshold burden, their motion must still be denied as a balancing of the respective harms reveals that the public and the CCSO would be suffered a greater harm than Plaintiffs if the injunction were granted. For these reasons, Sheriff Dart respectfully requests that the Court deny Plaintiffs' motion for a temporary restraining order and request for a preliminary injunction hearing.

To the extent the Court is inclined to address Plaintiffs' Motion as a preliminary injunction and grant any portion thereof, Sheriff Dart respectfully requests that the Court stay this action and suspend any ordered injunction pending the Sheriff's appeal. FRAP 8(a)(1)(C).

Dated:  November 15, 2017

Respectfully submitted,

THOMAS DART

By:  ___ s/ Christina M. Egan _____
One of His Attorneys

Christina M. Egan (# 6229194)
Katherine P. Lennox (# 6314024)
MCGUIREWOODS LLP
77 West Wacker Drive, Suite 4100
Chicago, Illinois 60601
P:  (312) 849-8100
F:  (312) 849-3690
cegan@mcguirewoods.com
klennox@mcguirewoods.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2017, I electronically filed the foregoing *Defendant Sheriff Thomas Dart's Opposition to Plaintiffs' Motion for Entry of Temporary Restraining Order and Scheduling of Preliminary Injunction Hearing* with the Clerk of the Court using the CM/ECF system, which will send notification and service of such filing to all registered counsel of record.


s/ Christina M. Egan
Christina M. Egan