**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM, JULIE HULL, ROCIO ARMENDARIZ, BRETT GALLAGHER, RACHELLE HATCHER, KYAN KEENAN, TAKENYA NIXON,  CARLY PATZKE, STEPHANIE SCHLEGEL, ASHLEY SHAMBLEY, CORYN STEINFELD, NIYATI THAKUR, JULIE WILLIS, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-cv-8085  Judge Matthew Kennelly Magistrate Judge Daniel Martin |
| Plaintiffs, | ) ) ) ) | |
| COOK COUNTY; AMY CAMPANELLI, in her official capacity as Public Defender of Cook County; and THOMAS DART, in his official capacity as Sheriff of Cook County, | ) ) ) ) | |
| Defendants. | | |

### PLAINTIFFS' NOTICE OF FILING FIRST AMENDED COMPLAINT

PLEASE TAKE NOTICE that on January 31, 2018, Plaintiffs filed their First Amended Complaint.

1. Pursuant to this Court's order of December 21, 2017 (Dkt. 68), Plaintiffs file their First Amended Complaint in lieu of briefing the Motions to Dismiss filed by Defendants Law Office of the Cook County Public Defender and Amy Campanelli in her Official Capacity (Doc. 59 & 66) and Defendant Amy Campanelli, in her individual capacity (Doc. 63 & 64).

2. Plaintiffs' amendments fully address and moot the issues raised in Defendants' motions to dismiss.

3. Plaintiffs have amended the allegations regarding their §1983 claims to address each of Defendants' arguments in their motions to dismiss. As set forth in the First Amended Complaint, Plaintiffs do not seek to impose strict liability on Defendants for the detainees' sexual misconduct. Rather, Defendants' liability is based on their actions, policies, and deliberate indifference, individually and in concert, that have encouraged an environment to flourish whereby male detainees brazenly and routinely engage in indecent exposure of genitals, masturbation, sexual comments and threats toward female APDs with impunity.

4. Plaintiffs have omitted the following claims at issue in Defendants' Motions to Dismiss, as well as related issues with respect to Defendant Dart:

    a. All claims against the Cook County Public Defender's Office as an entity;
    b. Claims for conspiracy under §§ 1985 and 1986 as against all Defendants (CCPD, Campanelli, Dart, and Cook County).
    c. Claims against Defendants Campanelli and Dart in their individual capacity.
    d. Claims under the Illinois Gender Violence Act.
    e. Claims for punitive damages

5. Plaintiffs have also added claims that are not addressed in the Defendants' motions to dismiss, including the following:

    a. Count II – Sex Discrimination and Hostile Work Environment in Violation of Title VII against Defendant Dart (Official Capacity), Defendant Campanelli (Official Capacity), and Defendant Cook County. These claims are brought to provide notice to the court and parties pending the receipt of Plaintiffs' right to sue letters, which have been requested and are being processed by the EEOC.

    b. Count III- Retaliation in violation of Title VII against Defendant Campanelli (Official Capacity).

    c. Count IV – Violations of the Illinois Civil Rights Act against Defendant Dart (Official Capacity), Defendant Campanelli (Official Capacity), and Defendant Cook County.

6. A copy of Plaintiffs' Amended Complaint, as described above, is hereby served upon you.

Respectfully submitted,

/s/ Robin Potter

/s/ M. Nieves Bolaños
Attorneys for Plaintiffs and the class

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER & BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org

Dated:  January 31, 2018

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM, JULIE HULL, ROCIO ARMENDARIZ, BRETT GALLAGHER, RACHELLE HATCHER, KYAN KEENAN, TAKENYA NIXON,  CARLY PATZKE, STEPHANIE SCHLEGEL, ASHLEY SHAMBLEY, CORYN STEINFELD, NIYATI THAKUR, JULIE WILLIS, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-cv-8085  Judge Matthew Kennelly Magistrate Judge Daniel Martin |
| Plaintiffs, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| COOK COUNTY; AMY CAMPANELLI, in her official capacity as Public Defender of Cook County; and THOMAS DART, in his official capacity as Sheriff of Cook County, | ) ) ) ) ) | |
| Defendants. | ) | |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiffs Crystal Brown, Saran Crayton, Samantha Slonim, Celeste  Addyman, Erika

Knierim, Julie Hull, Rocio Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan,

Takenya Nixon,  Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati

Thakur, and Julie Willis, on behalf of themselves and a class of similarly situated persons,

complain of the Defendants, Cook County, Amy Campanelli (Official Capacity), and Thomas

Dart (Official Capacity), as follows:

### Nature of the Action

1.      Plaintiff class representatives Crystal Brown, Saran Crayton, Samantha Slonim,

Celeste  Addyman, Erika Knierim, and Julie Hull, along with plaintiff class members Rocio

Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan, Takenya Nixon, Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati Thakur, and Julie Willis bring this class action lawsuit against Defendants for causing female Assistant Public Defenders ("APDs") and female law clerks in the Law Office of the Cook County Public Defender to suffer a continuing severe and/or pervasive hostile work environment on the basis of sex in violation of their right of equal protection under the Fourteenth Amendment to the Constitution of the United States, under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983 and § 1988, and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, [1] and the Illinois Civil Rights Act, 740 ILCS 23/1 et seq.

2.      As set forth herein, Defendants have knowingly created and fostered an environment in Cook County courtroom lockups[2] and the Cook County jails whereby male detainees, in a coordinated and organized fashion, have exposed themselves and masturbated to female APDs and law clerks with virtual impunity for at least the last two years.

3.      This conduct is solely directed toward female employees and because of their sex.

4.      Hundreds of masturbation incidents have been committed against female APDs.

5.      Plaintiffs do not seek to impose strict liability on any Defendant for detainees' sexual misconduct. Rather, they seek to impose liability for the actions, policies, and deliberate indifference of Defendants, individually and in concert, that have encouraged an environment to

---

[1]  Plaintiffs' Title VII claims are added to apprise the court and the parties of the claims. Right to Sue letters have been requested, but not yet received from the EEOC.

[2] The CCDOC lockups are holding areas in each of the courthouses where detainees wait for court proceedings and where attorneys, including APDs and law clerks, meet and confer w i t h their clients on court dates.

flourish whereby male detainees brazenly and routinely engage in indecent exposure of genitals, public masturbation, sexual comments and threats toward female APDs with impunity.

6.      Defendants have knowingly implemented numerous official and *de facto* policies which caused the frequency and severity of these assaults to increase to the point where, prior to the filing of this lawsuit, they were a daily occurrence, including but not limited to the following:

A.      Sherriff Dart instated a "pizza" reward program, which incentivized detainees to masturbate at or on female APDs;

B.      the Sheriff's Office routinely escorted detainees who were repeat-offenders to lock-up with other detainees without safeguards or restraints knowing that these inmates were likely to masturbate toward female APDs;

C.      the Sherriff's Office withdrew officers from the lockup and/or jail knowing that this action would directly cause masturbation incidents to occur;

D.      Public Defender Amy Campanelli's office successfully pressured Dart to stop handcuffing detainees (despite knowing that her actions would directly cause masturbation, indecent exposure and even assaults on female APDs); and,

E.      Public Defender Amy Campanelli's office fostered a climate in the office which discouraged and/or shamed female APDs from filing criminal charges against offenders, in derogation of the County's stated non-discrimination policy which expressly prohibits sexual misconduct by third parties in the workplace and retaliation.

7.	Through these unlawful policies and widespread practices, described more fully below, Defendants sent a clear message to the detainees that they were free to commit masturbation incidents against female APDs with virtual impunity. In stark contrast, Defendants acted quickly and decisively in response to an incident in December 2014 in which a male APD was physically assaulted by a detainee. Attacks on male APDs are far rarer, in part due to the concerted actions of the Defendants to deter such conduct.

8.	Public Defenders, including Plaintiffs and the class, defend the legal rights of detainees who do not have access to private attorneys. Law clerks are students, many of whom are allowed to practice law in a limited capacity and under the supervision of a licensed attorney, and assist APDs with cases.

9.	Plaintiffs and the APDs represent some of society's most vulnerable members and they work often with very few resources. The work is grueling and their caseloads are heavy, but they are almost uniformly driven by their love of the important work they do. However, as a result of a toxic work environment caused and perpetuated by Defendants in concert, they are forced to regularly endure heinous sexual misconduct, robbing many of their love of the job, for some permanently.

10.	As a result of Defendants' actions, female APDs and law clerks have suffered and continue to suffer significant damages, including but not limited to severe emotional distress and trauma, both emotional and physical.

11.	On November 28, 2017, as a result of this lawsuit this Court entered an Agreed Preliminary Injunction and Temporary Restraining Order. Defendants have yet to implement any long-term or permanent solutions and female APDs continue to be prejudiced and suffer hardship in performing the essential functions of their jobs.

**Jurisdiction and
Venue**

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§1331 and 28 U.S.C. §1343. The Court has supplemental jurisdiction over Counts III and IV

which arise under Illinois law pursuant to 28 U.S.C. §1367(a).

13.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391

because Defendants reside in this District and the events giving rise to this suit occurred therein.

**The Parties**

14.    Plaintiffs are female attorneys who are currently employed as APDs by

Defendants County of Cook and the Law Office of the Cook County Public Defender (hereafter,

"the County" and the "CCPD," respectively). They were hired on or about the dates noted: Ms.

Brown - May 2013; Ms. Crayton - June 2010; Ms. Addyman - 2010; Ms. Knierim - February

2010; Ms. Slonim - February 2010; Ms. Hull - August 1986; Ms. Armendariz - August 2010;

Ms. Gallagher - August 2012; Ms. Hatcher - May 2013; Ms. Keenan - July 2003; Ms. Nixon -

February 2006; Ms. Patzke - October 2004; Stephanie Schlegel - 1998; Ashley Shambley - 1998,

Coryn Steinfeld - February 2010, Niyati Thakur - March 2010, and Julie Willis - April 1995.

15.    Defendant Cook County is a municipality organized under the laws of the State

of Illinois.  55 ILCS 5/1-1001 et seq. The President of the County Board of Commissions has

authority to remove the Public Defender, for good cause. 55 ILCS 5/3-4000.2.

16.    The County is responsible for construction and physical maintenance of

properties it owns, including *inter alia*, the Cook County Jail and the Leighton Criminal Courts

Building.

17.    The County sets the budget for the Sheriff and Public Defender's offices. APDs

are paid by the County, and the County Board President (Toni Preckwinkle) is the signatory to the

collective bargaining agreement which governs terms and conditions of APDs' employment. The County maintains an Equal Employment Opportunity Office which purports to have responsibility for preventing and investigating discrimination within Offices of the County, including the Public Defender's Office.

18.     The CCPD is an agency within the County and provides legal representation to indigent persons in criminal and related proceedings and is organized under the laws of Illinois, 55 ILCS 5/3-4000 et seq.

19.     Defendant Amy Campanelli ("Campanelli") is the Cook County Public Defender. She was appointed to this office by the Cook County Board of Directors and its President in or about March 2015 pursuant to the laws of Illinois, 55 ILCS 5/3-4004.1. Defendant Campanelli's actions complained of herein were taken under color of state law and were related to the performance of the duties of her office. She is sued in her official capacity.

20.     Defendant Campanelli is a policy maker for the Cook County Public Defender's Office and has final policy making authority for the Cook County Public Defender's Office with regard to her acts and conduct alleged herein.

21.     The Cook County Sheriff's Office is organized under the laws of Illinois pursuant to 55 ILCS 5/3-6001 et seq. Defendant Thomas Dart is the Sheriff of Cook County having been elected in 2006. The Sheriff has authority and responsibility over the custody and care of the jails and courthouses in Cook County pursuant to 55 ILCS 5/3-6017.

22.     Defendant Dart and his deputy sheriffs assigned to the Courtroom Services Division are responsible for all aspects of court security, which includes "inmate control." See Exhibit E; http://www.cookcountysheriff.org/courtservices/ CourtroomServices.html.

23.     At all times relevant to this complaint, Defendant Dart's actions complained of herein were taken under color of state law and were related to the performance of the duties of his office. He is sued in his official capacity.

24.     Defendant Dart is a policy maker for the Sheriff's Office and has final policy making authority for the Sheriff's Office with regard to his acts and conduct alleged herein.

## Relevant Facts

25.     CCPD currently employs over 400 public defenders, of which over 60% are female.  See https://www.cookcountyil.gov/service/employment-public-defender

26.      APDs provide legal services to, *inter alia*, detainees in Cook County jails throughout Cook County and in the Cook County Department of Corrections ("CCDOC") lockups at courthouses within the Circuit Court of Cook County, including in the Leighton Criminal Courts Building ("Leighton") located at 26th Street and California Avenue, and at the Cook County Jail.

27.     During the last two years, the named Plaintiffs and other similarly situated female APDs and law clerks have been repeatedly and increasingly subjected to incidents of indecent exposure, masturbation, assault and battery. Divisions 9 and 10 of the Cook County Jail are maximum security and super max facilities. Almost all female detainees and law clerks who visit their clients in lockup or Divisions 9 and 10 have been subjected to male detainees regularly exposing their penises, and attempts and threats of assault.

28.     Prior to the filing of this lawsuit, these incidents occurred on a daily basis, were often perpetrated by repeat offenders, and some female APDs were subjected to multiple incidents, by multiple detainees on the same day.

29.     As set forth below, female APDs and law clerks have also suffered physical touching by detainees, who have grabbed female APDs by the legs and/or buttocks.

30.     On at least one occasion, a detainee masturbated and emitted bodily fluids on a female APD. These incidents have been discussed among staff in the Public Defender's office.

**Courtroom Lockups**

31.     The CCDOC lockups are holding areas in each of the courthouses where detainees and pre-trial detainees wait for court proceedings and where APDs and law clerks meet their clients at the courthouses.

32.     Campanelli's office assigns APDs and law clerks to specific courtrooms, and requires them to meet with their clients in the Cook County Jail, including clients housed in Division 9 or 10, which are considered maximum security and super max facilities.

33.     Many of the clients represented by APDs and law clerks are in custody. As a result, visiting pre-trial detainees in the courthouse lockups and jail is an essential job requirement. Defendants have provided no other place for APDs and law clerks to meet face-to-face with their clients except the designated areas in the courthouse lockup or jail where the sexual assaults and masturbation incidents regularly occurred. Defendants have required APDs to meet with their clients in view of groups of detainees, knowing that APDs would be subjected to masturbation incidents.

34.     It is necessary for APDs to meet with and to have confidential conversations with their clients face-to-face during the course of their representation, including to review and discuss discovery, evidence, plea offers and strategy. Female APDs and law clerks visit clients at the jail and/or courthouse lockup on a weekly basis and sometimes daily.

35.     When female APDs or law clerks visit male clients in lockup, as many as twenty or more male detainees may be detained in the same holding area with them. During these visits, APDs and law clerks attempt to speak quietly and confidentially with their clients through the bars, window and/or door, while other detainees are generally sitting or standing in the background.

36.     While a female APD or law clerk is conversing with her client, another detainee would frequently walk behind the client in full view of the female APD or law clerk and expose himself and/or masturbate, including with his penis fully exposed, while staring threateningly at the female APD or law clerk.

37.     There is also an Illinois Department of Corrections ("IDOC") lockup facility in Leighton's basement. APDs are allowed to visit IDOC detainees in the basement lockup but are not similarly subjected to sexual harassment because those detainees are shackled and/or handcuffed, unlike in the CCDOC section of the lockup at Leighton.

**Divisions 9 and 10 of the Cook County Jail**

38.     Masturbation and indecent exposure incidents have also occurred with great frequency in the Cook County Jail, in particular in Divisions 9 and 10, which are maximum security divisions where thousands of male detainees are housed. All of these detainees have been classified as requiring "super-max" and maximum security facilities.

39.     When female APDs or law clerks visit a client in Division 9 they are required to walk through the facility unescorted, and go directly to the tiers where the detainees are housed. They meet with their clients inside of a room on the tier that has a large window in both the wall and adjacent door. There is also a large window in the wall and adjacent door to the individual tiers/housing units where detainees are housed and within view of, the room where APDs and/or

law clerks meet with their clients.

40.     On the other side of a narrow hallway, and slightly elevated, is a room that is staffed by at least one Cook County Sheriff's Correctional Officer. From this location, the Cook County Sheriff Correctional Officer has a clear view of both the detainees in the housing units and the attorney-client consultation room.

41.     Other detainees in the surrounding hallways and housing units can see the attorneys as they enter the room in Division 9, and can see into the room while the attorney is meeting with the client just as APDs and law clerks can see the detainees outside the room. Detainees would often crowd around the glass and expose themselves and/or masturbate through the windows while staring lewdly and aggressively at female APDs and law clerks as they attempted to discuss legal matters with their clients.

42.     When female APDs or law clerks visit clients in Division 10 of the Cook County Jail, they are locked in a room with their clients sitting directly next to them in close proximity. The room is surrounded by Plexiglas and is commonly referred to as a fish bowl.

43.     The Sheriff has given Detainees housed in Division 10 free rein to move thru the corridor directly next to the room where the attorney-client consultations occur. On the other side of this corridor is a sheriff's station that is manned by at least one Cook County Sheriff's Correctional Officer.

44.     Other detainees can see into the room where the attorneys or law clerks are meeting with their clients, just as APDs and law clerks can see the detainees. The Cook County Sheriff's officer also has a clear view of both the detainees in the housing units and the attorney-client consultation room.

45.     Detainees also congregate around the glass to their housing unit and expose/masturbate at the female APD and law clerks while staring at them in a lewd and threatening manner.

46.     Because the rooms in Division 10 are locked, APDs and law clerks cannot leave the room until a Sheriff unlocks the door, removes the client, and then unlocks a separate door to allow the attorney to exit. Each of these processes often takes several minutes.

**The Named Plaintiffs Have Suffered Repeated Incidents of Assault**

47.     Ms. Brown has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. As just one example, in approximately January 2017, a detainee exposed himself and masturbated to Ms. Brown on two separate occasions in the same day. That detainee was removed from lockup only to be followed by a second detainee who exposed himself to Ms. Brown, later that day in the same lockup. See Exhibit A, Brown EEOC Class Charges.

48.     Ms. Crayton has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. There have been weeks when Ms. Crayton experienced a detainee exposure or masturbation incident every day. As just one example, on or about October 3, 2017, Ms. Crayton was speaking with a client in lockup and another detainee exposed his penis and masturbated while standing behind him in Ms. Crayton's line of sight. Ms. Crayton told him to stop and walked out of the lockup. When she returned in a second attempt to meet with her client, the same detainee began masturbating at her again. Ms. Crayton again told him to stop, and he threatened her, calling her by name. The sheriff on duty told Ms. Crayton that she should leave the lockup.

49.      Ms. Slonim has been subjected to numerous incidents of indecent exposure, assault and masturbation during the last two years, and during her time as a law clerk with the CCPD. As an example, in approximately August 2016, a detainee exposed himself and masturbated to her while in the lockup. She subsequently pressed criminal charges against the detainee. Defendants permitted her to be in the same lockup with that detainee three to four more times and as she attempted to do her job. On each such occasion the detainee yelled profanities and threats, including that he was going to 'beat the shit out of' her and 'motherfucking kill' her. On October 30, 2017, another detainee masturbated at Ms. Slonim with his penis out while she was visiting a client in lockup. Ms. Slonim had just suffered a similar incident on October 19, 2017. Both of these assaults were committed by detainees who were known offenders with prior indecent exposure charges against them.

50.      Detainees with criminal charges pending against them relating to prior incidents of exposure and/or masturbation should have been subjected to additional restrictions while in lockup such as special jumpsuits that restrict access to their genitals or handcuffs. Defendants chose not to take any precautions to protect Ms. Slonim or the plaintiffs and the class from these detainees, despite their prior records.

51.      Ms. Hull has been subjected to numerous incidents of detainee assaults, and in recent months has been subjected to detainees masturbating sometimes on a weekly basis. As just one example, in or about October 2017, a detainee walked behind her client while she was talking with him and began masturbating at her. She was advised by his attorney that he had done this to another female earlier in the same day.

52.      Ms. Knierim has been subjected to numerous incidents of detainee assaults. At times during the last two years she has suffered two to three incidents per week. On one occasion

she asked the Sheriff to say something to the detainees and he said: there was nothing he could

do about it; that she could file a charge but nothing would happen; at the end of the day it is not

going to stop; and she should just do her job.

53.     Ms. Addyman has been subjected to numerous incidents of detainee assaults. On

six occasions between January 2016 and the present, detainees stood behind her client and

masturbated while she was speaking with him. On at least six more occasions during the last two

years she walked out of lock-up when she saw an detainee move behind her client into 'position'

to masturbate at her.

54.     Mr. Armendariz, Ms. Gallagher, Ms. Hatcher, Ms. Keenan, Ms. Nixon, Ms.

Patzke, Ms. Schlegel, Ms. Shambley, Ms. Steinfeld, Ms. Thakur, and Ms. Willis have been

similarly subjected to numerous masturbation incidents and threats by detainees within the last

two years.

### The Assaults Are Organized and Coordinated

55.     A group of detainees calling themselves "Savage Life" has been key in

organizing and  directing these sexual assaults. This group views assaults on female APDs and

law clerks as part of a game.  The group awards "points" to reward individual detainees for each

incident of assault or  masturbation, depending on the severity of the incident and the female

attorney who is targeted.  As a result, many of the detainees who commit these acts are repeat

offenders.

56.     On January 31, 2016, the *Chicago Sun Times* reported that detainees in the Cook

County Jail formed the group calling itself "Savage Life" in the summer of 2015, and that

members of the group "expose themselves and masturbate in the presence of female defense

attorneys." The article noted that "the behavior is on the rise."  The article further reported that

"[t]here have been 219 incidents of detainees exposing themselves or masturbating in public between July 1, 2015, and Jan. 20, 2016" and that some of the detainees were "multiple offenders."

### **The CCPD Maintains a *De Facto* Policy of Discouraging APDs from Filing Charges**

57.      Some female APDs have filed sexual harassment and masturbation criminal complaints throughout the last two years, which have provided additional notice to Defendants that the practice was severe, pervasive and ongoing. See Exhibit A. Criminal charges have not been filed in connection with the majority of masturbation incidents.

58.      The CCPD's office has maintained a *de facto* policy of discouraging APDs and law clerks from pursuing such criminal charges. Due to this *de facto* policy, supervisors and senior APDs have discouraged female APDs and law clerks from filing charges against offenders.

59.      At least one female APD who filed charges against an offender experienced outright retaliation – CCPD supervisors assigned to numerous Cook County courts bad-mouthed and criticized her for filing charges. This incident was widely-known throughout the CCPD's office and the criminal court system, generally and created a chilling effect.

60.      When an APD files a criminal complaint regarding a masturbation incident the offender is charged with misdemeanor public indecency. Misdemeanor criminal complaints have been an ineffective deterrent, as the offending detainees are often facing serious felony charges. The indecency charges are often dropped by the Cook County State's Attorneys, or alternatively, result in a conviction but the offender is awarded "time served," meaning his sentence is not increased.  An offender is not at risk for having to register as a sex offender until he has been convicted of indecent exposure three separate times.

61.     APDs are regularly left out of the loop with respect to how their criminal charges are being processed, are not advised of court dates, and are given no opportunity to weigh in on whether the case is prosecuted or dismissed. APDs who follow up on the charges they file often encounter rude or dismissive State's Attorneys.

**In Contrast Defendants Responded Decisively to an Attack on a Male APD**

62.     In or about December 2014, a male APD was physically assaulted by a detainee client while meeting with him in Division 9 of the Cook County Jail. Defendants acted immediately and decisively in the wake of this attack. The Sheriff instituted a policy in Division 9 requiring detainees to be handcuffed to a desk or other stationary object when APDs met with clients and prohibited APDs from meeting with clients in rooms in which there was no desk or fixed object suitable for handcuffing.

63.     Additionally, Lester Finkle, Chief of Staff of the Public Defender's office, issued a statement to all APDs in the office which unequivocally pronounced that the CCPD cannot defend a criminal defendant/detainee when the victim of that defendant/detainee is an APD. Ms. Campanelli petitioned the Illinois Supreme Court to grant her motion to withdraw from representing the detainee who assaulted the male APD and appoint other counsel. This stands in contrast to the CCPD's practice of discouraging female APDs from filing charges relating to masturbation incidents.

64.     Also in contrast, female APDs are regularly assigned and/or pressured to accept cases representing detainees who have sexually harassed and/or assaulted other female APDs.

**The County's Stated Policy Regarding Third Party Harassers**

65.     Cook County acknowledges its duty and that of the defendants to prevent sexual harassment by non-employee third parties.

66. It maintains a written policy governing sexual harassment by third parties. The policy provides as follows: "Third party harassment occurs when the harassment is committed by a person or group of people who work outside the control of the employer, such as contractors, clients, customers, vendors and suppliers or some other party which makes frequent visits to the workplace. It is the duty of any employer to provide a place which is safe to work and is free from harassment. Accordingly, this Policy expressly prohibits harassment by third parties in the workplace." https://www.cookcountyil.gov/service/equal-employment-opportunity-office

67. The unwritten policy, practice, and custom of Defendants is to deny responsibility for detainee sexual harassment and that detainee sexual harassment is the norm and must be accepted and tolerated by employees and others in County facilities.

68. APDs have repeatedly notified and/or complained to supervisors and management (including Defendant Campanelli) about incidents of indecent exposure and masturbation, verbally and in writing, on many occasions throughout the last two years.

69. In October 2017, the female APDs learned that, despite their numerous complaints to Defendant Campanelli and CCPD supervisors about the sexual harassment by detainees, no one had ever informed Cook County's EEO officer about the problem, although the County had been made aware of the incidents, including *inter alia*, by Campanelli herself in a letter dated March 21, 2017.

**Media Coverage and Defendants' Actual Knowledge of the Widespread Problem**

70. Throughout 2016 and continuing through the present, there were numerous other reports in the Chicago-area media (including print, radio, electronic and television media) that further detailed and described the practice of detainees exposing themselves and/or masturbating to female staff including APDs and law clerks in the Cook County lockups and jail. These media

16

reports were widespread and provided additional notice to each and every Defendant regarding the severity and extent of this practice.

71. On October 28, 2017, the *Chicago Sun Times* published another article which stated "Masturbating detainees have become a common sight on the walk to and from holding cells where defense attorneys meet clients, and at the jail and in courthouse lockups." The article reported that 29 criminal charges relating to detainee exposure incidents had been filed by female APDs in 2017, and that Defendant Campanelli admitted it was a daily occurrence and that the behavior by detainees has become "pervasive." The article further reported, "No other jail seems to have the same problem with public indecency on a similar scale to Cook County, according to the state Public Defenders Association and the Illinois Sheriffs' Association."

72. The article reported that Defendant Campanelli had opposed legislation that would upgrade the crime from a misdemeanor to a felony. Defendant Campanelli admitted in the article that none of the corrective measures taken had worked. Nonetheless, she "lauded Dart's efforts to combat the phenomenon," despite the complete inadequacy and half-hearted nature of those efforts, as set forth above, and despite the fact that other jails do not experience this problem on a similar scale.

73. As a result of the media coverage, the internal complaints, the criminal charges, the ongoing internal discussions about the harassment among and between the defendants and its sheer prevalence and duration, Defendants, and each of them, have had notice that female APDs have been routinely subjected to ongoing incidents of masturbation and exposure by male detainees for more than two years.

74. Despite having had ample notice of this practice for the last two years, Defendant Campanelli and the other Defendants have knowingly required Plaintiffs and other

female APDs to continue to work in this hostile and dangerous environment.

75.    Defendant Campanelli chose not to issue a clear policy instructing female APDs regarding this practice.

76.    Defendant Campanelli disclaimed responsibility for female APDs' safety and has repeatedly stated, including during a meeting with APDs on October 18, 2017, "it is not my responsibility to keep you safe in the lockup and/or jail."

77.    As early as October 2015, and on numerous occasions since, the Defendants have jointly met and had discussions acknowledging the increasing incidents of detainee indecent exposure and/or masturbation directed toward female APDs. During these discussions, they acknowledged the practice was severe and pervasive, but chose not to take any effective corrective action to prevent the sexual misconduct and took affirmative action that made the situation worse, as outlined in part below.

**Handcuffing**

78.    In or about early 2017, the Sheriff began handcuffing detainees while they were in the courthouse lockups. This practice lasted for approximately two weeks and resulted in significantly decreased instances of masturbation and exposure at the female APDs in the courtroom lockups. Defendant Campanelli objected, ordered it stopped immediately, without ensuring that another measure was in place to prevent detainee exposures and masturbation, and personally apologized to the detainees for the handcuffing. As a result, the practice was discontinued. Indecent exposure and masturbation by detainees directed at female APDs and law clerks increased after the handcuffing ended as a direct result of Campanelli's actions. Campanelli knew or should have known that removing handcuffs would cause masturbation incidents to increase but nonetheless went to great lengths to stop handcuffing.

**Jumpsuits**

79.    In early 2017, the Defendant Dart required detainees to wear special jumpsuits to help prevent them from reaching their penises, exposing themselves and masturbating. Dart chose to discontinue this requirement after a small group of detainees burned the jumpsuits using microwave ovens, despite knowing that this action would cause masturbation incidents to increase. Masturbation incidents increased as a result of Dart's decision to discontinue this requirement.

**CCSO Removes Officers from Lockup**

80.    In approximately May 2017, Defendant Dart added additional officers to the lockup. The additional officers on duty in the lockup areas significantly decreased the incidences of indecent exposure and masturbation by detainees directed at female APDs and law clerks. Defendant Dart withdrew these additional officers a short time later, claiming lack of funds from Cook County. Dart knew that this action would increase the number of assaults on female APDs, and incidents of assault increased in areas where sheriffs were withdrawn.

**Pizza Rewards**

81.    At one point, Defendant Dart instituted a program rewarding serial masturbators with pizza. The program gave any detainee reported as having exposed himself or masturbated the opportunity to receive a pizza and/or pizza party if they if they went 30 days without another sexual assault/masturbating incident. Detainees who never exposed themselves or masturbated at female APDs or law clerks were not eligible to receive pizza through this program.

82.    The Sheriff's rewards for intermittent indecent exposure and/or masturbation led to an increase in exposure incidents as detainees without prior incidents were now incentivized to commit indecent exposure and masturbation in order to qualify for a pizza reward.

## Campanelli's Deliberate Policy of Inaction and Non-Responsibility for the Safety of Female APDs.

83.     On October 18, 2017, Defendant Campanelli held a meeting for all APDs working at the criminal courthouse located at 26th Street and California Avenue. During this meeting, Defendant Campanelli recounted an incident where her husband (a private criminal defense attorney) observed an detainee in lockup at the Markham courthouse begin to masturbate and when asked what he was doing, explained that he was "getting ready for his PD" (a female). She distributed a flowchart tracking Defendants' actions and inactions for the past two years.

84.     Nevertheless, Defendant Campanelli told the female APDs, that there was nothing she could do to help them and that "it is not my responsibility to keep you safe in the lockup and jail."

## Defendant Campanelli's Retaliation

85.     On October 23, 2017, the Plaintiffs, who are assigned to the Cook County Court located at 26th Street and California Avenue, filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). The charges are currently pending at the EEOC.

86.     On October 25, 2017, Plaintiffs, through counsel, advised Defendants of the filing of the charges and the substance and provided a list of actions that could be taken immediately to protect female APDs. See Exhibit B, Oct. 25, 2017 Potter Bolaños Letter

87.     On October 31, 2017, as a response to the EEOC charges and class counsel's letter, Defendants Campanelli and CCPD issued a directive barring APDs from entering the lockups at Leighton, where the Plaintiffs are assigned. See Exhibit C, CCPD Memo to APDs. Entering lockups at other court locations, including at the Markham courthouse where sexual assaults and masturbating remained unabated, was not prohibited. Campanelli's directive was

intended to retaliate against Plaintiffs, to send a message to other APDs and chill participation in the litigation.

88.     Defendant Campanelli had previously promised to wait until November 9, 2017 to  decide whether to implement this policy and after consulting with Chief Judge Timothy Evans.  However, when she received notice of Plaintiffs' EEOC charges, she and her office immediately and unilaterally implemented the policy, adversely affecting female APDs. See Exhibit C.

89.     Preventing APDs was retaliatory and ineffective and prevented APDs from meeting with  their clients and interfered with their ability to do their jobs.

90.     Despite Defendant Campanelli's directive, many male APDs continued to go into the lockups to meet with clients because they are not subjected to indecent exposure and masturbation by detainees.

91.     By contrast, female APDs faced negative consequences if they continued to go into lockups to  meet their clients despite Defendant Campanelli's directive. First, they faced the prospect of more sexual  harassment by detainees. Moreover, if a detainee exposed himself or masturbated at them, female APDs (unlike their male counterparts, who do not experience such incidents) would be required to either press charges or sign a document saying they do not wish to press charges, either of which would put Defendant Campanelli on notice that they disobeyed her directive thus making them vulnerable to disciplinary action.  Male APDs were not faced with this Catch-22.

92.     Although APDs are responsible to Defendant Campanelli (55 ILCS 5/3-4008.1), they have an overriding professional obligation as attorneys to the clients whom they represent. By implementing the above-described prohibition, Defendant Campanelli interfered with

Plaintiffs' ability to do their jobs and caused them to suffer further distress.

93.     A Supervising Judge at Leighton told APDs he would not hesitate to report them to the Attorney Registration and Disciplinary Commission ("ARDC") if he felt their compliance with Campanelli's directive had detrimentally affected any criminal defendant.

94.     The Judge further confirmed he would not order sheriffs to bring clients out of lockup in order to speak with APDs, modify his case management orders/dates, or make any other allowance in light of Defendant Campanelli's directive.

95.     As a result of this lawsuit, defendant Campanelli discontinued her order barring APDs from the lockups. See Agreed Preliminary Injunction Order entered by the Court.  ECF 45 and 46.

96.     Female APDs continue to be prejudiced in the carrying out of their duties. For example, at least on female APD has been told by the sheriff on duty at CCDOC that APDs are not allowed to visit their clients on the tiers in Division 10 and she would need to wait for the meeting room to become available. She was also told she was not allowed a no-contact visit, despite the fact that non-APD attorneys were being allowed into the building for visits with their clients as she waited. She was told the policy had been in place for about a week and as a result of this lawsuit.

97.     Visiting client detainees is an essential function of Plaintiffs' jobs, and there is no other place to conduct their confidential attorney client communications except the lockup or jail. Defendants have chosen not to provide individual meeting rooms or any other effective measure to  prevent detainee sexual harassment. The County has the authority and ability to create a safe and appropriate meeting space for APDs and their clients at all jails and lockup facilities, in light of the fact that it is responsible for construction and maintenance at the jail, and chose not to.

98.     No Defendant implemented any of the suggestions included in the correspondence from class counsel prior to the filing of this suit and Plaintiffs' Motion for Preliminary Injunction. See ECF #9; and see, Exhibits B and D, Oct. 31, 2017 Potter Bolaños letter.

99.     Defendants have demonstrated through their policies, practices and admissions that they are unwilling, and have deliberately chosen not to protect the class and/or ensure that the workplace is not discriminatory and dangerous to women, in stark contrast to their treatment of male employees.

### *Howard* and *Wilson* Lawsuit Allegations Further Demonstrate Dart's *de facto* Policies, Practices, and Customs Emboldened and Caused Detainees to Target Female APDs

100.    Defendant Dart's policies, practices, and customs have emboldened the detainees to increase the frequency and severity of their harassment toward female APDs in addition to female deputies.

101.    Plaintiffs make the following allegations (¶ 102-110) on information and belief, based on the factual allegations in *Howard v. Cook County Sheriff's Office, et al.*, Case No. 17-8146 (ECF #46), and *Wilson v. Cook County Sheriff's Department, et al.*, Case No. 17-8248 (ECF #30-1).

102.    Male detainees have engaged in sexual misconduct toward female sheriff's deputies and other female Cook County employees, including hundreds of instances of exposure of genitals, exhibitionist masturbation, sexual comments and threats of sexual violence.

103.    Male CCSO supervisors have discouraged and prevented female deputies from reporting sexual harassment by male detainees, including the following:

> A.     Male CCSO supervisors have discouraged and deterred female deputies from filing incident reports, disciplinary tickets, and criminal charges.

B. Male CCSO supervisors have refused to accept incident reports made by female correctional officers.

C. A male sergeant assigned to investigations has referred to reports of sexual misconduct by male detainees as "frivolous" and threatened to report the female deputies who complain to the Office of Professional Review, which investigates reports of employee misconduct.

D. Female employees within the Cook County Health and Hospitals System have complained about sexual harassment from male detainees and have been ignored and told to stop their "moaning and complaining."

104. CCSO investigators have refused to investigate reports of detainee sexual harassment made by female deputies.

105. The CCSO does not discipline supervisors and investigators who ignore, minimize, or fail to pursue reports of sexual harassment by male detainees.

106. The CCSO does not take disciplinary action against detainees who engage in indecent exposure and exhibitionistic masturbation toward female deputies.

107. Female deputies and female APDs share a workplace in the courthouse lockups and jails and have been subjected to sexual harassment by the same detainees.

108. At least one female deputy reported to a CCSO supervisor that detainees were masturbating in front of a female APD at a courthouse. Defendant Sheriff chose not to reprimand the detainees or take any action in response to that report.

109. Cook County Jail Commander Jason Cianciarulo admitted that Cook County "detainees expose themselves in the courthouse, to civilians, to the nurses, to our staff."

110. In response to complaints by APDs about detainee sexual harassment, Defendant Dart's policy director Cara Smith, stated "This is something that happens in custodial environments, period." https://chicago.suntimes.com/chicago-politics/cook-county-inmates-masturbating-public-defenders/

**Plaintiffs Have Suffered Significant Damages**

111.    As a result of the longevity, increasing severity and widespread nature of these incidents, female APDs live with constant and deeply rooted feelings of apprehension and/or fear that an assault or battery will occur when they visit their clients at the lockup or jail.

112.    As a result of the Defendants' affirmative conduct and deliberate inaction, the Plaintiffs and other similarly situated female APDs and female law clerks have suffered and endured a barrage of assaults because of their sex, for more than two years. They are not safe at work because of their sex, and each day live with the fear of another incident. They have suffered and will continue suffer significant damages, including but not limited to severe emotional distress that affects their daily lives.

113.    As a result of the Defendants' affirmative conduct and deliberate inaction, many APDs have either transferred in order to avoid certain lockups and jail visits, despite the negative impact it might have on their careers, or have left the CCPD's office entirely.

**Count I**
**42 U.S.C. §1983 – Equal Protection / Sexual Harassment – Against Dart**
**(Official Capacity) and Campanelli (Official Capacity)**

114.    Plaintiffs repeat and re-allege Paragraphs 1 through 113 above as if fully set forth herein.

115.    This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

116.    Plaintiffs seek to represent a class defined as follows: All female APDs and law clerks who have worked for the County and the CCPD from November 1, 2015 through the present and who have visited or will be required to visit the jail and/or lockup in connection with their employment.

117.    The class is in excess of 200 persons and is so numerous that joinder of all class members is impracticable.

118. The class representatives, Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, Julie Hull and other members have the class have been similarly impacted by the hostile work environment resulting from repeated and pervasive incidents of indecent exposure and/or masturbation by detainees toward female APDs.

119. Defendants have employed more than two hundred female APDs and law clerks who have been subjected to incidents of indecent exposure and/or masturbation by detainees within the last two years.

120. The issues involved in this lawsuit present common questions of law and fact, and these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

121. The Named Plaintiffs and the Class have a commonality of interest in the subject matter of this suit and the remedy sought.

122. The Named Plaintiffs are able to fairly and adequately represent and protect the interests of the Class.

123. Plaintiffs' undersigned counsel is competent and experienced in litigating large class action lawsuits.

124. If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

125. Defendants have acted under color of state law at all times relevant hereto.

126. Defendants intentionally subjected Plaintiffs and the class to unequal and discriminatory treatment by requiring Plaintiffs to suffer incidents of assault, masturbation and/or

indecent exposure by detainees and detainees during the course of their employment, by knowingly opting not to take appropriate corrective action to prevent such incidents, and by knowingly refusing to protect Plaintiffs and the Class from this hostile work environment, despite having ample notice of the practice for at least the past two years.

127. Defendants have acted affirmatively to cause and/or increase incidents of assault of female APDs, including as described above.

128. The actions of Defendants were done pursuant to one or more of the following *de facto* polices, practice, and/or customs that are so pervasive that they carry the force of law.

129. Defendant Sheriff and Campanelli have a *de facto* policy, practice, and/or custom of discouraging and deterring complaints and reports of sexual misconduct by detainees toward female employees of Cook County.

130. Defendant Sheriff and Campanelli have a *de facto* policy, practice, and/or custom of failing to record and maintain accurate and complete records of complaints of sexual misconduct by detainees.

131. Defendant Sheriff has a *de facto* policy, practice, and/or custom of failing to investigate complaints by female APDs regarding sexual harassment by detainees.

132. Defendant Sheriff has a *de facto* policy, practice, and/or custom of failing to take disciplinary action or pursuing administrative or criminal charges against detainees who sexually harass female APDs.

133. Defendant Campanelli has a *de facto* policy, practice, and/or custom of handling complaints by female APDs differently regarding detainee sexual misconduct than complaints by male APDs regarding non-sexual misconduct.

134. All Defendants have a *de facto* policy, practice, and/or custom of tolerating and acquiescing in indecent exposure, public masturbation, and sexual comments and threats by

detainees and made toward female employees of Cook County as normal and expected conduct.

135.    Individually and collectively, the above described *de facto* policies, practices, and/or customs proximately result in the environment and attitude among detainees that they may engage in sexual misconduct against female APDs, as well as other females in their proximity, with impunity and without fear of official consequence.

136.    The sexually and sex-based offensive conduct is severe and pervasive and alters the conditions of Plaintiffs' employment and creates an abusive working environment.

137.    The sexual harassment is because of Plaintiffs' sex.

138.    The sexual harassment has the effect of unreasonably interfering with the Plaintiffs' work performance and has created and continues to create an intimidating, hostile and offensive working environment for women.

139.    Defendants, and each of them, have had knowledge of the conduct complained of and intentionally refused and knowingly chose not to take action to terminate or correct such conduct, although having the power and authority to do so, and despite taking effective and decisive action in response to a battery against a male APD.

140.    Defendants' actions as alleged above were done pursuant to one or more interrelated policies, *de facto* policies, patterns, practices and/or customs of official conduct of acquiescence and deliberate indifference to egregious sexual harassment and assault of female APDs by male detainees.

141.     Said interrelated policies, *de facto* policies, patterns, practices and/or customs, as set forth above, individually and together, were maintained and implemented with actual knowledge and deliberate  indifference and by requiring Plaintiffs to suffer incidents of assault, masturbation and/or  indecent exposure by detainees during the course of their employment.

142.     Defendants' actions and deliberate inaction were and are the direct and proximate cause of the constitutional violations and injuries suffered by the Plaintiffs and the class.

143.     The actions of the Defendants violate the equal protection rights of Plaintiffs and the Class, including the right to be free from sexual harassment and/or danger created or increased by the Defendants under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

144.     Defendants' actions have caused Plaintiffs and the Class to suffer damages, including but not limited to severe emotional distress, and other compensatory and consequential damages.

145.     Defendants' actions were intentional, willful, and malicious and in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1983.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants for:

A.     An Order certifying this suit as a class action;

B.     An Order requiring Defendants to take effective and permanent remedial action to enjoin and prevent the above-noted practices, including by appointing a monitor to implement policies and practices necessary to stop detainee harassment of female APDs at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;

C.     A declaratory judgment that Defendants' deliberate actions and inactions violate the Fourteenth Amendment to the United States Constitution;

D.     Backpay and lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre-judgment interest as permitted by law;

E.     Compensatory damages;

F.     Attorneys' fees and costs;

G.     Post-judgment interest; and

H.     Such other and further relief as the Court deems appropriate.

**Count II**
**Title VII – Sex Discrimination and Hostile Work**
**Environment – Against Dart (Official Capacity),**
**Campanelli (Official Capacity) and Cook County**
**(PENDING RECEIPT OF PLAINTIFFS' RIGHT TO**
**SUE FROM THE EEOC)[3]**

146.     Plaintiffs repeat and re-allege Paragraphs 1 through 145 above as if fully set forth

herein.

147.     This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

Plaintiffs repeat and re-allege the class allegations set forth in Count I.

148.     At all relevant times herein, each Defendant has employed more than 15 people

and is therefore an employer within the meaning 42 U.S.C. § 2000e(b).

149.     At all relevant times herein, each Defendant is and has been engaged in an

industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h).

150.     Each of the Plaintiffs named in this suit filed timely charges of discrimination

with the EEOC. See e.g. Exhibit C. Plaintiffs' undersigned counsel have requested the EEOC

issue Right to Sue letters, and will file the letters with the Court after this request is processed.

151.     Because of their sex, the Plaintiffs and all class members have been subjected to

a hostile working environment, which has been so severe and pervasive as to alter the terms and

conditions of their employment.

152.     At all relevant times, each of the Defendants has possessed both actual and

constructive knowledge of the hostile work environment to which Plaintiffs and other members

of the proposed class have been subjected.  Despite that knowledge, each of the Defendants has

chosen not to take adequate steps reasonably calculated to curtail the harassment that created that

---

[3] Plaintiffs have requested a right to sue letter from the EEOC, which is processing the request. Plaintiffs add their
Title VII claims in order to provide notice to Defendants and the Court of the claims.

hostile work environment. Additionally, Defendant Dart interfered with Plaintiffs' employment by his actions described above.

153.    The Defendants' acts and omissions constitute a pattern or practice of discrimination against Plaintiffs and other members of the proposed class.

154.    The hostile work environment has existed since at least 2015, if not earlier, and Defendants have chosen not to take adequate steps reasonably calculated to curtail the harassment until the entry of a preliminary injunction order in this case, and have chosen to take no steps reasonably calculated to permanently curtail the harassment.

155.    As a direct and proximate result of the Defendants' failures to take adequate steps reasonably calculated to curtail male detainees' sexual harassment directed against Plaintiffs and the class, Plaintiffs and all members of the proposed class have been injured and damaged.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants for:

A.    An Order certifying this suit as a class action;
B.    An Order requiring Defendants to take effective and permanent remedial action to enjoin and prevent the above-noted practices, including by appointing a monitor to implement policies and practices necessary to stop detainee harassment of female APDs at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;
C.    Backpay, lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre- judgment interest as permitted by law;
D.    Compensatory damages;
E.    Paid time off for any member of the plaintiffs class who has or continues to suffer from trauma or injury as a result of the harassments complained of herein;
F.    Attorneys' fees and costs;
G.    Post-judgment interest; and
H.    Such other and further relief as the Court deems appropriate.

**Count III**
**Title VII Retaliation – Defendant Campanelli (Official Capacity)**

156.     Plaintiffs restate and reallege by reference paragraphs 1 through 155 above as though fully set forth in this Count. Plaintiffs bring this Count against Defendant Campanelli in her Official Capacity.

157.     Plaintiffs re-state and re-allege the class action allegations set forth in Count I above.

158.     As set forth above, Defendant Campanelli retaliated against Plaintiffs for having engaged in protected activity, *i.e.*, including their opposition to the hostile sexually offensive discrimination and their filing of charges of discrimination with the EEOC, in violation of 42 U.S.C. §2000e-3.

159.     When Plaintiffs, through counsel, advised Defendant Campanelli of the filing of EEOC charges and their substance, Defendant Campanelli unilaterally issued a directive barring APDs from entering the lockups at Leighton. See Exhibit C.

160.     Defendant Campanelli's directive was in retaliation for the filing of EEOC charges.

161.     Defendant Campanelli retaliated against Plaintiff with malice and/or reckless indifference to their federally protected rights, including by banning them from entering the lockup and denying them access to their clients, as described above.

162.     Campanelli's retaliatory conduct was intended in whole or in part to chill participation in this lawsuit.

163.     Defendant Campanelli's actions in intentionally retaliating against Plaintiffs caused them to suffer damages including emotional distress, damage to their reputations, and other compensatory and consequential damages.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against

Defendant Campanelli (Official Capacity):

A. An Order requiring Defendant to take effective remedial action to enjoin this practice, including by appointing an independent monitor to implement policies and practices necessary to prevent further retaliation, and/or any other affirmative relief as may be appropriate or necessary;

B. Backpay, lost wages and benefits which Plaintiffs and the Class have suffered as a result of the unlawful employment practices, including pre- judgment interest as permitted by law;

C. Compensatory damages;

D. Paid time off for any member of the plaintiffs class who has or continues to suffer from trauma or injury as a result of the harassments complained of herein;

E. Attorneys' fees and costs;

F. Post-judgment interest; and

G. Such other and further relief as the Court deems appropriate.

**Count IV**
**Illinois Civil Rights Act Against Dart (Official Capacity),**
**Campanelli (Official Capacity) and Cook County**

164. Plaintiffs repeat and re-allege Paragraphs 1 through 165 above as if fully set forth herein.

165. This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23. Plaintiffs repeat and re-allege the class allegations set forth in Count I.

166. As described above, Defendants have taken affirmative action to cause or increase incidents of indecent exposure, exhibitionist masturbation, threats of sexual violence, batteries, and other sexually indecent and disturbingly offensive conduct by male detainees. These actions have encouraged and/or assisted detainees' assaults on female APDs.

167. As set forth above, female APDs have been subjected to assaults, and in some instances batteries, by male detainees during the last two years. Female APDs have been subjected to threats which have caused a realistic apprehension that batteries will be committed against them.

33

168.     As a direct and proximate result of Defendants' actions, all Plaintiffs and members of the proposed class have been damaged.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants for:

     A.     An Order certifying this suit as a class action;
     B.     An Order requiring Defendants to take effective and permanent remedial action to enjoin and prevent the above-noted practices, including by appointing a monitor to implement policies and practices necessary to stop detainee harassment of female APDs at the lockup and jail, and/or any other affirmative relief as may be appropriate or necessary;
     C.     Actual Damages;
     D.     Attorneys' fees and costs;
     E.     Pre- and Post-judgment interest; and
     F.     Such other and further relief as the Court deems appropriate.

### Count V
### (Indemnification – County of Cook)

169.     Plaintiffs repeat and re-allege Paragraphs 1 through 168 above as if fully set forth herein.

170.     Defendant County of Cook and its Sheriff's and Public Defender's Offices were at all times material to this Complaint, the employers of Plaintiffs and the class, as well as Campanelli.

171.     Defendant County of Cook is therefore responsible for any judgment entered against Defendant Campanelli and/or Dart for acts committed by them under the color of law thus making the County of Cook a necessary party to this Complaint.

172.     Defendant Cook County has a duty to indemnify each of the Defendants against any damages, including attorney's fees, recovered by plaintiff by judgment or settlement.

**WHEREFORE**, Plaintiffs pray this court to enter judgment on their behalf and against Defendants Cook County and its Sheriff's Office and Public Defender's Office, in the amounts

34

awarded to Plaintiffs and the class against the individual Defendants as damages, attorneys'

fees, costs and interest and for whatever additional relief this Court deems equitable and just.

### PLAINTIFFS DEMAND A JURY TRIAL

Respectfully submitted,

/s/ Robin Potter

/s/ M. Nieves Bolaños
Attorneys for Plaintiffs and the class

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER & BOLAÑOS, P.C.
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-861-1800
robin@potterlaw.org
nieves@potterlaw.org

Dated: January 31, 2018

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing **PLAINTIFFS' FIRST AMENDED COMPLAINT** was served upon all parties by e-filing this 31st day of January, 2018 with the Clerk of the Court using the CM/ECF system.


By: /s/ M. Nieves Bolanos
One of Plaintiffs' Attorneys

By: /s/ Robin Potter
    One of Plaintiff's Attorneys