**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CRYSTAL BROWN, et al., individually and for all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 17 C 8085** |
| **COOK COUNTY, AMY CAMPANELLI, in her official capacity as Public Defender of Cook County, and THOMAS DART, in his official capacity as Sheriff of Cook County,** | ) ) ) ) ) ) | |
| **Defendants.** | ) | **Related to:** |
| ------------------------------------------------------------- | ) | |
| **SDAHRIE HOWARD, et al., individually and for all others similarly situated,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **Case No. 17 C 8146** |
| **COOK COUNTY SHERIFF'S OFFICE, and COOK COUNTY,** | ) ) ) | |
| **Defendants.** | ) | **Related to:** |
| ------------------------------------------------------------- | ) | |
| **DIANA CALOCA,** | ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 17 C 9056** |
| **THOMAS DART, in his official capacity as Sheriff of Cook County, COOK COUNTY SHERIFF'S OFFICE, and COOK COUNTY,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

MATTHEW F. KENNELLY, District Judge:

This opinion addresses six motions to dismiss filed in three of four related lawsuits: *Brown et al. v. Cook County et al.* (*Brown*), *Howard et al. v. Cook County Sheriff's Office et al.* (*Howard*), and *Caloca v. Cook County et al.* (*Caloca*). These suits are related because they arise from the same pervasive and deeply disturbing problem: male detainees in Cook County Jail and courthouse lockups have been exposing themselves, masturbating, and otherwise sexually harassing female assistant public defenders, law clerks, court interpreters, correctional officers, court services deputies, deputy sheriffs, and health care providers. The plaintiffs in these cases are women who have been victims—often, repeat victims—of these forms of sexual harassment while attempting to do their jobs. They allege that their respective employers, the Law Office of the Cook County Public Defender (CCPD), Cook County, and the Cook County Sheriff's Office (CCSO), which is responsible for security in the jail and courthouse lockups, have not merely failed to protect them from such harassment, but have actually emboldened the harassers by enacting policies and engaging in practices that have led the harassers to believe that they may act with impunity.

The defendants in *Brown*, *Howard*, and *Caloca* have moved separately under Federal Rule of Civil Procedure 12(b)(6) to dismiss the various federal and state claims against them. For the reasons stated below, the Court denies the majority of these motions, but grants Cook County's motion to dismiss the Title VII claim against it in *Howard* and grants in part Dart's and Cook County's motions in *Caloca*.

**Discussion**

To survive a motion to dismiss for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). This plausibility threshold is not a probability requirement; instead, it simply requires that a plaintiff "give enough details about the subject-matter of the case to present a story that holds together. . . . In other words, the court will ask itself *could* these things have happened, not *did* they happen." *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013) (internal quotation marks and citations omitted); *see also Alamo v. Bliss*, 864 F.3d 541, 549 (7th Cir. 2017) ("[A] plaintiff need not plead detailed factual allegations to survive a motion to dismiss, [but] she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate.") (citation omitted). On a motion to dismiss, the Court accepts as true all factual allegations contained in the complaint and draws all permissible inferences in favor of the plaintiff. *Id.* at 548-49. Legal conclusions and conclusory allegations that merely recite the elements of a claim, however, are not entitled to a presumption of truth. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

The defendants in *Brown*, *Howard*, and *Caloca* have filed a total of six somewhat overlapping motions to dismiss—two in each case. The Court will address each of the defendants' motions by case, starting with *Brown*, then proceeding to *Howard* and *Caloca*. The factual background set forth below is taken from the allegations contained in most recent version of the complaint filed in each case.

**A.**   *Brown*

Over the last two years, female Assistant Public Defenders (APDs) and law clerks from the Law Office of the Cook County Public Defender have endured frequent and repeated sexual harassment in the Cook County jail and courthouse lockups. Because many of the clients that APDs represent are in custody, they often have no choice but to meet with their clients in the jail and lockups.  These client meetings are not private—during such meetings, other detainees can see the APDs through the window, and they know that the APDs can see them.  There has been an alarming increase in the number of incidents of detainees exposing themselves and / or masturbating while staring lewdly and aggressively at female APDs and law clerks through the window and engaging in other verbal sexual harassment and threatening behavior while they are meeting with their clients in the Cook County jail and lockups.

In response to this ongoing problem, Crystal Brown and a number of other female Assistant Public Defenders (the *Brown* plaintiffs) have sued Public Defender of Cook County Amy Campanelli (in her official capacity), Cook County Sheriff Thomas Dart (in his official capacity), and Cook County on behalf of themselves and a putative class of similarly situated persons.  The *Brown* plaintiffs, all of whom have suffered repeated harassment of this nature in the jail and lockups, allege that the defendants have contributed to the creation of a discriminatory and hostile work environment in which sexual harassment is commonplace, in violation of 42 U.S.C. § 1983 and equal protection (count 1 against Dart and Campanelli), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (count 2 against Dart, Campanelli, and Cook County), and the Illinois Civil Rights Act of 2003, 740 ILCS 23/5 (count 4 against Dart, Campanelli, and

Cook County). They also assert a Title VII retaliation claim against Campanelli (count 3) and a claim of indemnification against Cook County (count 5). *See Carver v. Sheriff of La Salle Cty.*, 203 Ill. 2d 497, 499, 787 N.E.2d 127, 129 (2003) ("Because the office of the sheriff is funded by the county, the county is therefore required to pay a judgment entered against a sheriff's office in an official capacity.").

Dart has moved to dismiss counts 1 and 2 of the *Brown* plaintiffs' amended complaint, and Campanelli has filed a separate motion to dismiss all claims against her (counts 1-4). Cook County, which is named as a defendant in counts 2, 4, and 5 of the amended complaint, did not file its own motion to dismiss. Instead, it "joined" both Dart's and Campanelli's motions via footnote. *See* Dart's Mem. in Supp. of Mot. to Dismiss (*Brown*) at 1 n.1 ("Defendant Cook County also joins the instant motion."); Campanelli's Mem. in Supp. of Mot. to Dismiss (*Brown*) at 2 n.1 ("Cook County asserts that the arguments raised by Amy Campanelli in her Motion to Dismiss and this Memorandum also apply to Cook County, and therefore, respectfully requests that this honorable Court dismiss Plaintiffs' Amended Complaint in its entirety."). Many of the arguments made by Dart and Campanelli are specific to those defendants and do not, in fact, apply to the County. In any case, because the Court denies both Dart's and Campanelli's motions to dismiss for the reasons explained below, Cook County's attempt to join those motions gets it nowhere.

### 1. Dart's motion to dismiss

#### a. Section 1983 equal protection claim (count 1)

Dart argues that the *Brown* plaintiffs have failed to state a claim under section 1983 and the Equal Protection Clause of the Fourteenth Amendment. Specifically, he

contends that they have failed to plausibly allege an equal protection violation because (1) they do not allege that male APDs received greater protection from sexual harassment than female APDs because of their gender, and (2) they have not alleged facts that would allow for a reasonable inference that Dart or some other final policymaker in the Sheriff's Office acted with intent to discriminate against them because of their sex. Dart also notes that, by suing him in his official capacity as the Sheriff of Cook County, the *Brown* plaintiffs are effectively suing the Cook County Sheriff's Office. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent."). He argues that the Court should therefore dismiss the *Brown* plaintiffs' equal protection claim for the additional reason that they do not plausibly allege that any CCSO policy or practice was the moving force behind the violation such that the Sheriff's Office may be held liable under section 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). Not surprisingly, the *Brown* plaintiffs disagree. They contend that they have alleged sufficient facts to state a plausible equal protection claim against Dart under section 1983 and *Monell*.

To hold a municipality or comparable entity liable for a constitutional violation pursuant to section 1983 and *Monell*, a plaintiff must show that an official policy, a widespread custom, or an action by an official with final policymaking authority was the "moving force" behind the alleged violation. *Dixon v. County of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (quoting *City of Canton v. Harris,* 489 U.S. 378, 389 (1989)). To prevail on an equal protection claim, a plaintiff must establish not only that the

defendant's actions had a "discriminatory effect," but also that the defendant was "motivated by a discriminatory purpose." *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). To state a *Monell* claim for an equal protection violation, therefore, a plaintiff must plead facts that allow the Court to draw the reasonable inference that the defendant "maintained a policy, custom, or practice of intentional discrimination against a class of persons to which [the plaintiff] belong[s]." *McCauley*, 671 F.3d at 616 (emphasis added). "Purposeful discrimination requires more than intent as volition or intent as awareness of consequences." *Iqbal*, 556 U.S. at 676 (internal quotation marks and citation omitted).

Dart contends that the *Brown* plaintiffs have failed to state an equal protection claim because they do not allege that the CCSO has provided male APDs with greater protection than female APDs with respect to the types of sexual harassment at issue in this case. The complaint itself states that the sexual harassment in question is "solely directed toward female employees and because of their sex." 1st Am. Compl. (*Brown*) ¶ 3; *see also id.* ¶ 137 ("The sexual harassment is because of Plaintiffs' sex."). Because it is directed solely at women, the plaintiffs cannot and do not allege that the CCSO provides different levels of protection to male and female APDs when it comes to this particular type of harassment; there is no need to protect male APDs from a problem that does not affect them. Nonetheless, the *Brown* plaintiffs argue that Dart's intent to subject women to discriminatory treatment because of their sex can be reasonably inferred by contrasting the CCSO's response to this problem with the swift and decisive action it took in response to the physical assault of a male APD by a detainee in 2014. Specifically, in December 2014, after a male APD was physically

assaulted by a detainee client during a meeting at the Cook County Jail, Dart instituted

a policy requiring detainees to be handcuffed to a desk or other stationary object during

such meetings.  Although, as Dart points out, the 2014 incident is different in kind from

the sexual harassment at issue in this case, the Court does not find it entirely irrelevant

to the only question presented at this stage in the proceedings:  whether the plaintiffs

have alleged sufficient factual matter to state a plausible equal protection claim.  Even if

the CCSO cannot be said to treat male and female APDs differently with respect to this

particular problem, this allegation must be considered in combination with the other

factual allegations contained in the complaint.

The *Brown* plaintiffs also allege that Dart's *de facto* policies and widespread

practices have not just enabled detainees to continue sexually harassing female APDs

and law clerks, but have in fact emboldened detainees to increase the frequency and

severity of the harassment by leading them to believe that they may engage in such

behavior with impunity.  Specifically, the plaintiffs allege that Dart made the harassment

worse by implementing several different solutions to the problem that actually seemed

to be working, only to discontinue each of them a short time later.  For example, in early

2017, Dart began handcuffing detainees while they were in lockup, which significantly

decreased the incidents of masturbation and indecent exposure; after two weeks,

however, because Campanelli objected to the practice, Dart discontinued it, and the

harassment of female APDs and law clerks increased.  Dart also briefly experimented

with a requirement that detainees wear special jumpsuits that would prevent exposure

and masturbation, but he lifted the requirement after a small group of detainees burned

the jumpsuits using microwave ovens.  Around May 2017, Dart again curbed the

harassment by placing additional CCSO officers on duty in the lockups, but he withdrew the officers a short time later, claiming that he lacked sufficient funds from Cook County to keep them there. In response to female APDs' complaints, the CCSO policy director Cara Smith stated, "This is something that happens in custodial environments, period." *Id.* ¶ 110.

Dart argues that far from serving as evidence of intentional discrimination, there is an obvious alternative explanation for his failure to implement an effective, long-term solution to this problem: he is making "good faith but less-than-completely-successful efforts" to curb the harassment, but he is hampered by a lack of resources and running into opposition from Campanelli (at least with respect to handcuffing detainees). Dart's Mem. in Supp. of Mot. to Dismiss (*Brown*) at 9. Although that is an entirely plausible explanation, at this stage of the case all reasonable inferences must be drawn in favor of the plaintiffs, not Dart. Dart's alternative explanation is not so obvious that it renders the plaintiffs' version less than plausible; accordingly, the Court rejects it as a basis for dismissal of the plaintiffs' claim. *See, e.g.*, *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. . . . For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.").

Dart further contends that complaints about the CCSO's ineffectiveness in coming up with a long-term solution to curb the detainees' sexually abusive behavior cannot form the basis for an equal protection claim. In support of this argument, Dart

cites *Schroeder v. Hamilton School District*, 282 F.3d 946 (7th Cir. 2002). The Seventh

Circuit noted in *Schroeder* that the plaintiff—a teacher who was harassed by students

and parents because of his sexual orientation—seemed to take the position that the

school district and its administrators violated his right to equal protection simply

because the disciplinary and investigative measures it took in response to the

harassment were "less than 100 percent effective." *Id.* at 956. The Seventh Circuit

rejected that proposition, explaining that "[t]he defendants' failure to address, to

Schroeder's satisfaction, his complaints of harassment does not . . . establish an equal

protection violation." *Id.*

In this case, however, the plaintiffs do not merely allege that Dart's attempts to

put a stop to the harassment were less than 100 percent effective. As previously

explained, the plaintiffs allege that Dart made the harassment worse by briefly

implementing—and then quickly discontinuing—effective solutions to the problem. *See*

1st Am. Compl. (*Brown*) ¶¶ 6, 78-80. The plaintiffs further allege that Dart affirmatively

acted to reward serial masturbators with pizza by enacting a program that "gave any

detainee reported as having exposed himself or masturbated the opportunity to receive

a pizza and / or pizza party if they . . . went 30 days without another sexual assault /

masturbating incident." *Id.* ¶ 81. Perhaps not surprisingly, as a result of this program,

detainees who had not previously engaged in such behavior were incentivized to do so

in order to be eligible for a pizza reward thirty days later. The plaintiffs also allege that

by allowing CCSO supervisors to discourage female employees from reporting sexual

harassment and CCSO investigators to refuse to investigate it, and by failing to

discipline detainees who sexually harass female employees, Dart has perpetuated the

existence of this abusive and discriminatory work environment.

This case is different from *McCauley,* in which the Seventh Circuit concluded that the plaintiff failed to state an equal protection claim against the City of Chicago where her complaint contained "only generalized allegations that the City failed to have specific policies in effect to protect [female] victims of domestic violence from harm inflicted by those who violate their parole or court orders of protection by committing acts of domestic violence." *McCauley*, 671 F.3d at 613. The Seventh Circuit explained in that case that allegations that the City "failed to single out domestic-violence victims as a class for *special* protection" did not plausibly suggest that the City denied such victims "*equal* protection" by intentionally omitting police protection from female domestic-violence victims as a class. *Id.* at 613, 619 (emphasis in original). The plaintiffs in the present case do not allege merely that Dart and the CCSO failed to single them out for special protection from private violence. As detailed above, they allege that specific CCSO policies and practices are responsible for creating an environment in which detainees believe they may sexually harass female APDs with impunity and have even incentivized such behavior.

Lastly, Dart argues that the *Brown* plaintiffs' equal protection claim is deficient for the additional reason that the plaintiffs do not specifically allege that Dart or any other CCSO employees were motivated by a discriminatory animus against women. But, as the Seventh Circuit has explained, "abstract recitations of the elements of a cause of action or conclusory legal statements . . . do nothing to distinguish the particular case that is before the court from every other hypothetically possible case in that field of law. Such statements therefore do not add to the notice that Rule 8 demands." *Swanson*,

614 F.3d at 405 (internal quotation marks and citation omitted).  What matters is whether the *factual* allegations in a complaint are "enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Although the plaintiffs do not allege in so many words that Dart acted with a discriminatory purpose, they allege that he "intentionally subjected Plaintiffs . . . to unequal and discriminatory treatment by requiring [them] to suffer incidents of assault, masturbation and / or indecent exposure by detainees . . . by knowingly refusing to protect [them] from this hostile work environment."  1st Am. Compl. (*Brown*) ¶ 126.  And they provide the specific factual allegations detailed above in support of their claim.  These factual allegations, taken together and viewed in the light most favorable to the plaintiffs, are sufficient to support a plausible inference of discriminatory effect as well as a plausible inference that Dart has intentionally failed to act appropriately to address the detainees' behavior toward female APDs because of their sex.  *See T.E. v. Grindle*, 599 F.3d 583, 588-89 (7th Cir. 2010) (plaintiffs did not need to prove discriminatory intent by showing that male and female victims were treated differently, because a jury could reasonably infer that the principal had a purpose of discriminating against girls based on their gender where plaintiffs offered evidence that the principal knew a teacher was abusing girls and deliberately helped cover it up).  At the motion to dismiss stage, nothing more is required.

Dart contends that even if the Court finds the *Brown* plaintiffs have stated an equal protection claim, the claim must nonetheless be dismissed because they do not plausibly allege that any CCSO policy or custom was the "moving force" behind the equal protection violation alleged, which is necessary for *Monell* liability under section

1983.  The Court disagrees.  As previously noted, the plaintiffs have alleged that Dart's official and *de facto* policies and practices have created an environment in which detainees are emboldened to sexually harass female APDs and law clerks.  They have additionally alleged that certain of Dart's policies caused an increase in the frequency with which they experience sexual harassment.  That is enough to plausibly allege that Dart's policies and practices were the moving force behind the equal protection violation alleged.  The Court therefore denies Dart's motion to dismiss the *Brown* plaintiffs' equal protection claim.

### b.    Title VII sex discrimination / hostile work environment claim (count 2)

Dart has also moved to dismiss the *Brown* plaintiffs' Title VII claim against him on the ground that he is not their employer.

To maintain a Title VII action against a defendant, a plaintiff must prove the existence of an employment relationship.  *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487, 492 (7th Cir. 1996), *as amended on denial of reh'g and reh'g en banc* (Feb. 7, 1997).  As assistant public defenders, the *Brown* plaintiffs are employees of Cook County.  *See Johnson v. Halloran*, 194 Ill. 2d 493, 498, 742 N.E.2d 741, 744 (2000); 1st Am. Compl. (*Brown*) ¶ 14.  The *Brown* plaintiffs contend that they may nonetheless maintain a Title VII claim against Dart on the ground that his above-described policies and practices have interfered with their employment by creating a discriminatory work environment in the jail and lockups.  Title VII makes it unlawful for an employer "to discriminate against any *individual*," leaving open the possibility that an employer may be held liable for disparate treatment under Title VII by an individual with whom it is not in a direct employer-employee relationship.  42 U.S.C. § 2000e-2(a)(1) (emphasis

added); *Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338, 1341 (D.C. Cir. 1973). Courts in this district are divided with respect to how broadly this provision of Title VII should be read based solely on Congress's use of the word "individual" instead of "employee." *Compare EEOC v. Foster Wheeler Const., Inc.*, No. 98 C 1601, 1999 WL 515524, at *5 (N.D. Ill. July 14, 1999) ("[A]n employee of one Title VII employer may sue a different Title VII employer whose discriminatory actions interfere with the employee's employment conditions.") *with Kerr v. WGN Cont'l Broad. Co.*, 229 F. Supp. 2d 880, 887 (N.D. Ill. 2002) ("[T]his court concludes that [an interference] theory is unavailable in a Title VII action."). The Seventh Circuit has not expressly decided whether an entity that meets the definition of an employer may be held liable under Title VII for discriminatory conduct that interferes with a plaintiff's employment by a different employer. *See Alexander*, 101 F.3d at 493 n.2. In *EEOC v. State of Illinois*, 69 F.3d 167 (7th Cir. 1995), however, the Seventh Circuit stated in dicta that it was "very doubtful that laws which forbid employers to discriminate create a blanket liability to employees of *other* employers for interference with *their* employment relationships." *Id.* at 169 (emphasis in original). It also suggested that such an interference theory would be limited to cases "in which the defendant so far controlled the plaintiff's employment relationship that it was appropriate to regard the defendant as the de facto or indirect employer of the plaintiff, as where a hospital prevents a nurse from being employed by a hospitalized patient." *Id.* It is undisputed that a *de facto* or indirect employer may be held liable as an employer under Title VII. *See, e.g.*, *Love v. JP Cullen & Sons, Inc.*, 779 F.3d 697, 701 (7th Cir. 2015); *State of Illinois*, 69 F.3d at 171.

Although courts in the Seventh Circuit have used a number of different tests to

determine whether a defendant may qualify as an indirect employer of a plaintiff in a given case, the most important consideration is the defendant's exercise of control over the plaintiff's employment relationship. *Harris v. Allen Cty. Bd. of Comm'rs*, 890 F.3d 680, 683 (7th Cir. 2018). The power to hire and fire is generally a key indicator of control, but the employer's control over other aspects of the employment relationship may be relevant if "related to the subject of the plaintiff's suit." *Id.* at 684; *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1088-89 (7th Cir. 2008) (plaintiff's allegations were sufficient to state a Title VII claim against defendant under indirect / *de facto* employer liability theory where she alleged, in part, that the defendant controlled the very aspect of her job that formed the basis of her claim).

Regardless of whether this Court is inclined to recognize some sort of interference theory of employer liability, it will therefore be necessary to consider the amount of control that Dart has over the plaintiffs' employment relationship in order to determine whether he may be held liable for the alleged Title VII violations. It is difficult to do this without a more fully developed factual record, which is probably why, in so many of the cases cited by both parties, such issues were determined at the summary judgment stage rather than on a motion to dismiss. *See, e.g.*, *Love v. JP Cullen & Sons, Inc.*, 971 F. Supp. 2d 862, 867-68 (E.D. Wis. 2013), *aff'd,* 779 F.3d 697 (7th Cir. 2015); *Mays v. BNSF Ry. Co.*, 974 F. Supp. 2d 1166, 1178-79 (N.D. Ill. 2013); *Abbott v. Village of Westmont*, No. 02 C 2296, 2003 WL 22071492, at *3-7 (N.D. Ill. Sept. 5, 2003); *Kerr*, 229 F. Supp. 2d at 883-89; *Foster Wheeler*, 1999 WL 515524, at *5-10. *But see Douglas v. Univ. of Chicago*, No. 14 CV 7244, 2015 WL 738693, at *1-2 (N.D. Ill. Feb. 19, 2015), *aff'd,* 619 F. App'x 556 (7th Cir. 2015); *Tamayo v. Hamer*, No. 06 C

3151, 2007 WL 1576528, at *2-3 (N.D. Ill. May 30, 2007), *rev'd in part*, *Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008). It is true that in *Douglas v. University of Chicago*, 619 F. App'x 556 (7th Cir. 2015), the Seventh Circuit affirmed a Rule 12(b)(6) dismissal of a plaintiff's Title VII claim on the ground that the plaintiff failed to plausibly allege that the defendant was either his employer or so far controlled his employment relationship that it was appropriate to consider it his *de facto* or indirect employer. *Id.* at 557. But in that case, the plaintiff's claim was based on a highly attenuated theory of control: the plaintiff, a retired economist, alleged that the University of Chicago's rejection of an article he submitted to one of its journals discriminatorily interfered with his prospective employment opportunities. *Id.* at 556-57. The Seventh Circuit found the dismissal appropriate because the plaintiff had "not plausibly alleged that the university journal's decisions about which articles to publish controlled any of his potential employment relationships to such an extent as to trigger the theory's application." *Id.* at 557. In the present case, by contrast, the connection between the allegedly discriminatory interference and the plaintiffs' employment is much less tenuous.

The *Brown* plaintiffs do not allege that Dart has the ability to pay their salaries, supervise them, or hire and fire them. They have alleged, however, that Dart, in his capacity as the Sheriff of Cook County, not only is specifically responsible for "inmate control," but also has authority over and responsibility for the custody and care of the jail and courthouses in Cook County, which is where they allege they must meet their detainee clients and, crucially, where the allegedly discriminatory and hostile work environment exists. *See* 1st Am. Compl. (*Brown*) ¶¶ 2, 21-22,152-154. Plaintiffs further allege that because visiting client detainees is an essential function of their jobs as

16

assistant public defenders, the sexually abusive conditions that have been created and fostered by Dart's policies and practices in the jail and lockups interfere with their employment. These allegations are sufficient to survive a motion to dismiss. The issue of whether Dart does, in fact, exercise sufficient control over plaintiffs' employment such that he may be held liable under some version of an interference theory—or simply an indirect employer theory—may be revisited at the summary judgment stage.

**2.      Campanelli's motion to dismiss**

**a.      Section 1983 equal protection claim (count 1)**

Campanelli contends that the *Brown* plaintiffs' equal protection claim against her should be dismissed for many of the same reasons argued by Dart and discussed above. First, Campanelli argues that the plaintiffs' own allegations show that she lacked the requisite discriminatory intent to be held liable under the Equal Protection Clause. She further contends that despite the plaintiffs' attempt to draw comparisons between her response to the 2014 assault of a male APD and her response to the current situation, they have not alleged facts sufficient to plausibly support their claim that she intentionally treated incidents involving sexual harassment of female APDs differently from incidents of assault involving male APDs; nor have the plaintiffs alleged that she has deliberately responded ineffectively to this problem while enacting effective policies against the harassment of male APDs. Campanelli further argues that she has very little control over the problem, because it is Dart—not the Cook County Public Defender—who is responsible for the jail and courthouse lockup environments. Lastly, Campanelli contends that the *Brown* plaintiffs have not stated a claim to relief against her under *Monell* because they have not alleged that any policy, practice, or custom of

hers was the moving force behind the alleged deprivation of their right to equal protection. The *Brown* plaintiffs assert that they have alleged sufficient factual matter to state a plausible equal protection claim under *Monell* in all respects.

The plaintiffs allege that Campanelli, like Dart, has intentionally subjected them to unequal and discriminatory treatment by requiring them to suffer incidents of assault, masturbation, and indecent exposure during the course of their employment by "knowingly refusing to protect" them from this hostile work environment. 1st Am. Compl. (*Brown*) ¶ 126. They allege that female APDs have repeatedly complained to supervisors, including Campanelli, both orally and in writing about incidents of indecent exposure and masturbation over the last two years. In October 2017, the plaintiffs learned that despite these numerous complaints, no one from Campanelli's office had ever informed Cook County's Equal Opportunity officer of the problem. Although she has held meetings about the problem, Campanelli has repeatedly told female APDs concerned about the discriminatory and hostile environment in the jail and lockups that it is not her responsibility to keep them safe there. Additionally, according to the plaintiffs, Campanelli's office has maintained a *de facto* policy of discouraging female APDs from filing criminal complaints and pursuing criminal charges against detainees for the types of severe sexual harassment at issue in this case. They further allege that female APDs are regularly assigned or pressured to accept cases representing detainees who have sexually harassed or assaulted other female APDs. By contrast, plaintiffs allege, after the 2014 physical assault of a male APD, the Chief of Staff of the Public Defender's Office issued a statement explaining that CCPD cannot defend a criminal defendant when the victim of that defendant is an APD. As previously noted, in

early 2017 Dart began handcuffing detainees in lockups—a practice which significantly decreased the number of incidents of masturbation and indecent exposure. Despite its apparent effectiveness, Campanelli objected to the practice and requested that it be stopped immediately. Dart stopped handcuffing detainees just two weeks after he had started, and the number of incidents of indecent exposure and masturbation directed at female APDs and law clerks once again increased. The plaintiffs allege that these policies and practices, individually and in combination with Dart's policies and practices, are responsible for creating a hostile and sexually abusive environment in which detainees may engage in sexual misconduct against female APDs with impunity. Additionally, as explained in greater detail below, the plaintiffs also allege that Campanelli retaliated against them for filing discrimination charges against her.

These allegations are sufficient to state a plausible equal protection claim against Campanelli in her official capacity. As an initial matter, the fact that Campanelli has taken some steps to respond to this problem (including educating detainees about the potential criminal consequences for indecent exposure, holding various meetings with Dart, County officials, APDs, and the presiding judge at the George N. Leighton Criminal Courthouse, and briefly barring APDs from entering the Leighton lockup) does not preclude the plaintiffs from alleging an equal protection violation. The Court is sympathetic to the fact that Campanelli must also protect the rights of her detainee clients, who are the same individuals harassing and assaulting her employees—and also to the fact that it is the Sheriff's Office that has authority to control the jail and lockups—but, at this stage in the proceedings, the facts must be construed in the light most favorable to the plaintiffs. And at this stage, the question is not whether the

plaintiffs <u>will</u> prove their claim, but only whether they have alleged sufficient facts to render it plausible. *See, e.g.*, *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 834 (7th Cir. 2015).

The facts in this case, taken together, support a plausible inference that Campanelli has been motivated, at least in part, by a discriminatory purpose in responding to the problem in the way she has. First, as the Court explained with respect to Dart's motion to dismiss, the fact that the 2014 assault on the male APD was not of the same kind as the assaults and harassment complained of in this lawsuit does not mean the Court must entirely disregard alleged differences in Campanelli's responses to the two problems—it provides context for the rest of the allegations in the complaint. Additionally, as the Court has already explained, the present case differs from *Schroeder* in that plaintiffs do not merely allege that the defendants' attempts to put a stop to the harassment were less than 100 percent effective. Instead, the plaintiffs allege that Campanelli deliberately took actions (such as objecting to the handcuffing of detainees) and instituted *de facto* policies (such as a policy of discouraging female APDs from filing criminal complaints against their harassers) that have created an environment in which detainees sexually harass female APDs and law clerks with impunity and have affirmatively made the problem worse. It may reasonably be inferred from such allegations that Campanelli's own policies and practices were the moving force behind the equal protection violation alleged, as is required for *Monell* liability. The Court therefore denies Campanelli's motion to dismiss the *Brown* plaintiffs' equal protection claim.

### b.     Title VII sex discrimination / hostile work environment claim (count 2)

Campanelli contends that the Court should dismiss the *Brown* plaintiffs' Title VII claim against her because the allegations contained in the complaint establish that she took prompt and appropriate action to address the hostile work environment at issue in this case, even if the action taken was not entirely effective.  In so arguing, Campanelli reiterates that she is limited in her ability to correct the problem because it is the Cook County Sheriff, not the Public Defender, who controls the environment in the jail and lockups, as well as the detainees themselves.

Harassment that is severe or pervasive enough to alter the conditions of employment is actionable under Title VII.  *Porter v. Erie Foods Int'l, Inc.*, 576 F.3d 629, 634 (7th Cir. 2009).  An employer may be held liable under Title VII for the hostile work environment created by such harassment if the employer was negligent in either discovering or remedying the harassment.  *Id.* at 636; *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 605 (7th Cir. 2006).  The Seventh Circuit has explained that because Title VII liability is a form of direct liability, "it makes no difference whether the person whose acts are complained of is an employee, an independent contractor, or for that matter a customer.  Ability to 'control' the actor plays no role."  *Dunn v. Washington Cty. Hosp.*, 429 F.3d 689, 691 (7th Cir. 2005); *see also Erickson*, 469 F.3d at 605 (applying this principle to sexual harassment and assault perpetrated by an inmate).  An employer can avoid liability for the harassment, however, simply by taking "prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring."  *Porter*, 576 F.3d at 636 (citation omitted).

Campanelli contends that the allegations contained in the complaint show that

she took immediate and thorough corrective actions. *See* Campanelli's Mem. in Supp. of Mot. to Dismiss (*Brown*) at 15 ("Campanelli made numerous attempts to respond to the sexual harassment and masturbation complaints, including meeting with other County officials and the Sheriff to discuss the incidents, sending a letter to the Sheriff requesting action, putting media pressure on the Sheriff to protect APDs, and eventually issuing a directive to protect the APDs."). The fact that Campanelli took some steps to correct the problem does not necessarily mean, however, that those steps were reasonably likely to prevent the harassment from recurring. In fact, the plaintiffs allege that Campanelli also took actions that caused the harassment to increase: not only did she object to the handcuffing of detainees in lockup, thereby causing the CCSO to discontinue the practice, but she also discouraged female APDs from filing charges against their harassers. According to plaintiffs, no one from the CCPD's office even bothered to inform the County's EEO officer of the problem.

Campanelli further argues that the plaintiffs have failed to state a plausible Title VII hostile environment claim against her in this case because the Cook County Sheriff is the only entity that possesses the requisite control and authority over the jail and lockups and detainees to put a stop to the harassment.[1] The plaintiffs respond that, at very least, Campanelli exercises enough control to successfully reverse the CCSO's handcuffing policy, which was actually working to decrease the number of assaults experienced by female APDs and law clerks. Plaintiffs further note that none of the

---

[1] It is rather disconcerting that Dart and Campanelli each appear to be pointing their fingers at each other, with Campanelli saying she isn't responsible because she doesn't control lockups or prisoners, and Dart saying he isn't responsible because he isn't the APDs' employer. But at this stage of the case at least, this strategy is not a successful one for either of them.

cases Campanelli cites were decided at the motion to dismiss stage; rather, each case

was decided "on a fully developed record, where the reasonableness of the employers'

responses could be assessed in the context of the evidence as a whole."  Pls.' Resp. to

Campanelli's Mot. to Dismiss (*Brown*) at 15.

The Court agrees that this is an issue better-suited for a summary judgment

motion than a motion to dismiss.  *See, e.g.*, *Johnson v. Advocate Health & Hosps.

Corp.*, No. 16-3848, 2018 WL 2753066, at *14 (7th Cir. June 8, 2018) ("the question as

to whether an employer's response was reasonably likely to end the harassment

is fact specific and must be analyzed according to a totality of the circumstances

review").  The plaintiffs have alleged sufficient factual matter to state a plausible Title VII

hostile work environment claim against Campanelli.  The question of whether either

Campanelli's response to this problem or her purported inability to control conditions in

the jail and lockups absolves her of liability is better left for a later day.

### c.      Title VII retaliation claim (count 3)

Next, Campanelli argues that, by alleging nothing more than the possibility of

disciplinary action, the *Brown* plaintiffs have failed to state a Title VII retaliation claim

against her.

In the Title VII retaliation context, "the challenged adverse action need not be one

that affects the terms and conditions of employment, but it must be one that a

reasonable employee would find to be materially adverse such that the employee would

be dissuaded from engaging in the protected activity."  *Poullard v. McDonald*, 829 F.3d

844, 856 (7th Cir. 2016) (internal quotation marks and citation omitted).  Threats of

unspecified disciplinary action alone are not a sufficiently adverse action for Title VII

retaliation purposes.  *Id.*

The complaint sets out the following facts:  On October 23, 2017, the *Brown* plaintiffs filed EEOC charges of discrimination against Campanelli and others; they advised Campanelli of the charges on October 25.  On October 31, Campanelli issued a directive barring all APDs from entering the lockups at Leighton, the plaintiffs' assigned courthouse.  Campanelli unilaterally issued the directive on October 31 despite having previously promised to wait until November 9, after consulting with Chief Judge Timothy Evans, to decide whether to implement a policy barring APDs from the lockups.  The plaintiffs allege that Campanelli changed plans and issued the directive in October to retaliate against them for filing the discrimination charges a week earlier and to chill participation in this litigation.  The plaintiffs also allege that by barring all APDs from the Leighton lockups in response to the discrimination charges, Campanelli interfered with their ability to do their jobs by effectively preventing them from meeting with their clients. The plaintiffs further allege that after Campanelli issued the directive, a supervising judge at Leighton told APDs that he would not hesitate to report them to the Attorney Registration and Disciplinary Commission (ARDC) if he concluded that their compliance with the directive had detrimentally affected any criminal defendant.

It seems clear to the Court that the plaintiffs' retaliation claim is not solely based unrealized threats of disciplinary action but instead on Campanelli's issuance of a directive that interfered with the plaintiffs' ability to communicate with their clients, thereby interfering with one of their most important job responsibilities.  It is entirely plausible that a reasonable assistant public defender would find such an action to be "materially adverse such that [she] would be dissuaded from engaging in . . . protected

activity." *Id.* Accordingly, Campanelli's motion to dismiss the *Brown* plaintiffs' Title VII retaliation claim is denied.

### d. ICRA claim (count 4)

Lastly, Campanelli contends that the *Brown* plaintiffs may not assert a damages claim against her under ICRA because the Illinois Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) affords her immunity from such claims.[2]

ICRA provides that:

No unit of State, county, or local government in Illinois shall:

> (1) exclude a person from participation in, deny a person the benefits of, or subject a person to discrimination under any program or activity on the grounds of that person's race, color, national origin, or gender; or
>
> (2) utilize criteria or methods of administration that have the effect of subjecting individuals to discrimination because of their race, color, national origin, or gender.

740 ILCS 23/5(a). ICRA provides a private right of action for parties aggrieved by violations of the Act, and it expressly contemplates a damages remedy. *Id.* § 5(b) ("If the court finds that a violation . . . has occurred, the court may award to the plaintiff actual damages.").

The General Assembly enacted the Tort Immunity Act "to protect local public

---

[2] Campanelli also argues that the plaintiffs' ICRA claim tracks their equal protection claim and thus fails for the same reasons that the equal protection claim fails. This does not appear to be correct. *See, e.g.*, *Jackson v. Cerpa*, 696 F. Supp. 2d 962, 964 (N.D. Ill. 2010) (ICRA was "expressly intended to provide a state law remedy that was *identical* to the federal disparate impact canon") (emphasis in original); *Leslie v. Bd. of Educ. for Illinois Sch. Dist. U-46*, 379 F. Supp. 2d 952, 963 (N.D. Ill. 2005) (ICRA statute does not reference intent). In any case, the Court has already rejected Campanelli's arguments with respect to the equal protection claim.

entities and public employees from liability arising from the operation of government." 745 ILCS 10/1-101.1(a). The Act, which was passed well before ICRA, only affects a plaintiff's right to request damages; it does not restrict the right to obtain injunctive or declaratory relief against a local public entity or public employee. *Id.* § 2-101; *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 256, 807 N.E.2d 439, 444 (2004). Section 2-201 of the Tort Immunity Act—the specific provision of the Act that Campanelli raises here—provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." *Id.* § 2-201.

Campanelli argues that she is immune from suit for damages under section 2-201 of the Tort Immunity Act because her actions in responding to the pervasive sexual harassment of APDs in the jail and lockups are (1) discretionary decisions and (2) necessarily involve policy determinations that require weighing competing interests in keeping APDs safe and ensuring that her client-detainees are not deprived of adequate legal representation. The *Brown* plaintiffs contend that by expressly subjecting units of state, county, and local government—and only units of state, county, and local government—to liability for discrimination, ICRA overrides the Tort Immunity Act. Indeed, as plaintiffs note, "the express *purpose* of ICRA is to subject units of local government to liability for civil rights violations." Pls.' Resp. to Campanelli's Mot. to Dismiss at 20 (emphasis in original). Additionally, as previously noted, ICRA specifically

provides a damages remedy against local governments for violations of the Act.[3]  *See*

740 ILCS 23/5(b).

Although the Tort Immunity Act does not include ICRA in its list of statutes to

which the Act does not apply, *see* 745 ILCS 10/2-101, the Court agrees with the

plaintiffs that it is doubtful the Tort Immunity Act bars their claim for damages under

ICRA.  ICRA, which was enacted long after the Tort Immunity Act, specifically provides

a cause of action and damages remedy against local governments; in fact, as plaintiffs

point out, units of government are the only cognizable defendants under ICRA.  *See*

740 ILCS 23/5(a) (liability limited to units of state, county, or local government).

Allowing CCPD to avoid damages liability for alleged discrimination on the ground that it

resulted from a discretionary policy decision within the meaning of section 2-201 of the

Tort Immunity Act would appear to undermine the very purpose of ICRA.  Campanelli

contends that the applicability of the Tort Immunity Act to claims brought under ICRA is

evidenced by the fact that courts have "grouped claims brought under the ICRA with

other state law claims in determining their viability under the Tort Immunity Act."

Campanelli's Reply in Supp. of Mot. to Dismiss (*Brown*) at 11.  In support of this

argument, Campanelli notes that in *Weiler v. Village of Oak Lawn*, 86 F. Supp. 3d 874

(N.D. Ill. Mar. 31, 2015), this Court considered the application of the Tort Immunity Act

as it applied to a plaintiff's state law claims, which included a claim brought under ICRA.

*Id.* at 884-86.  In *Weiler*, however, the plaintiff did not argue, as do the plaintiffs in the

present case, that the Tort Immunity Act did not apply to ICRA.  *See* Pl.'s Resp. to

---

[3] Like Dart, Campanelli is sued only in her official capacity as the Public Defender of
Cook County.  Accordingly, the *Brown* plaintiffs' suit against her is effectively a suit
against CCPD.  *See Sow*, 636 F.3d at 300.

Defs.' Mot. to Dismiss, *Weiler v. Village of Oak Lawn*, No. 14 C 4991 (N.D. Ill. Mar. 31, 2015), ECF No. 23.

That said, it is not necessary for the Court to decide this issue now. Because the plaintiffs have not only asserted other claims for damages against Campanelli that overlap with their ICRA claim but also seek injunctive relief under ICRA, allowing their ICRA claim for damages to proceed is "highly unlikely to have any material impact on discovery or other pretrial proceedings." *Am. Islamic Ctr. v. City of Des Plaines*, 32 F. Supp. 3d 910, 916 (N.D. Ill. 2014) (Kennelly, J.). Additionally, as the Illinois Supreme Court has explained, "because the immunities afforded to governmental entities [by the Tort Immunity Act] operate as an affirmative defense, those entities bear the burden of properly raising and proving their immunity under the Act." *Van Meter v. Darien Park Dist.*, 207 Ill. 2d 359, 370, 799 N.E.2d 273, 280 (2003). A plaintiff's right to recovery is barred only if the defendant claiming immunity from liability has met its burden to prove that immunity is warranted. *Id.* The plaintiffs have alleged that several different policies and practices implemented by Campanelli are relevant to their ICRA discrimination claim. Campanelli's general assertion that all of these actions involve the exercise of discretion and the determination of policy is not sufficient to warrant dismissal of the plaintiffs' claim at this early stage in the proceedings.

**B.** *Howard*

In November 2017, two days after the *Brown* plaintiffs filed their lawsuit, another group of women who have suffered the same intense and pervasive sexual harassment while working at the Cook County Jail and the Leighton courthouse filed their own suit against Cook County and the Cook County Sheriff's Office. In addition to asserting a

28

claim of indemnification against Cook County, the *Howard* plaintiffs' first consolidated complaint asserts Title VII hostile work environment (count 1), *Monell* equal protection (count 2), and ICRA (count 3) claims against both defendants on behalf of themselves and a putative class of similarly situated women who have been employed by the County at Cermak Health Services (the jail's healthcare provider) or by the Sheriff's Office at the jail or the courthouse. The majority of the plaintiffs named in this suit are employed by the CCSO; some are correctional officers at the jail, one is a correctional rehabilitation worker at the jail, and others are sworn deputy sheriffs who work as court services deputies at the courthouse. Another plaintiff, Tavi Burroughs, is a paramedic who works at Cermak Heath Services in the jail.

The Cook County Sheriff's Office has moved to dismiss Burroughs's Title VII claim on the ground that CCSO is not her employer. Cook County, for its part, has moved for the dismissal of Burroughs's Title VII claim for failure to exhaust and for dismissal of counts 1-3 of the complaint with respect to all of the named plaintiffs except for Burroughs.

### 1. CCSO's partial motion to dismiss[4]

The Sheriff's Office contends that Burroughs cannot state a Title VII claim against it because she is not an employee of the CCSO. Specifically, it argues that Burroughs, who is officially an employee of Cook County,[5] has not pled sufficient facts to support her allegation that she is jointly employed by the CCSO. Burroughs responds that the CCSO has subjected itself to employer liability under Title VII by expressly undertaking

---

[4] The CCSO's contention that filing a motion to dismiss some but not all counts of a complaint "tolls" the time to respond to the others is incorrect. The CCSO had an obligation to answer the claims it was not moving to dismiss.

[5] The parties do not dispute that Cook County is Burroughs's direct employer.

responsibility for the protection of Cermak personnel working in the jail, which is a responsibility that an employer would normally owe to its employees. *See* Pls.' Resp. to CCSO's Mot. to Dismiss (*Howard*), Ex. 1 (Inter-Agency Agreement), at 4, 6 (Cook County Department of Corrections, acting on behalf of the Cook County Sheriff, is to "[p]rovide security to detainees and to Cermak staff" and to "[c]onduct disciplinary hearings when detainees use abusive or disrespectful language to a Cermak employee").[6]

At this stage in the proceedings, there is no need to get into the specifics of either party's argument on this point. Even though the plaintiffs state in their response brief that they are not proceeding on interference or *de facto* employer liability theories, their allegations regarding the CCSO's assumption of responsibility for the security of Cermak employees and for the discipline of detainees who act abusively toward Cermak employees effectively boil down to an allegation that the CCSO controls the hostile work environment of which they complain. For the reasons explained by the Court in the above analysis of Dart's motion to dismiss the *Brown* plaintiffs' Title VII claim, such allegations are sufficient to survive a motion to dismiss. The Court will revisit the question of whether the CCSO may be held liable under Title VII as Burroughs's joint employer at a later stage in the proceedings, with the benefit of a fully

---

[6] The Court considers these allegations and the contents of the Inter-Agency Agreement over the CCSO's objection that the *Howard* plaintiffs made no mention of the Agreement or any of its provisions in their first consolidated complaint. A plaintiff opposing a Rule 12(b)(6) motion has more flexibility to introduce materials outside the complaint than does the moving party. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Courts may consider such elaborations on the allegations in the complaint as long as they are consistent with the pleadings. *See id.* The information contained in the Inter-Agency Agreement is consistent with the allegation that the CCSO is Burroughs's joint employer. *See* 1st Consolidated Compl. (*Howard*) ¶ 26.

developed factual record.

2.    **Cook County's motion to dismiss**

a.    **Title VII hostile work environment, Section 1983 equal protection, and ICRA claims (counts 1-3)**

Cook County has moved to dismiss the Title VII, equal protection, and ICRA claims brought against it by all of the *Howard* plaintiffs except for Burroughs on the ground that it is not their employer and cannot control the jail or the Cook County Sheriff's Office.

The plaintiffs respond that they have plausibly alleged the existence of an employment relationship with Cook County because they asserted the following in the first consolidated complaint:  "At all times relevant to this complaint, the County has been an employer, or joint-employer, of all Plaintiffs and all members of the proposed class, including as a signatory (or joint signatory, along with the CCSO) to collective bargaining agreements governing their employment."  1st Consolidated Compl. (*Howard*) ¶ 29.  Without citing any legal authority or providing any supporting argument, the plaintiffs contend that the County is subject to liability as a joint employer within the meaning of Title VII simply because the collective bargaining agreement governing the employment of CCSO correctional officers, among others, refers to Cook County and the CCSO as their "joint employers."  *See* Pls.' Resp. to Cook County's Mot. to Dismiss (*Howard*), Ex. 1.  Because the plaintiffs have offered nothing more than this conclusory statement in support of their position, the Court grants the County's motion to dismiss the *Howard* plaintiffs' Title VII claims against it with the exception of the Title VII claim brought by Burroughs, which the Court addresses separately below.

As the plaintiffs point out, however, Cook County need not be their employer for

31

purposes of their equal protection and ICRA claims. And to the extent that the County suggests that the equal protection and ICRA claims should be dismissed simply because it has no control over the jail or the actions of the CCSO, that argument likewise fails because it does not address the plaintiffs' allegations that the County itself—through its own actions and failures to adequately respond to the harassment— has discriminated against them by enabling and perpetuating this behavior.

The plaintiffs allege that "[a]fter detainees made repeated specific threats to rape a female class member, Carlos Quezada-Gomez, the direct of mental health at Cermak Health Services, told class members that there was no 'confirmation of that' and that 'men can be raped too.'" 1st Consolidated Compl. (*Howard*) ¶ 48.n. Quezada-Gomez also told female staff to stop their "moaning and complaining" about the harassment they endure from male detainees, and supervisors have told female Cermak employees to wear gowns so detainees can't see their "female bodies." *Id.* ¶ 54.e. The plaintiffs further allege that "Cermak Health Services and the County ignore workers' complaints and reports of harassment." *Id.* According to the plaintiffs, these actions, coupled with the County's failure to address the problem despite its awareness of its scale and severity have "perpetuat[ed] . . . a hostile environment saturated with sexual harassment" and emboldened detainees to increase the frequency and severity of the harassment. *Id.* ¶¶ 56-58; *see also id.* ¶¶ 13-14, 84, 88. In light of these specific allegations, Cook County's assertions that it does not directly control the jail or the Cook County Sheriff's Office do not provide a basis for dismissing the plaintiffs' equal protection and ICRA claims. The Court therefore denies Cook County's motion to dismiss the *Howard* plaintiffs' equal protection and ICRA claims.

### b.     Burroughs's Title VII hostile work environment claim (count 1)

Cook County has also moved to dismiss Burroughs's Title VII claim on the ground that she has not received a right-to-sue letter from the Equal Employment Opportunity Commission (EEOC), which is a prerequisite to bringing a lawsuit under Title VII. *See, e.g.*, *Conner v. Ill. Dep't of Nat. Res.*, 413 F.3d 675, 680 (7th Cir. 2005). In her response brief, Burroughs admits that she is still waiting to receive her right-to-sue-letter. The Court therefore dismisses Burroughs's Title VII claim against Cook County with leave to reinstate it once she receives the letter. *See Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651 (2015) ("[A]n employee must obtain a right-to-sue letter before bringing suit—and a court will typically insist on satisfaction of that condition.").

## C.     *Caloca*

Lastly, in December 2017, Diana Caloca, an official court interpreter for the Circuit Court of Cook County, sued the CCSO, Sheriff Dart in his official capacity, and Cook County for alleged violations of equal protection and ICRA arising from a November 2016 incident in which a detainee masturbated and ejaculated on her while she was performing interpreting services in a courthouse lockup. Caloca contends that she has been "unable to fully function as a court interpreter" since the incident as a result of the defendants' creation and perpetuation of an environment in which sexual harassment is commonplace. 1st Am. Compl. (*Caloca*) ¶ 26; *see id.* ¶¶ 29, 32. Dart, the CCSO, and the County are all named defendants in count 1 of the first amended complaint, which alleges sexual harassment in violation of section 1983 and equal protection. Only Dart and the CCSO are named as defendants in count 2, which alleges violations of ICRA. The third and final count asserts a claim of indemnification

against Cook County.

Dart has filed a motion to dismiss Caloca's complaint on behalf of himself and the Cook County Sheriff's Office. Cook County has filed its own separate motion to dismiss.

### 1. Dart's motion to dismiss

Dart and the CCSO have moved to dismiss Caloca's complaint in its entirety.[7] As an initial matter, Dart asks the Court to strike the claims brought against him in his official capacity, because they are duplicative of the claims brought against the CCSO. *See* Dart's Mem. in Supp. of Mot. to Dismiss (*Caloca*) at 14 ("Sheriff Dart should be dismissed in his official capacity because the claims against him are duplicative of Plaintiff's claims against the CCSO."). "Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Caloca makes no argument regarding why her claims against Dart should not be stricken as redundant in light of the fact that she has also sued the CCSO; accordingly, the Court grants the request to strike the claims against Dart. *See Cruz v. Dart*, No. 12 C 6665, 2014 WL 5473077, at *2 (N.D. Ill. Oct. 29, 2014). Dart also asks the Court to strike Caloca's request for punitive damages on the ground that they are not available against the CCSO. Caloca has forfeited any argument to the contrary by failing to respond to Dart's contention in her response brief. *See, e.g.*, *Merry Gentleman, LLC v. George & Leona Prods., Inc.*, 76 F. Supp. 3d 756, 761 (N.D. Ill. Dec. 22, 2014). The Court therefore strikes Caloca's requests for punitive damages.

---

[7] In addition to filing its own separate motion to dismiss, Cook County "joins" Dart's motion to dismiss via footnote. Dart's Mem. in Supp. of Mot. to Dismiss at 1 n.1. As was the case in *Brown*, however, few of the arguments made by Dart apply equally to the County, and the Court rejects those that do.

### a.    Section 1983 equal protection claim (count 1)

In support of his motion to dismiss Caloca's equal protection claim, Dart advances versions of many the same arguments presented in the motion to dismiss he filed in *Brown*.  Specifically, Dart argues that (1) Caloca has not plausibly alleged that the CCSO's actions had a discriminatory effect and were motivated by a discriminatory purpose, and (2) Caloca does not allege that any CCSO custom, policy, or practice was the "moving force" behind the sexual harassment / assault she experienced in November 2016.

Dart first contends that Caloca has not clearly defined the class of people she alleges the CCSO's policies and actions have negatively impacted.  In the first amended complaint, however, Caloca alleges that the defendants, of which the CCSO is one, are "unwilling to protect Plaintiff and / or to ensure that her workplace is not discriminatory and dangerous to her in particular *and to women in general*."  1st Am. Compl. (*Caloca*) ¶ 25 (emphasis added); *see also id.* ¶ 36 ("The sexual harassment directed at *Plaintiff and other females* in the lock up [sic] has impeded *Plaintiff and other females'* ability to work, it has been and continues to be emotionally upsetting and has created an alienating, threatening, scary, and unacceptable work environment.") (emphasis added); *id.* ¶ 37 ("Defendants' actions as alleged above were done pursuant to one or more interrelated and *de facto* policies, patterns, practices, and / or customs of official conduct of acceptance of and deliberate indifference to the unbearable and unacceptable sexual harassment and, at times, assault of *females such as Plaintiff*.") (emphasis added).  Any suggestion that Caloca has not sufficiently identified her protected class is rather disingenuous.

Dart also contends that Caloca fails to state an equal protection claim because she does not allege that the CCSO treated similarly situated unprotected individuals differently or that the CCSO acted with a discriminatory purpose.[8]  In *Chavez v. Illinois State Police*, 251 F.3d 612 (7th Cir. 2001), the Seventh Circuit explained that in order to establish an equal protection violation, in addition to proving discriminatory purpose, a plaintiff must prove the defendants' actions had a discriminatory effect.  *Id.* at 636.  To prove discriminatory effect, the plaintiff must show that (1) she is a member of a protected class, (2) she is otherwise similarly situated to members of the unprotected class, and (3) she was treated differently from members of the unprotected class.  *Id.* At this point, however, Caloca need not prove either discriminatory effect or intent—she need only allege facts sufficient to state a plausible claim to relief, and to do so, she is not required to specifically identify similarly situated individuals.  *See, e.g.*, *Wileman v. Sch. Dist. of Janesville*, No. 17-CV-531-JDP, 2018 WL 1401261, at *3-4 (W.D. Wis. Mar. 19, 2018); *Better Broadview Party v. Walters*, 159 F. Supp. 3d 885, 895 (N.D. Ill. 2016); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 755 (N.D. Ill. 2015); *see also Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (a plaintiff need not "include allegations—such as the existence of a similarly situated comparator—that would establish a prima facie case of discrimination" under Title VII to survive a motion to dismiss).

---

[8] Dart also argues for dismissal on the grounds that (1) complaints about the CCSO's ineffectiveness in addressing the detainees' sexually abusive behavior cannot form the basis for an equal protection claim and (2) there is an obvious alternative explanation for his actions ("good faith but less-than-completely-successful efforts to curb detainee exposure" and "lack of resources").  Dart's Mem. in Supp. of Mot. to Dismiss (*Caloca*) at 7.  The Court rejects those arguments here for the same reasons it rejected them in the *Brown* case above.

Caloca alleges that the CCSO knows or should know that the sexual harassment and assaults taking place in the lockups are "solely attributable to [the victims'] sex" and that men who also work in the lockups, such as male public defenders and correctional officers, are rarely, if ever, subjected to such harassment. 1st Am. Compl. (*Caloca*) ¶ 34. In addition to pointing to the fact that Dart repeatedly discontinued specific practices that were found to be effective deterrents to these forms of sexual harassment, Caloca asserts that the CCSO did not adequately investigate her own assault. Caloca alleges that the CCSO's intentional failure to act to stop these assaults on women working in the lockups "has encouraged the [detainees] to increase their repulsive behavior." *Id.* ¶¶ 22, 28. According to Caloca, the CCSO's policies and practices have thereby "created and perpetuated" the hostile and sexually discriminatory environment in the lockups by signaling to detainees that they may sexually harass and assault the women who work there—including Caloca—with impunity. *Id.* ¶ 32. Although Caloca does not expressly allege that the CCSO treats her similarly-situated male counterparts differently, because women are the only ones targeted by the detainees for sexual harassment, allegations that the CCSO's actions have not only deliberately failed to stop but actually increased such harassment plausibly support an inference of discriminatory effect. Additionally, as was the case in *Brown,* although Caloca does not allege in so many words that the CCSO has acted with a discriminatory purpose, the above-described factual allegations are sufficient to support a plausible inference that the CCSO has intentionally failed to act appropriately to address the detainees' sexual harassment of women working in the lockups because of their sex.

Lastly, Dart contends that Caloca's equal protection claim should be dismissed

because she fails to state a *Monell* claim against the CCSO.  Dart argues, as he did in

the *Brown* case, that Caloca has not plausibly alleged that any CCSO policy, practice,

or custom was the "moving force" behind the equal protection violation alleged.  But

Caloca has alleged that the CCSO's policies and practices—including the decisions to

discontinue apparently effective methods of deterring sexual harassment—have

violated her equal protection right to be free from sexual harassment by "creat[ing] and

perpetuat[ing] [a] hostile and scary environment" in which detainees believe that they

may sexually harass women with impunity.  *Id.* ¶ 32.  Because that is enough to

plausibly allege that the CCSO's policies and practices were the moving force behind

the equal protection violation alleged by Caloca, the Court denies Dart's motion to

dismiss her equal protection claim.

### b.    ICRA claim (count 2)

Dart has also moved to dismiss Caloca's ICRA claim on several grounds.  First,

Dart contends that Caloca's claim is barred by the Tort Immunity Act's one-year statute

of limitations on civil actions brought against a local entity or its employees.  745 ILCS

10/8-101(a).  But ICRA—which, as previously noted, was enacted more recently than

the Tort Immunity Act—expressly imposes a *two*-year statute of limitations on suits

against a unit of state, county, or local government for a violation of the Act.  740 ILCS

23/5(b) ("Any party aggrieved by conduct that violates subsection (a) may bring a civil

lawsuit . . . against the offending unit of government. . . . This lawsuit must be brought

not later than 2 years after the violation of subsection (a).").  Even if the Court assumes

that the Tort Immunity Act does apply to claims brought under ICRA—a proposition the

Court seriously doubts for the reasons explained earlier—the legislature's clearly

expressed intent to provide a two-year statute of limitations for suits brought under ICRA takes precedence over the Tort Immunity Act's more general one-year statute of limitations. *See Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346, 898 N.E.2d 631, 644 (2008) ("When a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern. . . . We will also presume that the legislature intended the more recent provision to control."). Because there is no question that Caloca's alleged injuries occurred within the two-year period before she filed this lawsuit, the Court overrules Dart's statute of limitations argument.

Dart also contends that even if Caloca's claim is timely, it is barred by sections 2-201, 2-204, and 4-102 of the Tort Immunity Act (Caloca does not seek declaratory or injunctive relief under ICRA). As previously explained, section 2-201 of the Tort Immunity Act provides immunity to certain public employees for injuries resulting from discretionary decisions that involve a determination of policy. 745 ILCS 10/2-201. Under section 2-204, "[e]xcept as otherwise provided by statute, a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person." *Id.* § 2-204. And under section 4-102, "[n]either a local public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide adequate police protection or service." *Id.* § 4-102.

Even if the Tort Immunity Act applies to ICRA claims—which, again, this Court doubts—all three of these arguments lack merit. First, section 4-102, which pertains to a failure to provide adequate police protection, is not relevant here; although Caloca's

complaint could certainly be clearer on this point, the ICRA violation she asserts encompasses not only the CCSO's failure to prevent a specific act of private violence against her, but also its intentional failure to take sufficient action to remedy the hostile and discriminatory environment within the lockups. *See* 1st Am. Compl. (*Caloca*) ¶ 41 (re-alleging and incorporating by reference all foregoing allegations); *id.* ¶ 32 (Dart's policies and practices have created and perpetuated a hostile environment by leading detainees to believe they may sexually harass and assault women such as Caloca with impunity).

Dart's section 2-204 argument likewise fails because Caloca does not seek to hold Dart or the CCSO liable for an injury caused by another person. As the Court understands it, the underlying injury claimed by Caloca is not the November 2016 assault in and of itself but instead the CCSO's creation of an environment in which sexual harassment and assaults happen with disturbing regularity. The injury Caloca alleges is that the CCSO's own policies and practices have deprived her of her right to a nondiscriminatory, harassment-free workplace.

The Court also overrules the argument that Caloca's claim is barred by section 2-201 because, as was the case in *Brown*, Caloca has alleged that several different policies and practices implemented by the CCSO are relevant to her ICRA discrimination claim. Dart's broad assertion that the implementation of the relevant policies and practices involved the exercise of discretion and the determination of policy because he had to weigh the competing interests of the detainees and women like Caloca on a limited budget is insufficient to prove that immunity is warranted at this stage in the proceedings.

Finally, Dart contends that even if the CCSO is not immune from Caloca's claim for damages pursuant to the Tort Immunity Act, Caloca nonetheless fails to state a disparate impact claim under ICRA because she has not alleged facts or produced statistics demonstrating that the CCSO's policies and practices have had a disproportionately negative impact on women working in the lockups. To the contrary, Caloca has alleged that women are disproportionately—indeed, solely—affected by the CCSO policies and practices that have allegedly encouraged detainees to continue and even increase their sexually harassing and repulsive behavior. *See id.* ¶¶ 22, 23.h, 32-34. That is more than enough to state a plausible disparate impact claim. The Court therefore denies Dart's motion to dismiss Caloca's ICRA claim against the Cook County Sheriff's Office.[9]

### 2. Cook County's motion to dismiss

#### a. Section 1983 equal protection claim (count 1)

Cook County has moved for dismissal of Caloca's equal protection claim against it on the ground that the County has no authority to establish policies governing the courthouse lockups and cannot be held liable for actions taken by the CCSO. Caloca concedes in her response that she cannot bring an equal protection claim against the County. Based on this concession, the Court grants Cook County's motion to dismiss Caloca's equal protection claim.

#### b. Claim for indemnification (count 3)

Cook County has also moved to dismiss Caloca's claim for indemnification,

---

[9] On page 15 of her response to Dart's motion to dismiss, Caloca requests leave to add Cook County as a defendant with respect to the ICRA claim. If Caloca wishes to amend her complaint, she may file a separate motion for leave to amend.

arguing that although the County would be required to indemnify the CCSO in the event that a judgment were entered against it, Caloca does not state a viable claim against the CCSO. In light of this Court's conclusion that Caloca has stated a plausible claim against the CCSO, the County's motion to deny Caloca's indemnification claim is denied.

## Conclusion

For the foregoing reasons, the Court denies Dart's and Campanelli's motions to dismiss the *Brown* plaintiffs' first amended complaint [No. 17 C 8085, dkt. nos. 90 and 101]; denies the CCSO's motion to partially dismiss the *Howard* plaintiffs' first consolidated complaint [No. 17 C 8146, dkt. no. 75]; grants Cook County's motion to dismiss the *Howard* plaintiffs' Title VII claim (count 1) but otherwise denies the motion [No. 17 C 8146, dkt. no. 73]; grants Dart's request to strike Caloca's claims against Dart (as duplicative of the claims against the CCSO) and to strike her request for punitive damages but denies the motion to dismiss the equal protection and ICRA claims against the CCSO [No. 17 C 9056, dkt. no. 31]; and grants Cook County's motion to dismiss with respect to Caloca's equal protection claim (count 1) but denies it with respect to the indemnification claim [No. 17 C 9056, dkt. no. 29].

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  June 26, 2018