**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM, JULIE HULL, ROCIO ARMENDARIZ, BRETT GALLAGHER, RACHELLE HATCHER, KYAN KEENAN, TAKENYA NIXON, CARLY PATZKE, STEPHANIE SCHLEGEL, ASHLEY SHAMBLEY, CORYN STEINFELD, NIYATI THAKUR, JULIE WILLIS, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 17-cv-8085  Judge Matthew Kennelly  Magistrate Judge Daniel Martin |
| Plaintiffs, | ) ) | |
| COOK COUNTY; AMY CAMPANELLI, in her official capacity as Public Defender of Cook County; and THOMAS DART, in his official capacity as Sheriff of Cook County, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## COOK COUNTY SHERIFF'S OFFICE'S ANSWER AND AFFIRMATIVE AND OTHER DEFENSES TO FIRST AMENDED COMPLAINT

Defendant COOK COUNTY SHERIFF'S OFFICE ("CCSO"), by and through its undersigned counsel, for its Answer and Affirmative and Other Defenses to Plaintiffs' First Amended Complaint, states as follows. The CCSO denies each and every allegation in the First Amended Complaint except as expressly admitted herein. The CCSO has answered the allegations in the First Amended Complaint on its own behalf, and its answers are limited to its knowledge and information alone. To the extent that any allegations in this First Amended Complaint are directed or relate to "Defendants" or to defendants Cook County or Amy Campanelli, in her official capacity as Public Defender of Cook County, the CCSO lacks knowledge or information sufficient to answer allegations on their behalf.

## Nature of the Action

1.      Plaintiff class representatives Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, and Julie Hull, along with plaintiff class members Rocio Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan, Takenya Nixon, Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati Thakur, and Julie Willis bring this class action lawsuit against Defendants for causing female Assistant Public Defenders ("APDs") and female law clerks in the Law Office of the Cook County Public Defender to suffer a continuing severe and/or pervasive hostile work environment on the basis of sex in violation of their right of equal protection under the Fourteenth Amendment to the Constitution of the United States, under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1983 and § 1988, and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., [1] and the Illinois Civil Rights Act, 740 ILCS 23/1 *et seq.*

**ANSWER:**    The CCSO admits that Plaintiffs purport to bring this action pursuant to 42 U.S.C. § 1983, Title VII and the Illinois Civil Rights Act ("ICRA").  The CCSO denies violating Plaintiffs' or any putative class members' rights as alleged.

2.      As set forth herein, Defendants have knowingly created and fostered an environment in Cook County courtroom lockups[2] and the Cook County jails whereby male detainees, in a coordinated and organized fashion, have exposed themselves and masturbated to female APDs and law clerks with virtual impunity for at least the last two years.

**ANSWER:**    The CCSO admits that, as alleged in footnote 2, lockups are holding areas in each of the courthouses where detainees wait for court proceedings and where attorneys, including APDs and law clerks, meet and confer with their clients on court dates, but denies the remaining allegations of Paragraph 2.

3.      This conduct is solely directed toward female employees and because of their sex.

**ANSWER:**    Denied.

---

[1] Plaintiffs' Title VII claims are added to apprise the court and the parties of the claims. Right to Sue letters have been requested, but not yet received from the EEOC.

[2] The CCDOC lockups are holding areas in each of the courthouses where detainees wait for court proceedings and where attorneys, including APDs and law clerks, meet and confer with their clients on court dates.

4.     Hundreds of masturbation incidents have been committed against female APDs.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 4.

5.     Plaintiffs do not seek to impose strict liability on any Defendant for detainees' sexual misconduct. Rather, they seek to impose liability for the actions, policies, and deliberate indifference of Defendants, individually and in concert, that have encouraged an environment to flourish whereby male detainees brazenly and routinely engage in indecent exposure of genitals, public masturbation, sexual comments and threats toward female APDs with impunity.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief regarding what Plaintiffs "seek to impose," and denies the remaining allegations of

Paragraph 5.

6.     Defendants have knowingly implemented numerous official and *de facto* policies which caused the frequency and severity of these assaults to increase to the point where, prior to the filing of this lawsuit, they were a daily occurrence, including but not limited to the following:

A.     Sheriff Dart instated a "pizza" reward program, which incentivized

detainees to masturbate at or on female APDs;

B.     the Sheriff's Office routinely escorted detainees who were repeat-

offenders to lock-up with other detainees without safeguards or restraints knowing

that these inmates were likely to masturbate toward female APDs;

C.     the Sherriff's Office withdrew officers from the lockup and/or jail

knowing that this action would directly cause masturbation incidents to occur;

D.     Public Defender Amy Campanelli's office successfully pressured Dart to

stop handcuffing detainees (despite knowing that her actions would directly cause

masturbation, indecent exposure and even assaults on female APDs); and,

E.     Public Defender Amy Campanelli's office fostered a climate in the office

which discouraged and/or shamed female APDs from filing criminal charges

against offenders, in derogation of the County's stated non-discrimination policy

which expressly prohibits sexual misconduct by third parties in the workplace and retaliation.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the allegations in Subparagraphs 6.D and E. that relate to actions taken by or knowledge of Public Defender Amy Campanelli's Office. The CCSO denies the remaining allegations of Paragraph 6, including the remaining allegations in each and every Subparagraph.

7. Through these unlawful policies and widespread practices, described more fully below, Defendants sent a clear message to the detainees that they were free to commit masturbation incidents against female APDs with virtual impunity. In stark contrast, Defendants acted quickly and decisively in response to an incident in December 2014 in which a male APD was physically assaulted by a detainee. Attacks on male APDs are far rarer, in part due to the concerted actions of the Defendants to deter such conduct.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the December 2014 incident involving a male APD being physically assaulted by a detainee to which Plaintiffs refer and therefore it denies the allegations related to same. The CCSO also denies the remaining allegations of Paragraph 7.

8. Public Defenders, including Plaintiffs and the class, defend the legal rights of detainees who do not have access to private attorneys. Law clerks are students, many of whom are allowed to practice law in a limited capacity and under the supervision of a licensed attorney, and assist APDs with cases.

**ANSWER:** The CCSO admits that Plaintiffs and other APDs represent criminal defendants. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 8.

9. Plaintiffs and the APDs represent some of society's most vulnerable members and they work often with very few resources. The work is grueling and their caseloads are heavy, but they are almost uniformly driven by their love of the important work they do. However, as a result of a toxic work environment caused and perpetuated by Defendants in concert, they are

forced to regularly endure heinous sexual misconduct, robbing many of their love of the job, for some permanently.

     **ANSWER:**   The CCSO denies that it has caused or perpetuated a toxic work environment for Plaintiffs and APDs more generally, that is caused Plaintiffs and APDs any damages whatsoever and that Plaintiffs and APDs more generally are forced to regularly endure heinous sexual misconduct by detainees in its custody. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 9.

     10.   As a result of Defendants' actions, female APDs and law clerks have suffered and continue to suffer significant damages, including but not limited to severe emotional distress and trauma, both emotional and physical.

     **ANSWER:**   Denied.

     11.   On November 28, 2017, as a result of this lawsuit this Court entered an Agreed Preliminary Injunction and Temporary Restraining Order. Defendants have yet to implement any long-term or permanent solutions and female APDs continue to be prejudiced and suffer hardship in performing the essential functions of their jobs.

     **ANSWER:**   The CCSO admits that on November 28, 2017, the Court entered an agreed Preliminary Injunction Order in this case.  The CCSO denies the remaining allegations of Paragraph 11.

### Jurisdiction and Venue

     12.   This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343. The Court has supplemental jurisdiction over Counts III and IV which arise under Illinois law pursuant to 28 U.S.C. §1367(a).

     **ANSWER:**   The CCSO admits that jurisdiction is proper. Answering further, the CCSO denies that it engaged in any unlawful conduct or that it has any liability to Plaintiffs.

13.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because Defendants reside in this District and the events giving rise to this suit occurred therein.

**ANSWER:**     The CCSO admits that venue is proper, but denies that the events giving rise to this action occurred as alleged.  Answering further, the CCSO denies that it engaged in any unlawful conduct or that it has any liability to Plaintiffs.

## The Parties

14.     Plaintiffs are female attorneys who are currently employed as APDs by Defendants County of Cook and the Law Office of the Cook County Public Defender (hereafter, "the County" and the "CCPD," respectively). They were hired on or about the dates noted:  Ms. Brown - May 2013; Ms. Crayton - June 2010; Ms. Addyman - 2010; Ms. Knierim - February 2010; Ms. Slonim - February 2010; Ms. Hull - August 1986; Ms. Armendariz - August 2010; Ms. Gallagher - August 2012; Ms. Hatcher - May 2013; Ms. Keenan - July 2003; Ms. Nixon - February 2006; Ms. Patzke - October 2004; Stephanie Schlegel - 1998; Ashley Shambley - 1998, Coryn Steinfeld - February 2010, Niyati Thakur - March 2010, and Julie Willis - April 1995.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 14.

15.     Defendant Cook County is a municipality organized under the laws of the State of Illinois. 55 ILCS 5/1-1001 *et seq*. The President of the County Board of Commissions has authority to remove the Public Defender, for good cause. 55 ILCS 5/3-4000.2.

**ANSWER:**     The CCSO admits that Defendant Cook County is a municipality organized under the laws of the State of Illinois. 55 ILCS 5/1-1001 *et seq*.   The CCSO denies the remaining allegations of Paragraph 15.

16.     The County is responsible for construction and physical maintenance of properties it owns, including *inter alia*, the Cook County Jail and the Leighton Criminal Courts Building.

**ANSWER:**     Admitted.

17.     The County sets the budget for the Sheriff and Public Defender's offices. APDs are paid by the County, and the County Board President (Toni Preckwinkle) is the signatory to the collective bargaining agreement which governs terms and conditions of APDs' employment. The County maintains an Equal Employment Opportunity Office which purports to have

responsibility for preventing and investigating discrimination within Offices of the County, including the Public Defender's Office.

**ANSWER:** The CCSO admits that the County sets the budget for the Sheriff and Public Defender's offices, that APDs are paid by the County, and that County Board President Toni Preckwinkle is the signatory to the collective bargaining agreement which governs terms and conditions of APDs' employment. The CCSO further admits that the County maintains an Equal Employment Opportunity Office which has responsibility for preventing and investigating discrimination within Offices of the County, including the Public Defender's Office. The CCSO denies the remaining allegations in Paragraph 17.

18. The CCPD is an agency within the County and provides legal representation to indigent persons in criminal and related proceedings and is organized under the laws of Illinois, 55 ILCS 5/3-4000 *et seq*.

**ANSWER:** The CCSO denies that the CCPD is an agency within the County. The CCSO admits the remaining allegations of Paragraph 18.

19. Defendant Amy Campanelli ("Campanelli") is the Cook County Public Defender. She was appointed to this office by the Cook County Board of Directors and its President in or about March 2015 pursuant to the laws of Illinois, 55 ILCS 5/3-4004.1. Defendant Campanelli's actions complained of herein were taken under color of state law and were related to the performance of the duties of her office. She is sued in her official capacity.

**ANSWER:** The CCSO admits that Amy Campanelli is the Cook County Public Defender, she was appointed by the Cook County Board of Directors and its President pursuant to the laws of Illinois (*to wit* 55 ILCS 5/3-4004.1) and that Plaintiffs have sued her in her official capacity. The CCSO lacks knowledge and information sufficient to form a belief about whether Defendant Campanelli engaged in the actions alleged herein. In answering further, the CCSO

denies that Defendant Campanelli was appointed in March 2015 and further denies that it engaged in any unlawful conduct or that it has any liability to Plaintiffs.

20.    Defendant Campanelli is a policy maker for the Cook County Public Defender's Office and has final policy making authority for the Cook County Public Defender's Office with regard to her acts and conduct alleged herein.

**ANSWER:**    The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations alleged in Paragraph 20. In answering further, the CCSO denies that it engaged in any unlawful conduct or that it has any liability to Plaintiffs.

21.    The Cook County Sheriff's Office is organized under the laws of Illinois pursuant to 55 ILCS 5/3-6001 et seq. Defendant Thomas Dart is the Sheriff of Cook County having been elected in 2006. The Sheriff has authority and responsibility over the custody and care of the jails and courthouses in Cook County pursuant to 55 ILCS 5/3-6017.

**ANSWER:**    The CCSO admits that it, not Thomas Dart personally, is responsible for the custody and care of the Cook County courthouses and jail, pursuant to 55 ILCS 5/3-6017. The CCSO admits the remaining allegations of Paragraph 21.

22.    Defendant Dart and his deputy sheriffs assigned to the Courtroom Services Division are responsible for all aspects of court security, which includes "inmate control." See Exhibit E; http://www.cookcountysheriff.org/courtservices/ CourtroomServices.html.

**ANSWER:**    The CCSO lacks knowledge or information sufficient to form a belief as to what Plaintiffs means by "all aspects" of court security or "inmate control" and therefore denies the allegations in Paragraph 22.

23.    At all times relevant to this complaint, Defendant Dart's actions complained of herein were taken under color of state law and were related to the performance of the duties of his office. He is sued in his official capacity.

**ANSWER:**    The CCSO admits that Sheriff Dart is sued in his official capacity. The CCSO lacks knowledge sufficient to admit or deny whether it or its unidentified employees or agents have acted under color of state law while performing unspecified acts at unspecified times and on that basis denies the remaining allegations in Paragraph 23.

24.    Defendant Dart is a policy maker for the Sheriff's Office and has final policy making authority for the Sheriff's Office with regard to his acts and conduct alleged herein.

**ANSWER:**    The CCSO admits that Sheriff Dart is a policymaker for the CCSO and is one of the individuals who has final policymaking authority for the CCSO.  The CCSO denies that any of the "acts and conduct alleged herein" occurred, and further denies that Sheriff Dart individually or the CCSO engaged in any unlawful conduct or that they have any liability to Plaintiffs.

**Relevant Facts**

25.    CCPD currently employs over 400 public defenders, of which over 60% are female. See https://www.cookcountyil.gov/service/employment-public-defender

**ANSWER:**    The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 25.

26.    APDs provide legal services to, *inter alia*, detainees in Cook County jails throughout Cook County and in the Cook County Department of Corrections ("CCDOC") lockups at courthouses within the Circuit Court of Cook County, including in the Leighton Criminal Courts Building ("Leighton") located at 26th Street and California Avenue, and at the Cook County Jail.

**ANSWER:**    Admitted.

27.    During the last two years, the named Plaintiffs and other similarly situated female APDs and law clerks have been repeatedly and increasingly subjected to incidents of indecent exposure, masturbation, assault and battery. Divisions 9 and 10 of the Cook County Jail are maximum security and super max facilities. Almost all female detainees and law clerks who visit their clients in lockup or Divisions 9 and 10 have been subjected to male detainees regularly exposing their penises, and attempts and threats of assault.

**ANSWER:**    The CCSO admits that Divisions 9 and 10 of the Cook County Jail are maximum security facilities.  The CCSO denies that Divisions 9 and 10 of the Cook County Jail are "super max facilities," and further denies that almost all female detainees and law clerks who visit their clients in lockup or Divisions 9 and 10 have been subjected to male detainees regularly exposing their penises, and attempts and threats of assault.  The CCSO lacks knowledge

or information sufficient to form a belief regarding the truth of the remaining allegations of

Paragraph 27.

28.     Prior to the filing of this lawsuit, these incidents occurred on a daily basis, were often perpetrated by repeat offenders, and some female APDs were subjected to multiple incidents, by multiple detainees on the same day.

    **ANSWER:**     The CCSO admits that some detainees in its custody who have

engaged in incidents of indecent exposure and masturbation are repeat offenders of this conduct.

The CCSO lacks knowledge or information as to whether, prior to the filing of this lawsuit, some

female APDs have experienced multiple incidents of indecent exposure and masturbation by

multiple detainees on the same day. The CCSO denies the remaining allegations of Paragraph 28.

29.     As set forth below, female APDs and law clerks have also suffered physical touching by detainees, who have grabbed female APDs by the legs and/or buttocks.

    **ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 29.

30.     On at least one occasion, a detainee masturbated and emitted bodily fluids on a female APD. These incidents have been discussed among staff in the Public Defender's office.

    **ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 30.

**Courtroom Lockups**

31.     The CCDOC lockups are holding areas in each of the courthouses where detainees and pre-trial detainees wait for court proceedings and where APDs and law clerks meet their clients at the courthouses.

    **ANSWER:**     Admitted.

32.     Campanelli's office assigns APDs and law clerks to specific courtrooms, and requires them to meet with their clients in the Cook County Jail, including clients housed in Division 9 or 10, which are considered maximum security and super max facilities.

    **ANSWER:**     The CCSO denies that Divisions 9 and 10 of the Cook County Jail

are considered "super max facilitates." The CCSO admits that Divisions 9 and 10 of the Cook

County Jail are considered maximum security facilities. The CCSO lacks knowledge or

information sufficient to form a belief about the truth of the remaining allegations of Paragraph

32.

33.     Many of the clients represented by APDs and law clerks are in custody. As a
result, visiting pre-trial detainees in the courthouse lockups and jail is an essential job
requirement. Defendants have provided no other place for APDs and law clerks to meet face-to-
face with their clients except the designated areas in the courthouse lockup or jail where the
sexual assaults and masturbation incidents regularly occurred. Defendants have required APDs to
meet with their clients in view of groups of detainees, knowing that APDs would be subjected to
masturbation incidents.

        **ANSWER:**     The CCSO admits that many of the clients represented by APDs

and law clerks are in custody, but denies the remaining allegations of Paragraph 33.

34.     It is necessary for APDs to meet with and to have confidential conversations with
their clients face-to-face during the course of their representation, including to review and
discuss discovery, evidence, plea offers and strategy. Female APDs and law clerks visit clients at
the jail and/or courthouse lockup on a weekly basis and sometimes daily.

        **ANSWER:**     The CCSO admits that female APDs and law clerks visit clients at

the jail and/or courthouse lockup, but is without knowledge or information sufficient to admit or

deny the allegations concerning the frequency and reasons for such visits. The CCSO denies the

remaining allegations of Paragraph 34.

35.     When female APDs or law clerks visit male clients in lockup, as many as twenty
or more male detainees may be detained in the same holding area with them. During these visits,
APDs and law clerks attempt to speak quietly and confidentially with their clients through the
bars, window and/or door, while other detainees are generally sitting or standing in the
background.

        **ANSWER:**     The CCSO denies that when female APDs or law clerks visit male

clients in lockup, as many as twenty or more male detainees may be detained in the same holding

area with them. The CCSO lacks knowledge or information sufficient to form a belief about the

truth of the remaining allegations of Paragraph 35.

36.     While a female APD or law clerk is conversing with her client, another detainee
would frequently walk behind the client in full view of the female APD or law clerk and expose

himself and/or masturbate, including with his penis fully exposed, while staring threateningly at the female APD or law clerk.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 36.

37.     There is also an Illinois Department of Corrections ("IDOC") lockup facility in Leighton's basement. APDs are allowed to visit IDOC detainees in the basement lockup but are not similarly subjected to sexual harassment because those detainees are shackled and/or handcuffed, unlike in the CCDOC section of the lockup at Leighton.

**ANSWER:**     The CCSO admits that APDs are allowed to visit IDOC detainees in

the basement of Leighton Courthouse.  The CCSO denies the remaining allegations of Paragraph

37.

### Divisions 9 and 10 of the Cook County Jail

38.     Masturbation and indecent exposure incidents have also occurred with great frequency in the Cook County Jail, in particular in Divisions 9 and 10, which are maximum security divisions where thousands of male detainees are housed. All of these detainees have been classified as requiring "super-max" and maximum security facilities.

**ANSWER:**     The CCSO admits that Divisions 9 and 10 of the Cook County Jail a/k/a

Cook County Department of Corrections ("CCDOC") are maximum security divisions where up

to 1,824 male detainees may be housed. The CCSO further admits that all of these detainees housed

in Divisions 9 and 10 of the CCDOC have been classified as requiring maximum security facilities.

The CCSO also admits that masturbation and indecent exposure incidents have occurred in the

CCDOC and that masturbation and indecent exposure incidents occur with greater frequency in

Divisions 9 and 10 of the CCDOC.  The CCSO denies the remaining allegations of Paragraph 38.

39.     When female APDs or law clerks visit a client in Division 9 they are required to walk through the facility unescorted, and go directly to the tiers where the detainees are housed. They meet with their clients inside of a room on the tier that has a large window in both the wall and adjacent door. There is also a large window in the wall and adjacent door to the individual

tiers/housing units where detainees are housed and within view of, the room where APDs and/or law clerks meet with their clients.

      **ANSWER:**   The CCSO denies the allegations contained in the first sentence of

Paragraph 39.   The CCSO lacks knowledge or information sufficient to form a belief about the

truth of the remaining generalized allegations contained in Paragraph 39.

    40.    On the other side of a narrow hallway, and slightly elevated, is a room that is staffed by at least one Cook County Sheriff's Correctional Officer. From this location, the Cook County Sheriff Correctional Officer has a clear view of both the detainees in the housing units and the attorney-client consultation room.

      **ANSWER:**   The CCSO admits that its correctional officers have a clear view of

detainees when they meet with their attorneys in Division 9 of the CCDOC.  The CCSO lacks

knowledge or information sufficient to form a belief about the truth of the remaining generalized

allegations contained in Paragraph 40.

    41.    Other detainees in the surrounding hallways and housing units can see the attorneys as they enter the room in Division 9, and can see into the room while the attorney is meeting with the client just as APDs and law clerks can see the detainees outside the room. Detainees would often crowd around the glass and expose themselves and/or masturbate through the windows while staring lewdly and aggressively at female APDs and law clerks as they attempted to discuss legal matters with their clients.

      **ANSWER:**   The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the generalized allegations contained in Paragraph 41.

    42.    When female APDs or law clerks visit clients in Division 10 of the Cook County Jail, they are locked in a room with their clients sitting directly next to them in close proximity. The room is surrounded by Plexiglas and is commonly referred to as a fish bowl.

      **ANSWER:**   The CCSO denies the generalized allegations contained in

Paragraph 42.

    43.    The Sheriff has given Detainees housed in Division 10 free rein to move thru the corridor directly next to the room where the attorney-client consultations occur. On the other side

of this corridor is a sheriff's station that is manned by at least one Cook County Sheriff's Correctional Officer.

        **ANSWER:**    The CCSO denies the generalized allegations contained in Paragraph 42.

        44.     Other detainees can see into the room where the attorneys or law clerks are meeting with their clients, just as APDs and law clerks can see the detainees. The Cook County Sheriff's officer also has a clear view of both the detainees in the housing units and the attorney-client consultation room.

        **ANSWER:**    The CCSO admits that its correctional officers have a clear view of detainees when they meet with their attorneys in Division 10 of the CCDOC. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining generalized allegations contained in Paragraph 44.

        45.     Detainees also congregate around the glass to their housing unit and expose/masturbate at the female APD and law clerks while staring at them in a lewd and threatening manner.

        **ANSWER:**    Denied.

        46.     Because the rooms in Division 10 are locked, APDs and law clerks cannot leave the room until a Sheriff unlocks the door, removes the client, and then unlocks a separate door to allow the attorney to exit. Each of these processes often takes several minutes.

        **ANSWER:**    The CCSO admits that visitation areas next to the tiers in Division 10 are locked and that if APDs and law clerks are in these visitation areas they cannot leave until a correctional officer unlocks the door and lets them out. The CCSO denies the remaining generalized allegations contained in Paragraph 46.

        **The Named Plaintiffs Have Suffered Repeated Incidents of Assault**

        47.     Ms. Brown has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. As just one example, in approximately January 2017, a detainee exposed himself and masturbated to Ms. Brown on two separate occasions in the same day. That detainee was removed from lockup only to be followed by a

second detainee who exposed himself to Ms. Brown, later that day in the same lockup. See Exhibit A, Brown EEOC Class Charges.

> **ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47.

48.     Ms. Crayton has been subjected to numerous incidents of indecent exposure, assault, and masturbation during the last two years. There have been weeks when Ms. Crayton experienced a detainee exposure or masturbation incident every day. As just one example, on or about October 3, 2017, Ms. Crayton was speaking with a client in lockup and another detainee exposed his penis and masturbated while standing behind him in Ms. Crayton's line of sight. Ms. Crayton told him to stop and walked out of the lockup. When she returned in a second attempt to meet with her client, the same detainee began masturbating at her again. Ms. Crayton again told him to stop, and he threatened her, calling her by name. The sheriff on duty told Ms. Crayton that she should leave the lockup.

> **ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 48.

49.     Ms. Slonim has been subjected to numerous incidents of indecent exposure, assault and masturbation during the last two years, and during her time as a law clerk with the CCPD. As an example, in approximately August 2016, a detainee exposed himself and masturbated to her while in the lockup. She subsequently pressed criminal charges against the detainee. Defendants permitted her to be in the same lockup with that detainee three to four more times and as she attempted to do her job. On each such occasion the detainee yelled profanities and threats, including that he was going to 'beat the shit out of' her and 'motherfucking kill' her. On October 30, 2017, another detainee masturbated at Ms. Slonim with his penis out while she was visiting a client in lockup. Ms. Slonim had just suffered a similar incident on October 19, 2017. Both of these assaults were committed by detainees who were known offenders with prior indecent exposure charges against them.

> **ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49.

50.     Detainees with criminal charges pending against them relating to prior incidents of exposure and/or masturbation should have been subjected to additional restrictions while in lockup such as special jumpsuits that restrict access to their genitals or handcuffs. Defendants chose not to take any precautions to protect Ms. Slonim or the plaintiffs and the class from these detainees, despite their prior records.

> **ANSWER:** The CCSO denies the allegations of Paragraph 50, except to admit that it has placed detainees who have pending administrative and criminal charges related to

incidents of indecent exposure and/or masturbation while in the CCSO's custody in uniforms that

are specially modified to restrict access to their genitals and in handcuffs behind their backs during

transport, amongst other restrictions.

51.     Ms. Hull has been subjected to numerous incidents of detainee assaults, and in recent months has been subjected to detainees masturbating sometimes on a weekly basis. As just one example, in or about October 2017, a detainee walked behind her client while she was talking with him and began masturbating at her. She was advised by his attorney that he had done this to another female earlier in the same day.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 51.

52.     Ms. Knierim has been subjected to numerous incidents of detainee assaults. At times during the last two years she has suffered two to three incidents per week. On one occasion she asked the Sheriff to say something to the detainees and he said: there was nothing he could do about it; that she could file a charge but nothing would happen; at the end of the day it is not going to stop; and she should just do her job.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about whether Ms. Knierim has been the subject of the detainee conduct alleged in Paragraph

52.  To the extent the remaining allegations in Paragraph 52 refer to Sheriff Dart, the CCSO denies

them.  To the extent the remaining allegations in Paragraph 52 refer to an unidentified deputy

sheriff, the CCSO lacks knowledge or information sufficient to form a belief about the truth of the

remaining allegations.

53.     Ms. Addyman has been subjected to numerous incidents of detainee assaults. On six occasions between January 2016 and the present, detainees stood behind her client and masturbated while she was speaking with him. On at least six more occasions during the last two years she walked out of lock-up when she saw a detainee move behind her client into 'position' to masturbate at her.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 53.

54.     Mr. Armendariz, Ms. Gallagher, Ms. Hatcher, Ms. Keenan, Ms. Nixon, Ms. Patzke, Ms. Schlegel, Ms. Shambley, Ms. Steinfeld, Ms. Thakur, and Ms. Willis have been

similarly subjected to numerous masturbation incidents and threats by detainees within the last two years.

> **ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54.

## The Assaults Are Organized and Coordinated

55. A group of detainees calling themselves "Savage Life" has been key in organizing and directing these sexual assaults. This group views assaults on female APDs and law clerks as part of a game. The group awards "points" to reward individual detainees for each incident of assault or masturbation, depending on the severity of the incident and the female attorney who is targeted. As a result, many of the detainees who commit these acts are repeat offenders.

> **ANSWER:** The CCSO admits that some detainees in its custody who have engaged in incidents of indecent exposure and masturbation are repeat offenders of this conduct. The CCSO further admits, upon information and belief, that a group of detainees calling themselves "Savage Life" previously existed in Cook County Jail. The CCSO is without sufficient knowledge and information to form a belief as to whether members of "Savage Life" have attempted to organize incidents of detainee indecent exposure and masturbation, whether this group viewed incidents of detainee indecent exposure and masturbation as part of a game, and whether the group awarded "points" to reward individual detainees for incidents of indecent exposure and masturbation. The CCSO denies the remaining allegations of Paragraph 55.

56. On January 31, 2016, the Chicago Sun Times reported that detainees in the Cook County Jail formed the group calling itself "Savage Life" in the summer of 2015, and that members of the group "expose themselves and masturbate in the presence of female defense attorneys." The article noted that "the behavior is on the rise." The article further reported that "[t]here have been 219 incidents of detainees exposing themselves or masturbating in public between July 1, 2015, and Jan. 20, 2016" and that some of the detainees were "multiple offenders."

> **ANSWER:** The CCSO admits that on January 31, 2016, the Chicago Sun Times published an article, the content of which speaks for itself, but neither admits nor denies the truth of the statements made in that article.

**The CCPD Maintains a De Facto Policy of Discouraging APDs from Filing Charges**

57.      Some female APDs have filed sexual harassment and masturbation criminal complaints throughout the last two years, which have provided additional notice to Defendants that the practice was severe, pervasive and ongoing. See Exhibit A. Criminal charges have not been filed in connection with the majority of masturbation incidents.

ANSWER:      The CCSO admits that, throughout the last two years, some female

APDs have filed criminal complaints related to incidents of detainee indecent exposure and

masturbation.  The CCSO denies the remaining allegations of Paragraph 57.

58.      The CCPD's office has maintained a *de facto* policy of discouraging APDs and law clerks from pursuing such criminal charges. Due to this *de facto* policy, supervisors and senior APDs have discouraged female APDs and law clerks from filing charges against offenders.

ANSWER:      The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 58.

59.      At least one female APD who filed charges against an offender experienced outright retaliation – CCPD supervisors assigned to numerous Cook County courts bad-mouthed and criticized her for filing charges. This incident was widely-known throughout the CCPD's office and the criminal court system, generally and created a chilling effect.

ANSWER:      The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations in Paragraph 59.

60.      When an APD files a criminal complaint regarding a masturbation incident the offender is charged with misdemeanor public indecency. Misdemeanor criminal complaints have been an ineffective deterrent, as the offending detainees are often facing serious felony charges. The indecency charges are often dropped by the Cook County State's Attorneys, or alternatively, result in a conviction but the offender is awarded "time served," meaning his sentence is not increased. An offender is not at risk for having to register as a sex offender until he has been convicted of indecent exposure three separate times.

ANSWER:      The CCSO denies that an offender is not at risk for having to register as a

sex offender until he has been convicted of indecent exposure three separate times. The CCSO

lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 60..

61.     APDs are regularly left out of the loop with respect to how their criminal charges are being processed, are not advised of court dates, and are given no opportunity to weigh in on whether the case is prosecuted or dismissed. APDs who follow up on the charges they file often encounter rude or dismissive State's Attorneys.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 61.

### In Contrast Defendants Responded Decisively to an Attack on a Male APD

62.     In or about December 2014, a male APD was physically assaulted by a detainee client while meeting with him in Division 9 of the Cook County Jail. Defendants acted immediately and decisively in the wake of this attack. The Sheriff instituted a policy in Division 9 requiring detainees to be handcuffed to a desk or other stationary object when APDs met with clients and prohibited APDs from meeting with clients in rooms in which there was no desk or fixed object suitable for handcuffing.

**ANSWER:**     The CCSO admits an incident occurred during which a male APD was stabbed by a detainee during a client meeting and admits it acts immediately and decisively in the wake of any attacks by detainees. The CCSO also admits that it handcuffs detainees in Division 9 to fixed objects during all meetings with APDs in Division 9. The CCSO denies any remaining or inconsistent allegations.

63.     Additionally, Lester Finkle, Chief of Staff of the Public Defender's office, issued a statement to all APDs in the office which unequivocally pronounced that the CCPD cannot defend a criminal defendant/detainee when the victim of that defendant/detainee is an APD. Ms. Campanelli petitioned the Illinois Supreme Court to grant her motion to withdraw from representing the detainee who assaulted the male APD and appoint other counsel. This stands in contrast to the CCPD's practice of discouraging female APDs from filing charges relating to masturbation incidents.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 63.

64.     Also in contrast, female APDs are regularly assigned and/or pressured to accept cases representing detainees who have sexually harassed and/or assaulted other female APDs.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 64.

### **The County's Stated Policy Regarding Third Party Harassers**

65.     Cook County acknowledges its duty and that of the defendants to prevent sexual harassment by non-employee third parties.

**ANSWER:**     Upon information and belief, admitted.

66.     It maintains a written policy governing sexual harassment by third parties. The policy provides as follows:  "Third party harassment occurs when the harassment is committed by a person or group of people who work outside the control of the employer, such as contractors, clients, customers, vendors and suppliers or some other party which makes frequent visits to the workplace. It is the duty of any employer to provide a place which is safe to work and is free from harassment. Accordingly, this Policy expressly prohibits harassment by third parties in the workplace." https://www.cookcountyil.gov/service/equal-employment-opportunity-office

**ANSWER:**     Upon information and belief, admitted.

67.     The unwritten policy, practice, and custom of Defendants is to deny responsibility for detainee sexual harassment and that detainee sexual harassment is the norm and must be accepted and tolerated by employees and others in County facilities.

**ANSWER:**     The CCSO denies the allegations of Paragraph 67.

68.     APDs have repeatedly notified and/or complained to supervisors and management (including Defendant Campanelli) about incidents of indecent exposure and masturbation, verbally and in writing, on many occasions throughout the last two years.

**ANSWER:**     The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68.

69.     In October 2017, the female APDs learned that, despite their numerous complaints to Defendant Campanelli and CCPD supervisors about the sexual harassment by detainees, no one had ever informed Cook County's EEO officer about the problem, although the

County had been made aware of the incidents, including *inter alia*, by Campanelli herself in a letter dated March 21, 2017.

        **ANSWER:**    The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69.

### Media Coverage and Defendants' Actual Knowledge of the Widespread Problem

70.    Throughout 2016 and continuing through the present, there were numerous other reports in the Chicago-area media (including print, radio, electronic and television media) that further detailed and described the practice of detainees exposing themselves and/or masturbating to female staff including APDs and law clerks in the Cook County lockups and jail. These media reports were widespread and provided additional notice to each and every Defendant regarding the severity and extent of this practice.

        **ANSWER:**    The CCSO admits that from 2016 through the present there have been media reports regarding detainees exposing themselves and/or masturbating to female staff and APDs in the Cook County lockups and jail.  The CCSO lacks knowledge or information sufficient to form a belief as to the accuracy of any of these media reports. Except as specifically admitted, the CCSO denies the remaining allegations of Paragraph 70.

71.    On October 28, 2017, the Chicago Sun Times published another article which stated "Masturbating detainees have become a common sight on the walk to and from holding cells where defense attorneys meet clients, and at the jail and in courthouse lockups." The article reported that 29 criminal charges relating to detainee exposure incidents had been filed by female APDs in 2017, and that Defendant Campanelli admitted it was a daily occurrence and that the behavior by detainees has become "pervasive." The article further reported, "No other jail seems to have the same problem with public indecency on a similar scale to Cook County, according to the state Public Defenders Association and the Illinois Sheriffs' Association."

        **ANSWER:**    The CCSO admits that on October 28, 2017, the Chicago Sun Times published an article, the content of which speaks for itself, but neither admits nor denies the truth of the statements made in that article.

72.    The article reported that Defendant Campanelli had opposed legislation that would upgrade the crime from a misdemeanor to a felony. Defendant Campanelli admitted in the article that none of the corrective measures taken had worked. Nonetheless, she "lauded Dart's efforts to combat the phenomenon," despite the complete inadequacy and half-hearted nature of

those efforts, as set forth above, and despite the fact that other jails do not experience this problem on a similar scale.

   **ANSWER:** The CCSO admits that on October 28, 2017, the Chicago Sun Times published an article, the content of which speaks for itself, but neither admits nor denies the truth of the statements made in that article. Answering further, the CCSO denies that its efforts to combat detainee indecent exposure and masturbation incidents are inadequate or half-hearted, or that other jails do not experience this problem on a similar scale.

73. As a result of the media coverage, the internal complaints, the criminal charges, the ongoing internal discussions about the harassment among and between the defendants and its sheer prevalence and duration, Defendants, and each of them, have had notice that female APDs have been routinely subjected to ongoing incidents of masturbation and exposure by male detainees for more than two years.

   **ANSWER:** The CCSO admits that it is aware that for more than two years male detainees have engaged in incidents of masturbation and exposure directed at certain APDs. Except as specifically admitted, the CCSO denies the remaining allegations of Paragraph 73.

74. Despite having had ample notice of this practice for the last two years, Defendant Campanelli and the other Defendants have knowingly required Plaintiffs and other female APDs to continue to work in this hostile and dangerous environment.

   **ANSWER:** As to the allegations in Paragraph 74 that relate to Defendants Campanelli and Cook County, the CCSO lacks knowledge or information sufficient to form a belief about the truth of these allegations. The CCSO admits that it has had notice of detainee exposure incidents in the past two years, but denies the remaining allegations of Paragraph 74.

75. Defendant Campanelli chose not to issue a clear policy instructing female APDs regarding this practice.

   **ANSWER:** The CCSO lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 75.

76.     Defendant Campanelli disclaimed responsibility for female APDs' safety and has repeatedly stated, including during a meeting with APDs on October 18, 2017, "it is not my responsibility to keep you safe in the lockup and/or jail."

**ANSWER:**     The CCSO lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 76.

77.     As early as October 2015, and on numerous occasions since, the Defendants have jointly met and had discussions acknowledging the increasing incidents of detainee indecent exposure and/or masturbation directed toward female APDs. During these discussions, they acknowledged the practice was severe and pervasive, but chose not to take any effective corrective action to prevent the sexual misconduct and took affirmative action that made the situation worse, as outlined in part below.

**ANSWER:**     The CCSO admits that certain of its representatives have met and had discussions with certain representatives from the Public Defender's Office regarding increasing incidents of detainee exposure and masturbation directed toward female APDs.  The CCSO denies the remaining allegations of Paragraph 77.

**Handcuffing**

78.     In or about early 2017, the Sheriff began handcuffing detainees while they were in the courthouse lockups. This practice lasted for approximately two weeks and resulted in significantly decreased instances of masturbation and exposure at the female APDs in the courtroom lockups. Defendant Campanelli objected, ordered it stopped immediately, without ensuring that another measure was in place to prevent detainee exposures and masturbation, and personally apologized to the detainees for the handcuffing. As a result, the practice was discontinued. Indecent exposure and masturbation by detainees directed at female APDs and law clerks increased after the handcuffing ended as a direct result of Campanelli's actions. Campanelli knew or should have known that removing handcuffs would cause masturbation incidents to increase but nonetheless went to great lengths to stop handcuffing.

**ANSWER:**     The CCSO admits that in January 2016 it began handcuffing all detainees in the courthouse lockups, that it faced opposition for engaging in this practice from the Public Defender's Office and certain of the APDs, and that it subsequently discontinued this practice. The CCSO lacks knowledge or information sufficient to form a belief regarding the allegations contained in the third sentence of Paragraph 78.  Except as specifically admitted, the CCSO denies the remaining allegations of Paragraph 78.

**Jumpsuits**

79.     In early 2017, the Defendant Dart required detainees to wear special jumpsuits to help prevent them from reaching their penises, exposing themselves and masturbating. Dart chose to discontinue this requirement after a small group of detainees burned the jumpsuits using microwave ovens, despite knowing that this action would cause masturbation incidents to increase. Masturbation incidents increased as a result of Dart's decision to discontinue this requirement.

**ANSWER:**     The CCSO admits that in October 2016 it began using modified uniforms that restrict immediate access to the detainee's genitalia.  The CCSO further admits that after these modified uniforms were implemented a small group of detainees burned a small number of the modified uniforms.  The CCSO denies the remaining allegations of Paragraph 79.

**CCSO Removes Officers from Lockup**

80.     In approximately May 2017, Defendant Dart added additional officers to the lockup. The additional officers on duty in the lockup areas significantly decreased the incidences of indecent exposure and masturbation by detainees directed at female APDs and law clerks. Defendant Dart withdrew these additional officers a short time later, claiming lack of funds from Cook County. Dart knew that this action would increase the number of assaults on female APDs, and incidents of assault increased in areas where sheriffs were withdrawn.

**ANSWER:**     The CCSO admits that in February 2017, it placed additional deputies on floors 4 through 7 in the Leighton Criminal Courthouse to provide additional monitoring in the lockups. The CCSO admits that in August 2017, due to Cook County budget constraints, the CCSO was required to reduce overtime costs and discontinued the use of the additional deputies.  Answering further, the CCSO states that since August 2017, it has assigned an additional four to six management level employees to provide additional monitoring in the lockups at the Leighton Criminal Courthouse.  The CCSO lacks knowledge or information sufficient to form a belief about whether "the additional officers on duty in the lockup areas significantly decreased the incidences of indecent exposure and masturbation by detainees directed at female APDs and law clerks." The CCSO denies the remaining allegations of Paragraph 80.

**Pizza Rewards**

81.    At one point, Defendant Dart instituted a program rewarding serial masturbators with pizza. The program gave any detainee reported as having exposed himself or masturbated the opportunity to receive a pizza and/or pizza party if they if they went 30 days without another sexual assault/masturbating incident. Detainees who never exposed themselves or masturbated at female APDs or law clerks were not eligible to receive pizza through this program.

>    **ANSWER:**    Denied.

82.    The Sheriff's rewards for intermittent indecent exposure and/or masturbation led to an increase in exposure incidents as detainees without prior incidents were now incentivized to commit indecent exposure and masturbation in order to qualify for a pizza reward.

>    **ANSWER:**    Denied.

**Campanelli's Deliberate Policy of Inaction and Non-Responsibility for the Safety of Female APDs.**

83.    On October 18, 2017, Defendant Campanelli held a meeting for all APDs working at the criminal courthouse located at 26th Street and California Avenue. During this meeting, Defendant Campanelli recounted an incident where her husband (a private criminal defense attorney) observed an detainee in lockup at the Markham courthouse begin to masturbate and when asked what he was doing, explained that he was "getting ready for his PD" (a female). She distributed a flowchart tracking Defendants' actions and inactions for the past two years.

>    **ANSWER:**    The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 83.

84.    Nevertheless, Defendant Campanelli told the female APDs, that there was nothing she could do to help them and that "it is not my responsibility to keep you safe in the lockup and jail."

>    **ANSWER:**    The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 84.

**Defendant Campanelli's Retaliation**

85.    On October 23, 2017, the Plaintiffs, who are assigned to the Cook County Court located at 26th Street and California Avenue, filed charges of discrimination with the United

States Equal Employment Opportunity Commission ("EEOC"). The charges are currently pending at the EEOC.

**ANSWER:** The CCSO admits that on October 23, 2017 the named Plaintiffs filed charges of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), and that the charges are currently pending at the EEOC. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 85.

86. On October 25, 2017, Plaintiffs, through counsel, advised Defendants of the filing of the charges and the substance and provided a list of actions that could be taken immediately to protect female APDs. See Exhibit B, Oct. 25, 2017 Potter Bolaños Letter

**ANSWER:** The CCSO admits that on October 25, 2017 Plaintiffs' counsel sent the letter attached as Exhibit B to the Complaint to the CCSO, which letter speaks for itself.

87. On October 31, 2017, as a response to the EEOC charges and class counsel's letter, Defendants Campanelli and CCPD issued a directive barring APDs from entering the lockups at Leighton, where the Plaintiffs are assigned. See Exhibit C, CCPD Memo to APDs. Entering lockups at other court locations, including at the Markham courthouse where sexual assaults and masturbating remained unabated, was not prohibited. Campanelli's directive was intended to retaliate against Plaintiffs, to send a message to other APDs and chill participation in the litigation.

**ANSWER:** The CCSO admits that on or about October 31, 2017 the Public Defender's Office issued a directive barring APDs from entering the lockups at Leighton and that entering the lockups at other court locations, including the Markham courthouse, was not prohibited by this directive. The CCSO denies that sexual assaults and masturbation remain unabated at other court locations, including Markham. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 87.

88. Defendant Campanelli had previously promised to wait until November 9, 2017 to decide whether to implement this policy and after consulting with Chief Judge Timothy Evans.

However, when she received notice of Plaintiffs' EEOC charges, she and her office immediately and unilaterally implemented the policy, adversely affecting female APDs. See Exhibit C.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 88.

89. Preventing APDs was retaliatory and ineffective and prevented APDs from meeting with their clients and interfered with their ability to do their jobs.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations of Paragraph 89.

90. Despite Defendant Campanelli's directive, many male APDs continued to go into the lockups to meet with clients because they are not subjected to indecent exposure and masturbation by detainees.

**ANSWER:** The CCSO denies that male APDs are not subject to incidents of indecent exposure and masturbation by detainees. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 90.

91. By contrast, female APDs faced negative consequences if they continued to go into lockups to meet their clients despite Defendant Campanelli's directive. First, they faced the prospect of more sexual harassment by detainees. Moreover, if a detainee exposed himself or masturbated at them, female APDs (unlike their male counterparts, who do not experience such incidents) would be required to either press charges or sign a document saying they do not wish to press charges, either of which would put Defendant Campanelli on notice that they disobeyed her directive thus making them vulnerable to disciplinary action. Male APDs were not faced with this Catch-22.

**ANSWER:** The CCSO denies that male APDs are not subject to incidents of indecent exposure and masturbation by detainees. The CCSO further denies that female APDs, or APDs more generally, are required to either press charges or sign a document saying they do not wish to press charges if they experience an incident of indecent exposure or masturbation by a detainee. Accordingly, the CCSO also denies that "[m]ale APDs were not faced with this Catch-22." The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 91.

92. Although APDs are responsible to Defendant Campanelli (55 ILCS 5/3-4008.1), they have an overriding professional obligation as attorneys to the clients whom they represent. By implementing the above-described prohibition, Defendant Campanelli interfered with Plaintiffs' ability to do their jobs and caused them to suffer further distress.

**ANSWER:** The CCSO admits, upon information and belief, that although APDs are responsible to Defendant Campanelli (55 ILCS 5/3-4008.1), they have an overriding professional obligation as attorneys to the clients whom they represent. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 92.

93. A Supervising Judge at Leighton told APDs he would not hesitate to report them to the Attorney Registration and Disciplinary Commission ("ARDC") if he felt their compliance with Campanelli's directive had detrimentally affected any criminal defendant.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 93.

94. The Judge further confirmed he would not order sheriffs to bring clients out of lockup in order to speak with APDs, modify his case management orders/dates, or make any other allowance in light of Defendant Campanelli's directive.

**ANSWER:** The CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 94.

95. As a result of this lawsuit, defendant Campanelli discontinued her order barring APDs from the lockups. See Agreed Preliminary Injunction Order entered by the Court. ECF 45 and 46.

**ANSWER:** The CCSO admits that prior to the Agreed Preliminary Injunction Order (Dkt. # 46) entered by the Court in this case, Defendant Campanelli discontinued her directive barring APDs from the lockups. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 95.

96. Female APDs continue to be prejudiced in the carrying out of their duties. For example, at least one female APD has been told by the sheriff on duty at CCDOC that APDs are not allowed to visit their clients on the tiers in Division 10 and she would need to wait for the meeting room to become available. She was also told she was not allowed a no-contact visit,

despite the fact that non-APD attorneys were being allowed into the building for visits with their clients as she waited. She was told the policy had been in place for about a week and as a result of this lawsuit.

**ANSWER:** The CCSO denies that female APDs continue to be prejudiced in the carrying out of their duties. The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 96.

97. Visiting client detainees is an essential function of Plaintiffs' jobs, and there is no other place to conduct their confidential attorney client communications except the lockup or jail. Defendants have chosen not to provide individual meeting rooms or any other effective measure to prevent detainee sexual harassment. The County has the authority and ability to create a safe and appropriate meeting space for APDs and their clients at all jails and lockup facilities, in light of the fact that it is responsible for construction and maintenance at the jail, and chose not to.

**ANSWER:** The CCSO admits that the County has the authority and ability to create a safe and appropriate meeting space for APDs and their clients at all jails and lockup facilities, in light of the fact that it is responsible for construction and maintenance at the jail. The CCSO lacks knowledge or information sufficient to form a belief about the essential functions of Plaintiffs' jobs. The CCSO denies the remaining allegations of Paragraph 97.

98. No Defendant implemented any of the suggestions included in the correspondence from class counsel prior to the filing of this suit and Plaintiffs' Motion for Preliminary Injunction. See ECF #9; and see, Exhibits B and D, Oct. 31, 2017 Potter Bolaños letter.

**ANSWER:** The CCSO denies the allegations in Paragraph 98. As this allegation relates to the County and Public Defender's Office, the CCSO lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 98.

99. Defendants have demonstrated through their policies, practices and admissions that they are unwilling, and have deliberately chosen not to protect the class and/or ensure that the workplace is not discriminatory and dangerous to women, in stark contrast to their treatment of male employees.

**ANSWER:** Denied.

**_Howard_ and _Wilson_ Lawsuit Allegations Further Demonstrate Dart's _de facto_ Policies, Practices, and Customs Emboldened and Caused Detainees to Target Female APDs**

100.    Defendant Dart's policies, practices, and customs have emboldened the detainees to increase the frequency and severity of their harassment toward female APDs in addition to female deputies.

**ANSWER:**    Denied.

101.    Plaintiffs make the following allegations (¶ 102-110) on information and belief, based on the factual allegations in _Howard v. Cook County Sheriff's Office, et al_., Case No. 17-8146 (ECF #46), and _Wilson v. Cook County Sheriff's Department, et al_., Case No. 17-8248 (ECF #30-1).

**ANSWER:**    The CCSO admits that Plaintiffs purport to make the allegations in Paragraphs 102 through 110 of this Complaint based on allegations made in _Howard v. Cook County Sheriff's Office, et al_., Case No. 17- 8146 (ECF #46), and _Wilson v. Cook County Sheriff's Department, et al_., Case No. 17-8248 (ECF #30-1).   Answering further, the CCSO expressly denies that it engaged in any lawful conduct or that it has any liability to Plaintiffs.

102.    Male detainees have engaged in sexual misconduct toward female sheriff's deputies and other female Cook County employees, including hundreds of instances of exposure of genitals, exhibitionist masturbation, sexual comments and threats of sexual violence.

**ANSWER:**    The CCSO admits that male detainees have engaged in sexual misconduct toward female sheriff's deputies and other female Cook County employees.  The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 102.  Answering further, the CCSO expressly denies that it engaged in any unlawful conduct or that it has any liability to Plaintiffs.

103.    Male CCSO supervisors have discouraged and prevented female deputies from reporting sexual harassment by male detainees, including the following:

A.    Male CCSO supervisors have discouraged and deterred female deputies from filing incident reports, disciplinary tickets, and criminal charges.

B.    Male CCSO supervisors have refused to accept incident reports made by female correctional officers.

C.    A male sergeant assigned to investigations has referred to reports of sexual misconduct by male detainees as "frivolous" and threatened to report the female deputies who complain to the Office of Professional Review, which investigates reports of employee misconduct.

D.    Female employees within the Cook County Health and Hospitals System have complained about sexual harassment from male detainees and have been ignored and told to stop their "moaning and complaining."

**ANSWER:**    The CCSO lacks knowledge or information sufficient to admit or deny whether unidentified "[m]ale CCSO supervisors" have engaged in the conduct alleged in Paragraph 103, including subparagraphs A. through D. and on that basis denies these allegations.

104.    CCSO investigators have refused to investigate reports of detainee sexual harassment made by female deputies.

**ANSWER:**    The CCSO lacks knowledge or information sufficient to admit or deny whether unidentified "CCSO investigators" have refused to investigate reports of detainee sexual harassment made by female deputies and on that basis denies these allegations.

105.    The CCSO does not discipline supervisors and investigators who ignore, minimize, or fail to pursue reports of sexual harassment by male detainees.

**ANSWER:**    Denied.

106.    The CCSO does not take disciplinary action against detainees who engage in indecent exposure and exhibitionistic masturbation toward female deputies.

**ANSWER:**    Denied.

107.    Female deputies and female APDs share a workplace in the courthouse lockups and jails and have been subjected to sexual harassment by the same detainees.

**ANSWER:**    The CCSO admits that some female deputies and female APDs enter the courthouse lockups and CCDOC for purposes of their employment.  The CCSO lacks knowledge or information sufficient to admit or deny whether unidentified "female deputies" and unidentified "female APDs" have been sexually harassed by the same unidentified detainees, and on that basis denies these allegations.  The CCSO also denies the remaining allegations of Paragraph 107.

108.    At least one female deputy reported to a CCSO supervisor that detainees were masturbating in front of a female APD at a courthouse. Defendant Sheriff chose not to reprimand the detainees or take any action in response to that report.

**ANSWER:**    The CCSO lacks knowledge or information sufficient to form a belief about whether an unidentified "female deputy" reported to an unidentified "CCSO supervisor" that detainees were masturbating in front of an unidentified "female APD" at an unidentified "courthouse" and on that basis denies these allegations.  The CCSO further denies the remaining allegations of Paragraph 108.

109.    Cook County Jail Commander Jason Cianciarulo admitted that Cook County "detainees expose themselves in the courthouse, to civilians, to the nurses, to our staff."

**ANSWER:**    The CCSO admits that Superintendent Jason Cianciarulo has said that "[t]hese particular detainees expose themselves in the courthouse, to civilians, to the nurses, to our staff" in reference to detainees who wear restrictive green jumpsuits.

110.    In response to complaints by APDs about detainee sexual harassment, Defendant Dart's policy director Cara Smith, stated "This is something that happens in custodial environments, period." https://chicago.suntimes.com/chicago-politics/cook-county-inmates-masturbating-public-defenders/

**ANSWER:**    The CCSO admits that the Chicago Sun Times published an article, which can be found at https://chicago.suntimes.com/chicago-politics/cook-county-inmates-

masturbating-public-defenders/, the content of which speaks for itself, but neither admits nor denies the truth of the statements made in that article. The CCSO also expressly denies the remaining allegations of Paragraph 110.

**Plaintiffs Have Suffered Significant Damages**

111.    As a result of the longevity, increasing severity and widespread nature of these incidents, female APDs live with constant and deeply rooted feelings of apprehension and/or fear that an assault or battery will occur when they visit their clients at the lockup or jail.

**ANSWER:**   The CCSO denies that incidents of indecent exposure and masturbation have been longstanding, occurring with increasing severity or are widespread in nature.  The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 111.

112.    As a result of the Defendants' affirmative conduct and deliberate inaction, the Plaintiffs and other similarly situated female APDs and female law clerks have suffered and endured a barrage of assaults because of their sex, for more than two years. They are not safe at work because of their sex, and each day live with the fear of another incident. They have suffered and will continue suffer significant damages, including but not limited to severe emotional distress that affects their daily lives.

**ANSWER:**   Denied.

113.    As a result of the Defendants' affirmative conduct and deliberate inaction, many APDs have either transferred in order to avoid certain lockups and jail visits, despite the negative impact it might have on their careers, or have left the CCPD's office entirely.

**ANSWER:**   Denied.

**Count I**
**42 U.S.C. §1983 – Equal Protection / Sexual Harassment – Against Dart**
**(Official Capacity) and Campanelli (Official Capacity)**

114.    Plaintiffs repeat and re-allege Paragraphs 1 through 113 above as if fully set forth herein.

**ANSWER:**  The CCSO incorporates its answers to Paragraphs 1 through 113 as if fully set forth herein.

115.    This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23.

**ANSWER:**    The CCSO admits that Plaintiffs purport to bring this Count as a class action pursuant to Fed. R. Civ. P. 23.  The CCSO denies that certification of such a class for purposes of this Count would be proper.

116.    Plaintiffs seek to represent a class defined as follows:  All female APDs and law clerks who have worked for the County and the CCPD from November 1, 2015 through the present and who have visited or will be required to visit the jail and/or lockup in connection with their employment.

**ANSWER:**    The CCSO admits that Plaintiffs seek to define their class as "All female APDs and law clerks who have worked for the County and the CCPD from November 1, 2015 through the present and who have visited or will be required to visit the jail and/or lockup in connection with their employment."  The CCSO denies that certification of such a class would be proper.

117.    The class is in excess of 200 persons and is so numerous that joinder of all class members is impracticable.

**ANSWER:**    The CCSO admits that the class proposed by Plaintiffs would exceed 200 persons, but denies that certification of such a class would be proper.

118.    The class representatives, Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, Julie Hull and other members have the class have been similarly impacted by the hostile work environment resulting from repeated and pervasive incidents of indecent exposure and/or masturbation by detainees toward female APDs.

**ANSWER:**    Denied.

119.    Defendants have employed more than two hundred female APDs and law clerks who have been subjected to incidents of indecent exposure and/or masturbation by detainees within the last two years.

**ANSWER:**    Denied, including expressly denying that the CCSO has employed any APDs and law clerks.

120.    The issues involved in this lawsuit present common questions of law and fact, and these common questions of law and fact predominate over the variations, if any, which may exist between the members of the class.

**ANSWER:**    Denied.

121.    The Named Plaintiffs and the Class have a commonality of interest in the subject matter of this suit and the remedy sought.

**ANSWER:**    Denied.

122.    The Named Plaintiffs are able to fairly and adequately represent and protect the interests of the Class.

**ANSWER:**    Denied.

123.    Plaintiffs' undersigned counsel is competent and experienced in litigating large class action lawsuits.

**ANSWER:**    The CCSO lacks knowledge and information sufficient to form a belief about the truth of the allegations in Paragraph 123.

124.    If individual actions were required to be brought by each member of the class injured or affected, the result would be a multiplicity of actions, creating a hardship to the Class, to the Court and to Defendants. Accordingly, a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

**ANSWER:**    The CCSO denies that certification of Plaintiffs' proposed class is proper and, therefore, denies the allegations in Paragraph 124.

125.    Defendants have acted under color of state law at all times relevant hereto.

**ANSWER:**    The CCSO lacks knowledge sufficient to admit or deny whether it or its unidentified employees or agents have acted under color of state law while performing unspecified acts at unspecified times and on that basis denies this allegation.

126.    Defendants intentionally subjected Plaintiffs and the class to unequal and discriminatory treatment by requiring Plaintiffs to suffer incidents of assault, masturbation and/or indecent exposure by detainees and detainees during the course of their employment, by knowingly opting not to take appropriate corrective action to prevent such incidents, and by

knowingly refusing to protect Plaintiffs and the Class from this hostile work environment, despite having ample notice of the practice for at least the past two years.

      **ANSWER:**   Denied.

127.    Defendants have acted affirmatively to cause and/or increase incidents of assault of female APDs, including as described above.

      **ANSWER:**   Denied.

128.    The actions of Defendants were done pursuant to one or more of the following *de facto* polices, practice, and/or customs that are so pervasive that they carry the force of law.

      **ANSWER:**   Denied.

129.    Defendant Sheriff and Campanelli have a *de facto* policy, practice, and/or custom of discouraging and deterring complaints and reports of sexual misconduct by detainees toward female employees of Cook County.

      **ANSWER:**   Denied.

130.    Defendant Sheriff and Campanelli have a *de facto* policy, practice, and/or custom of failing to record and maintain accurate and complete records of complaints of sexual misconduct by detainees.

      **ANSWER:**   Denied.

131.    Defendant Sheriff has a *de facto* policy, practice, and/or custom of failing to investigate complaints by female APDs regarding sexual harassment by detainees.

      **ANSWER:**   Denied.

132.    Defendant Sheriff has a *de facto* policy, practice, and/or custom of failing to take disciplinary action or pursuing administrative or criminal charges against detainees who sexually harass female APDs.

      **ANSWER:**   Denied.

133.    Defendant Campanelli has a *de facto* policy, practice, and/or custom of handling complaints by female APDs differently regarding detainee sexual misconduct than complaints by male APDs regarding non-sexual misconduct.

      **ANSWER:**   The CCSO lacks knowledge or information sufficient to form a

belief about the truth of the allegations of Paragraph 133.

134.     All Defendants have a *de facto* policy, practice, and/or custom of tolerating and acquiescing in indecent exposure, public masturbation, and sexual comments and threats by detainees and made toward female employees of Cook County as normal and expected conduct.

> **ANSWER:**     Denied.

135.     Individually and collectively, the above described *de facto* policies, practices, and/or customs proximately result in the environment and attitude among detainees that they may engage in sexual misconduct against female APDs, as well as other females in their proximity, with impunity and without fear of official consequence.

> **ANSWER:**     Denied.

136.     The sexually and sex-based offensive conduct is severe and pervasive and alters the conditions of Plaintiffs' employment and creates an abusive working environment.

> **ANSWER:**     Denied.

137.     The sexual harassment is because of Plaintiffs' sex.

> **ANSWER:**     The CCSO lacks knowledge or information sufficient to form a

belief about the reason that certain unidentified detainees purportedly sexually harassed Plaintiffs

and on that basis denies the allegations of Paragraph 137.

138.     The sexual harassment has the effect of unreasonably interfering with the Plaintiffs' work performance and has created and continues to create an intimidating, hostile and offensive working environment for women.

> **ANSWER:**     Denied.

139.     Defendants, and each of them, have had knowledge of the conduct complained of and intentionally refused and knowingly chose not to take action to terminate or correct such conduct, although having the power and authority to do so, and despite taking effective and decisive action in response to a battery against a male APD.

> **ANSWER:**     Denied.

140.     Defendants' actions as alleged above were done pursuant to one or more interrelated policies, *de facto* policies, patterns, practices and/or customs of official conduct of acquiescence and deliberate indifference to egregious sexual harassment and assault of female APDs by male detainees.

> **ANSWER:**     Denied.

141.     Said interrelated policies, *de facto* policies, patterns, practices and/or customs, as set forth above, individually and together, were maintained and implemented with actual

knowledge and deliberate indifference and by requiring Plaintiffs to suffer incidents of assault, masturbation and/or indecent exposure by detainees during the course of their employment.

**ANSWER:**    Denied.

142.    Defendants' actions and deliberate inaction were and are the direct and proximate cause of the constitutional violations and injuries suffered by the Plaintiffs and the class.

**ANSWER:**    Denied.

143.    The actions of the Defendants violate the equal protection rights of Plaintiffs and the Class, including the right to be free from sexual harassment and/or danger created or increased by the Defendants under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:**    Denied.

144.    Defendants' actions have caused Plaintiffs and the Class to suffer damages, including but not limited to severe emotional distress, and other compensatory and consequential damages.

**ANSWER:**    Denied.

145.    Defendants' actions were intentional, willful, and malicious and in reckless disregard for Plaintiff's rights as secured by 42 U.S.C. § 1983.

**ANSWER:**    Denied.

**Count II**
**Title VII – Sex Discrimination and Hostile Work**
**Environment – Against Dart (Official Capacity),**
**Campanelli (Official Capacity) and Cook County**
**(PENDING RECEIPT OF PLAINTIFFS' RIGHT TO**
**SUE FROM THE EEOC)[3]**

146.    Plaintiffs repeat and re-allege Paragraphs 1 through 145 above as if fully set forth herein.

**ANSWER**:    The CCSO incorporates its answers to Paragraphs 1 through 113 as

if fully set forth herein.

---

[3] Plaintiffs have requested a right to sue letter from the EEOC, which is processing the request. Plaintiffs add their Title VII claims in order to provide notice to Defendants and the Court of the claims.

147.    This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23. Plaintiffs repeat and re-allege the class allegations set forth in Count I.

**ANSWER:**    The CCSO admits that Plaintiffs purport to bring this Count as a class action pursuant to Fed. R. Civ. P. 23.  The CCSO denies that certification of such a class for purposes of this Count would be proper.  In further answering, the CCSO incorporates its answers to the class allegations set forth in Count I as if fully set forth herein.

148.    At all relevant times herein, each Defendant has employed more than 15 people and is therefore an employer within the meaning 42 U.S.C. § 2000e(b).

**ANSWER:**    The CCSO admits that at all relevant times it has employed more than 15 people and is therefore an employer within the meaning of 42 U.S.C. § 2000e(b); however, the CCSO expressly denies that it ever directly, jointly or otherwise employed Plaintiffs or any putative class member.

149.    At all relevant times herein, each Defendant is and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(h).

**ANSWER:**    Paragraph 149 is a legal conclusion to which no response is required; however to the extent that a response is required, the CCSO expressly denies that it ever directly, jointly or otherwise employed Plaintiffs or any putative class member or that it is in any way liable to Plaintiffs.

150.    Each of the Plaintiffs named in this suit filed timely charges of discrimination with the EEOC. See e.g. Exhibit C. Plaintiffs' undersigned counsel have requested the EEOC issue Right to Sue letters, and will file the letters with the Court after this request is processed.

**ANSWER:**    Admitted that Plaintiffs' EEOC charges were timely filed.  The CCSO lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of Paragraph 150.

151.     Because of their sex, the Plaintiffs and all class members have been subjected to a hostile working environment, which has been so severe and pervasive as to alter the terms and conditions of their employment.

      **ANSWER:**     Denied.

152.     At all relevant times, each of the Defendants has possessed both actual and constructive knowledge of the hostile work environment to which Plaintiffs and other members of the proposed class have been subjected. Despite that knowledge, each of the Defendants has chosen not to take adequate steps reasonably calculated to curtail the harassment that created that hostile work environment. Additionally, Defendant Dart interfered with Plaintiffs' employment by his actions described above.

      **ANSWER:**     Denied.

153.     The Defendants' acts and omissions constitute a pattern or practice of discrimination against Plaintiffs and other members of the proposed class.

      **ANSWER:**     Denied.

154.     The hostile work environment has existed since at least 2015, if not earlier, and Defendants have chosen not to take adequate steps reasonably calculated to curtail the harassment until the entry of a preliminary injunction order in this case, and have chosen to take no steps reasonably calculated to permanently curtail the harassment.

      **ANSWER:**     Denied.

155.     As a direct and proximate result of the Defendants' failures to take adequate steps reasonably calculated to curtail male detainees' sexual harassment directed against Plaintiffs and the class, Plaintiffs and all members of the proposed class have been injured and damaged.

      **ANSWER:**     Denied.

**Count III**
**Title VII Retaliation – Defendant Campanelli (Official Capacity)**

156.     Plaintiffs restate and reallege by reference paragraphs 1 through 155 above as though fully set forth in this Count. Plaintiffs bring this Count against Defendant Campanelli in her Official Capacity.

      **ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

157.     Plaintiffs re-state and re-allege the class action allegations set forth in Count I above.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

158.     As set forth above, Defendant Campanelli retaliated against Plaintiffs for having engaged in protected activity, i.e., including their opposition to the hostile sexually offensive discrimination and their filing of charges of discrimination with the EEOC, in violation of 42 U.S.C. §2000e-3.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

159.     When Plaintiffs, through counsel, advised Defendant Campanelli of the filing of EEOC charges and their substance, Defendant Campanelli unilaterally issued a directive barring APDs from entering the lockups at Leighton. See Exhibit C.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

160.     Defendant Campanelli's directive was in retaliation for the filing of EEOC charges.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

161.     Defendant Campanelli retaliated against Plaintiff with malice and/or reckless indifference to their federally protected rights, including by banning them from entering the lockup and denying them access to their clients, as described above.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

162.     Campanelli's retaliatory conduct was intended in whole or in part to chill participation in this lawsuit.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

163.     Defendant Campanelli's actions in intentionally retaliating against Plaintiffs caused them to suffer damages including emotional distress, damage to their reputations, and other compensatory and consequential damages.

**ANSWER:**     The CCSO declines to answer allegations brought against

Defendant Campanelli only.

### Count IV
### Illinois Civil Rights Act Against Dart (Official Capacity),
### Campanelli (Official Capacity) and Cook County

164.     Plaintiffs repeat and re-allege Paragraphs 1 through 165 above as if fully set forth herein.

**ANSWER:**     The CCSO incorporates its answers to Paragraphs 1 through 113 as

if fully set forth herein.

165.     This Count is brought as a class action pursuant to Fed.R.Civ.P. Rule 23. Plaintiffs repeat and re-allege the class allegations set forth in Count I.

**ANSWER:**     The CCSO admits that Plaintiffs purport to bring this Count as a

class action pursuant to Fed. R. Civ. P. 23.  The CCSO denies that certification of such a class

for purposes of this Count would be proper.  In further answering, the CCSO incorporates its

answers to the class allegations set forth in Count I as if fully set forth herein.

166.     As described above, Defendants have taken affirmative action to cause or increase incidents of indecent exposure, exhibitionist masturbation, threats of sexual violence, batteries, and other sexually indecent and disturbingly offensive conduct by male detainees. These actions have encouraged and/or assisted detainees' assaults on female APDs.

**ANSWER:**     Denied.

167.     As set forth above, female APDs have been subjected to assaults, and in some instances batteries, by male detainees during the last two years. Female APDs have been subjected to threats which have caused a realistic apprehension that batteries will be committed against them.

**ANSWER:**     The CCSO admits that Plaintiff Gallagher reported one incident of

grabbing on September 24, 2017.  Otherwise, denied.

168.     As a direct and proximate result of Defendants' actions, all Plaintiffs and members of the proposed class have been damaged.

**ANSWER:**     Denied.

## Count V
### (Indemnification – County of Cook)

169.     Plaintiffs repeat and re-allege Paragraphs 1 through 168 above as if fully set forth herein.

**ANSWER:**     The CCSO declines to answer allegations brought against Cook County only.

170.     Defendant County of Cook and its Sheriff's and Public Defender's Offices were at all times material to this Complaint, the employers of Plaintiffs and the class, as well as Campanelli.

**ANSWER:**     The CCSO declines to answer allegations brought against Cook County only.

171.     Defendant County of Cook is therefore responsible for any judgment entered against Defendant Campanelli and/or Dart for acts committed by them under the color of law thus making the County of Cook a necessary party to this Complaint.

**ANSWER:**     The CCSO declines to answer allegations brought against Cook County only.

172.     Defendant Cook County has a duty to indemnify each of the Defendants against any damages, including attorney's fees, recovered by plaintiff by judgment or settlement.

**ANSWER:**     The CCSO declines to answer allegations brought against Cook County only.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant Cook County Sheriff's Office, by its attorneys, for its affirmative and other defenses to Plaintiffs' First Amended Complaint, states as follows:

1.     At all times relevant hereto, the CCSO had policies and practices in place prohibiting sexual harassment by detainees.

2.      The CCSO disseminated those policies to detainees in its custody at all times relevant herein and exercised reasonable care to prevent and correct promptly any harassing behavior by detainees in its custody.

3.      Plaintiffs unreasonably failed to take advantage of any preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.

4.      Plaintiffs are not similarly situated to members of the unprotected class;

5.      The CCSO did not treat Plaintiffs, or female APDs and law clerks more generally, differently from members of the unprotected class.

6.      The CCSO had no intent to treat Plaintiffs, or female APDs and law clerks more generally, differently from members of the unprotected class.

7.      The CCSO's policies and practices have not had a disproportionate negative effect upon female APDs and law clerks who have contact with detainees who are in the CCSO's custody.

8.      Plaintiffs' Illinois Civil Rights Act Claim is barred by 745 ILCS 10/8-101(a); 745 ILCS 10/2-201; 745 ILCS 10/2-204; 745 ILCS 10/4-102.

9.      All actions by the CCSO with regard to Plaintiffs were lawful and were made in good faith compliance with all applicable provisions of law, rules and regulations.

10.     Any acts or omissions complained of by Plaintiffs were based on reasonable and lawful factors unrelated to Plaintiffs' gender.

11.     Plaintiffs' claims are barred to the extent that they failed to mitigate their damages.

12.     Any emotional distress suffered by Plaintiffs was caused by external factors and not by the CCSO.

13. Any recovery is barred to the extent Plaintiffs failed to use ordinary care and diligence and failed to comply substantially with the reasonable directions of the CCSO and/or failed to otherwise conduct themselves in accordance with normal standards of care.

14. To the extent that Plaintiffs failed to assert claims within the applicable statute of limitations, those claims are time barred.

15. If the CCSO subjected Plaintiffs to wrongful or unlawful conduct resulting in mental, physical or emotional harm, although such is not admitted hereby or herein, Plaintiffs have a duty to mitigate damages by seeking medical and psychological treatment. To the extent Plaintiffs failed to seek such treatment, their recovery of damages is barred in whole or in part.

16. The CCSO acted reasonably at all times and did not breach any duty owed to Plaintiffs.

17. In the event that through the course of discovery, the CCSO should obtain after-acquired evidence, the CCSO expressly reserves the right to assert that, based on any such after-acquired evidence, any recovery on Plaintiffs' Complaint, or any cause of action alleged therein, is barred.

18. Plaintiffs' claims are barred by the applicable statute of limitations, in that Defendant cannot be liable for any alleged conduct which occurred more than 300 days before the Plaintiffs filed their charges of discrimination with the EEOC.

19. Plaintiffs have failed to exhaust her administrative remedies.

20. At no time were Plaintiffs or any putative class members an "employee" of the CCSO as that term is defined in Title VII.

21. At no time did the CCSO jointly, indirectly or in any way otherwise employ Plaintiffs or any putative class member such that they may hold the CCSO liable under Title VII.

22.     The CCSO reserves the right to assert additional defenses based on information

discovered after the filing of this answer.

Dated:  August 1, 2018                          Respectfully submitted,


                                                COOK COUNTY SHERIFF'S OFFICE

                                    By:     _/s/ Katharine P. Lennox_____
                                            Christina Egan
                                            Michael R. Phillips
                                            Peter A. Milianti
                                            David D. Leishman
                                            Katharine Lennox
                                            McGuireWoods, LLP
                                            77 West Wacker Drive, Suite 4100
                                            Chicago, Illinois 60601-1815
                                            klennox@mcguirewoods.com
                                            Telephone: 312.849.8100
                                            Fax:  312.849.3690

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification and service of such filing to all registered counsel of record.

*s/ Katharine P. Lennox*
Katharine P. Lennox