**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM and JULIE HULL, et al., on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) |
| | ) Case No. 17-cv-8085 |
| Plaintiffs, | ) ) Judge Matthew Kennelly |
| | ) |
| COOK COUNTY; AMY CAMPANELLI, in her capacity as Public Defender of Cook County; and THOMAS DART, in his official capacity as Sheriff of Cook County, | ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF THE
PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER BOLAÑOS, LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org

ATTORNEYS FOR THE PLAINTIFFS AND THE CLASS

I.   INTRODUCTION

The Class Representatives, plaintiffs Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, and Julie Hull, bring this Motion to request preliminary approval of the class action settlement reached by the parties in this action. The settlement follows more than two years of highly contested litigation and months of arm's length negotiations supervised by the Court. It is fair, reasonable, and adequate within the meaning of Rule 23. After the Court entered its Agreed Preliminary Injunction Orders in November 2017, the masturbation incidents complained of substantially declined. The Settlement Agreement provides that specific and effective injunctive relief measures will remain in force for an additional two years following final approval. It also provides a substantial monetary award to class members to be distributed *pro rata* based on responses to claim forms that will be scored by an experienced neutral third-party administrator who has previously administered similar settlements. The settlement should therefore be preliminarily approved, notice sent to the class, and a final approval hearing scheduled, as requested in the proposed Order attached as Exhibit 1.

II.  RELEVANT FACTS

   a.   *Procedural Background*

The Plaintiffs filed this action on November 8, 2017. See, Doc. #1, 81, 202. Plaintiffs alleged that the CCSO enacted policies and practices which fostered an environment in the courtroom lockups and jail whereby male detainees masturbated at female APDs and law clerks with *de facto* impunity. *Id.* Plaintiffs alleged that the CCPD maintained a hostile work environment and retaliated against female APDs by requiring female APDs and law clerks to visit the lockups and jail knowing that they would be attacked, by discouraging female APDs and

law clerks from reporting attacks, by opposing measures implemented by the CCSO including but not limited to, handcuffing and legislation that were intended to stop the attacks, by requiring female APDs who had been victimized to represent detainees in charges relating to masturbation or indecent exposure, and by banning APDs from entering the lockups in the Leighton Criminal Courthouse in retaliation for Plaintiffs' filing of discrimination charges with the EEOC . *Id.* Plaintiffs alleged that Cook County created the hostile work environment by also requiring female APDs and law clerks to visit the lockups and jail as a condition of employment, by pulling funding for measures intended to thwart the sexual attacks, and by failing to use its authority over construction and maintenance of correctional and court facilities to create safe spaces for APDs and law clerks to meet with detainees. *Id.* Defendants deny these allegations and deny liability for the conduct at issue in this suit. *See*, Docs. 137-139.

On November 9, 2017, Plaintiffs filed their Motion for Entry of Temporary Restraining Order and Scheduling of Preliminary Injunction Hearing. Doc. #9. On November 28, 2017, the Court entered Agreed Preliminary Injunction Orders between Plaintiffs and the CCSO (Doc. 45) and the CCPD (Doc. 46). These Orders have remained in effect since that time and have imposed significant requirements on the Defendants. *Inter alia*, pursuant to these Orders, the CCSO was required to take remedial measures, including to: preserve reports relating to masturbation incidents; issue a directive barring CCSO personnel from discouraging reports; issue an email to the CCPD outlining the disciplinary procedures for detainees accused of masturbation; provide a copy of the incident report to the APD upon request; require all detainees with a reported masturbation incident to wear a special jumpsuit designed to deter future attacks; require detainees with a reported incident to remain handcuffed during transport to and in the courthouse

and that they be kept on the "bridge" and not in the lockups; assign a deputy to the courtrooms in floors 4-7 of the Leighton Criminal Courthouse when detainees are present. *Inter alia*, pursuant to these Orders, the CCPD was required to maintain a policy prohibiting retaliation, withdraw the "lockup ban" prohibiting APDs from entering the lockups at the Leighton Criminal Courthouse, and to disseminate policies and procedures regarding detainee masturbation and sexual misconduct that were implemented by the CCSO. Doc. #46.

On January 31, 2018, Plaintiffs filed their First Amended Complaint ("FAC") (Doc. #81) and Defendants moved to dismiss it. Docs. #91, 102. Following extensive briefing (see, Docs. #107, 110), the Court denied Defendants' Motions on June 26, 2018. Doc. #122.

On May 14, 2019, Plaintiffs filed their Motion for Class Certification. Doc. #202. On August 12, 2019, following extensive briefing, the Court certified a Hostile Work Environment class defined as: All female assistant public defenders (not including supervisors) and law clerks who have worked for the defendants from November 1, 2015 through the present and who have visited the jail and/or lockup in connection with their employment. Doc. 218, at 39. The Court denied without prejudice Plaintiffs' Motion to certify the retaliation class and gave leave to refile the Motion with a revised class definition. *Id.,* at 35-37. On October 28, 2019, Plaintiffs mailed Notice to the class pursuant to the Court's Order. Following the mailing, seven out of over approximately 534 putative class members opted out of the action.

  b.  *The Parties Thoroughly Investigated the Case*

The class representatives and class counsel thoroughly investigated the claims prior to reaching the settlement. Exh. 2, M. Nieves Bolaños Declaration, ¶¶ 4-20. During discovery, the CCSO, CCPD and County produced more than 145,000 pages of documents, including *inter alia*

3

the Defendants' policies, reports relating to detainee masturbation attacks and sexual misconduct directed toward female APDs and law clerks, correspondence between and among the Defendants relating to the issues in the suit, internal correspondence between and among Defendants' managerial employees, notes, files maintained by the County's EEO office, personnel files of the named plaintiffs and class representatives, and other relevant documents. *Id.*, ¶ 12. The CCSO, CCPD, and Cook County each answered sworn interrogatories. *Id.,* ¶13. The three Defendants answered a total of 244 Requests to Admit relating to the core issues in the suit. *Id.,* ¶14.

The Class Representatives and the Named Plaintiffs (Rocio Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan, Takenya Nixon, Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati Thakur, and Julie Willis) each answered sworn interrogatories. *Id.,* ¶15. The Class Representatives and Named Plaintiffs also searched for, reviewed and produced voluminous documents, including emails, text messages, social media posts relating to the issues in the suit, voluminous medical records relating to injuries sustained, policies, and other relevant documents and information in their possession. *Id.*, ¶15.

Nine of the plaintiffs (Celeste Addyman, Crystal Brown, Saran Crayton, Brett Gallagher, Rachelle Hatcher, Julie Hull, Erika Knierim, Samantha Slonim, and Julie Willis) gave extensive depositions on all topics relevant to the suit, including damages. *Id.*, ¶17. The Plaintiffs took seven depositions: Amy Campanelli (the Cook County Public Defender), Brad Curry ( CCSO's Chief of Staff), Karen Dimond (CCPD's Deputy for Employment Litigation and Financial Development), Lester Finkle (CCPD's Chief of Staff), Michael Morrisey ( CCPD's Deputy), Cara Smith (CCSO's Chief Policy Officer) and Marc Stahl (CCPD's Chief of the Felony Trial

4

Division). *Id.*, ¶18. This discovery, along with the extensive briefing in connection with the Motions to Dismiss and Plaintiffs' Motion for Class Certification, and the months of mediation sessions and settlement discussions that occurred under the supervision of this Court, enabled class counsel and the class representatives to fully assess the adequacy of the settlement. *Id.*, ¶19.

## III. THE PROPOSED SETTLEMENT

The terms of the Settlement are contained in the Joint Stipulation of Settlement and Release. Exh. 2, Attachment A. The following summarizes the key terms:

### a. *The Proposed Settlement Class and Class Period*

The settlement provides and Plaintiffs ask here that the Court affirm its certification of the class composed of:

> All female assistant public defenders (not including supervisors) and female law clerks who have worked for the Defendants for any period of time from November 1, 2015 through and including October 28, 2019 and who have visited the jail and/or lockup in connection with their employment and whose names appear on the Class List attached [to the Settlement Agreement] as Exhibit 1.

Exhib. 2; Attachment A (Para. 3); Exhibit A to Settlement Agreement (Class List).

### b. *Injunctive Relief to Class Members*

A primary reason that the case can settle at this time is that the injunctive relief entered by the Court in November 2017, as summarized above, has been effective in preventing further attacks on female APDs and law clerks. As Plaintiffs set forth in their Motion for Class Certification, Doc. #193, the detainee sexual attacks substantially abated following implementation of these remedial measures, and the number of reported incidents dramatically declined after January 2018. See, Doc. #202, at 30. The mitigation of detainee sexual attacks is a major achievement of this Litigation. The Settlement Agreement ensures that the key elements of

this relief will remain in effect for a period of two years following the entry of a final non-appealable Order. See, Settlement Agreement, ¶¶ 27a - 27c, 39. Many class members remain employed by the Defendants and are currently benefitting and will continue to benefit from these measures and the relief they provide.

  c. *Monetary Relief*

The Settlement Fund is $14,000,000. Settlement Agreement, ¶ 24. The Settlement Agreement provides that class counsel and the Claims Administrator will determine the allocation of the settlement fund. *Id.*, ¶25. Class Counsel have proposed the following allocation subject to approval by the Court:

***Pro Rata* Distribution Based on Claim Form Responses.** A minimum of $9,510,000 from the Settlement Fund will be distributed to the Class Representatives, the Named Plaintiffs and class members *pro rata* based on responses to Claim Forms that will be scored by the Claims Administrator. Exh. 2, ¶30. The Settlement Agreement provides that, subject to court approval, Eric Schachter, of A.B. Data, Ltd., will serve as Claims Administrator and will administer the settlement and mail Notice and claim forms to class members. Settlement Agreement, ¶20c. Mr. Schachter has previously administered two large class action settlements in cases involving sexual harassment by inmates. Exh. 2, ¶32-35. The Claim Form asks for detailed information relating to the class members' dates of employment, the number and severity of harassing incidents suffered, emotional and physical damages, and damages to career that were suffered, the number of incidents reported, and participation in this suit. See, Exhibit 2, Attachment F.

The proposed Notice is patterned after the Notice this Court approved in *Brand v. Comcast*, No. 1:11-cv-08471, Doc. 155-6. All Class Members will be sent Notice by first-class

mail, with the option thereafter to obtain additional information. The Claims Administrator shall promptly conduct a second mailing for any Class Member whose Notice is returned as undeliverable within forty-five (45) days of the date of the initial mailing, provided that a forwarding address is provided by the U.S. Postal Service or otherwise located by his best efforts. Exh. 2, ¶34. The proposed Notice includes all essential information about the lawsuit required under Rule 23, including the persons affected, class definition, the nature of the action, the possibility of, and method for, opting-out, along with a description of the various methods of obtaining additional information. See, Fed.R.Civ.P 23(c)(2)(B). Class Members seeking information beyond the essential details can request such information by contacting Plaintiffs' Counsel.

**Service Payments.** Class Counsel will apply for service payments of $25,000 for each of the six Class Representatives to compensate them for the time and effort they devoted to representing the Class in this case, including the dozens of hours they spent consulting with Class Counsel about the case and settlement, providing depositions and discovery, and in exchange for a general release. Exh. 2, ¶40-44. Class Counsel will also apply for service payments of $15,000 for the three Named Plaintiffs who gave depositions; $10,000 for the eight Named Plaintiffs who answered sworn interrogatories (but did not give depositions); and $5,000 for three class members who assisted the suit by providing sworn testimony and/or met with class counsel extensively to help prepare the suit to be filed. *Id.* These proposed service payments are comparable to payments awarded by courts in this District. *Chesemore v. Alliance Holdings, Inc.,* No. 09-cv-413-wmc, 2014 U.S. Dist. LEXIS 123873, at *17 (W.D. Wis. Sep. 4, 2014) (Noting, "[D]istrict courts in this circuit have awarded incentive fee awards ranging from

$5,000 to $25,000."); *Briggs v. PNC Fin. Servs. Grp.,* No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *9 (N.D. Ill. Nov. 29, 2016) (citing empirical study finding that the mean incentive award in employment class actions is approximately $12,000).

**Attorneys' Fees, Costs and Costs of Administration.** Prior to the close of the objection period, Class Counsel will also apply for their reasonable attorneys' fees and costs in an amount up to thirty percent (30%) of the Settlement Fund which equals Four Million Two-Hundred Thousand Dollars ($4,200,000). Exh. 2, ¶45-48. The costs of notice and administration of the settlement will be paid out of included this amount. *Id.* If the Court rejects any of the fees or costs sought by Class Counsel and does not reconsider its decision, those amounts will be added to the Class Member fund. *Id.*

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common fund doctrine "is based on the equitable notion that those who have benefitted from litigation should share in its costs." *Sutton v. Bernard,* 504 F.3d 688, 691-92 (7th Cir. 2007), *citing Skelton v. Gen. Motors Corp.,* 860 F.2d 250, 252 (7th Cir. 1988). A 30% fee is in line with comparable settlements and should be preliminarily approved. *Taubenfeld*, 415 F.3d at 600 (Noting, "Lead counsel submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund."); *Goldsmith v. Tech. Solutions Co.,* No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *27 (N.D. Ill. Oct. 10, 1995) (citing decisions from the N.D. Ill. in class action cases in which fees were awarded between 32% and 39% of the

recovery); *Brand v. Comcast*, No. 11-cv-8471, Doc. 169 (Final approval Order approving class counsel's petition for attorney's fees in the amount of 40% of settlement fund (Doc. 163)).

## IV. THE COURT SHOULD GRANT PRELIMINARY APPROVAL

As a matter of public policy, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting that "strong judicial policy . . . favors settlements, particularly where complex class action litigation is concerned"); see also 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 (3d ed. 1992) (collecting cases). The Manual for Complex Litigation describes a three-step procedure for approval of class action settlements:

(1) Preliminary approval of the proposed settlement at an informal hearing;

(2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and

(3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Manual for Complex Lit., at § 21.632–34. During the preliminary approval stage, the district court decides whether the proposed settlement falls "within the range of possible approval." *Cook v. McCarron,* No. 92 C 7042, 1997 U.S. Dist. LEXIS 1090, at *24-25 (N.D. Ill. Jan. 22, 1997) (citation omitted). If so, the court should grant preliminary approval of the settlement, authorize the parties to give notice of the proposed Settlement to Class Members, and schedule a formal fairness hearing. *Id.*; *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). At the

formal fairness hearing, Class Members may be heard and further evidence and argument concerning the fairness, adequacy, and reasonableness of the Settlement may be presented.

   *a.*  *The Criteria for Preliminary Settlement Approval Are Satisfied.*

A proposed class settlement will be preliminarily approved if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Synfuel Techs., Inc. v. DHL Express (USA), Inc.,* 463 F.3d 646, 652 (7th Cir. 2006). In evaluating whether this burden is met, courts in this District consider: (1) the strength of plaintiffs' case compared with the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel,* 463 F.3d at 653; *Isby v. Bayh,* 75 F.3d 1191, 1199 (7th Cir. 1996). A court must not focus on an individual component of the compromise but must instead view the settlement in its entirety. *Isby,* 75 F.3d at 1199.

   *1.*  *Strength of Plaintiffs' Case As Compared to the Amount of the Settlement and Allocation of the Settlement Payment*

A key consideration in evaluating a proposed settlement is the strength of the plaintiffs' case as compared to the amount of the defendants' offer. See *Isby,* 75 F.3d at 1199. District courts should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights in deciding; courts should instead focus on general principles of fairness and reasonableness, not on the substantive law governing Plaintiffs' claims. *EEOC v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). A settlement is fair if it gives plaintiffs the expected value of their claim if it went to trial, net of the risks and costs of trial. *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust,* 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of ten percent of the total sought due to risks

and costs of trial); *Hiram Walker & Sons, Inc.*, 768 F.2d at 891 (settlement approved because "there [was] no showing that the amounts received by the beneficiaries were totally inadequate").

The proposed settlement provides an excellent result when considered against the costs and risks of trial. As set forth above, the settlement ensures that the key measures from the agreed injunctive orders (including for instance jumpsuits and handcuffing) that have been effective in remediating the HWE will remain in place for at least two years following final approval. Given how severe and pervasive the climate of harassment was in the two years prior to filing suit, the benefit of this relief cannot be overstated. See, Doc. 202, at 10-32.

The monetary relief requested is also substantial and is comparable to that awarded in similar cases relating to detainee masturbation and sexual harassment, including *Ferguson et al. v. Whitaker*, EEOC No. 480-2016-00563X and *White v. Sessions*, EEOC No. 510-2012-00077X. Exh. 2, ¶¶25-29. Further, the risk of continued litigation also weighs in favor of settlement. Although Plaintiffs are confident in the merits of their claims, it is possible that a jury or the Court could potentially rule against them on some (or all) of the complex legal and fact intensive issues of liability and damages, in this litigation, including for instance, whether the CCSO is liable under Title VII (due to its unique employment relationship with the class), whether any of the Defendants acted "intentionally" within the meaning of 42 U.S.C. Section 1983, whether the CCPD and County took reasonable corrective measures to remedy the harassment in the lockups and jail, and whether the state law claims are barred or limited by the Tort Immunity Act. *Id.*

2.  *Complexity, Length, and Expense of Further Litigation*

A second factor to be considered by the Court is the complexity, length, and expense of litigation that will be spared by the proposed settlement. *In re Mexico Money Transfer Litigation,*

11

164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Absent settlement, Defendants would continue to vigorously defend the case. Further litigation would require depositions and additional discovery from class members, additional motion practice relating to discovery and other issues, the retention of expert witness(es), and dispositive and pretrial motions would be certain. Exh. 2, ¶¶28-29. Absent settlement, Plaintiffs and the Class Members may also be required to confront appeals. *Id.* Additional litigation would increase the expenses of this litigation but would not reduce the risks the litigation held for the Class. See *Isby,* 75 F.3d at 1199; see also *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1019; *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers (In re Harnischfeger Indus., Inc.)*, 212 F.R.D. 400, 409-10 (E.D. Wis. 2002). The settlement provides resolution to contested litigation between a class comprised largely of current employees against their current employer, another important benefit. *Id.*

### 3. There Is No Known Opposition to the Settlement

The class representatives support the settlement, as do Plaintiffs' Counsel and Defendants. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the settlement, which provides an excellent result to all class members. Exh. 2, ¶¶49-50.

### 4. Opinion of Counsel

Plaintiffs' Counsel are experienced in class action litigation and had a substantial amount of information to evaluate, negotiate and make well-informed judgments about the adequacy of the Settlement, as set forth above. In Plaintiffs' Counsel's opinion, the Settlement is fair, reasonable and adequate. Exh. 2, Exh. 3. When experienced counsel supports the settlement, as they do here, their opinions are entitled to considerable weight. See *In re Mexico Money Transfer*

*Litigation,* 164 F. Supp. 2d 1002, 1020 (N.D.Ill. 2000); *Reed v. General Motors Corp.,* 703 F.2d 170, 175 (5th Cir. 1983). Counsel exercised their experience based on an intimate knowledge of the facts of the case and the legal issues facing the Class, including conducting an independent analysis of the strength and weakness of the claims and value of the claims, the time costs and expense of protracted litigation, discovery, trial and appeals. The Settlement was only reached after the conclusion of dozens of joint settlement discussions and in person mediation sessions overseen by the Court. Exh. 2, ¶10; Exh. 3.

        5.       *The Stage of the Proceedings and Discovery Completed*

As explained above, this complex class action was resolved only after extensive discovery was conducted, and protracted briefing relating to the Defendants' Motions to Dismiss and class certification. The stage of litigation has advanced so that Plaintiffs' counsel could fairly and fully evaluate the value of the settlement. Exh. 2, ¶¶4-19; Exh. 3.

        6.       *The Settlement Was the Result of Arm's Length Negotiations Without Any Hint of Collusion*

The Settlement was the result of adversarial, arm's length negotiations following investigation, informal discovery and substantial assistance from the Court. In determining whether a settlement was reached absent any collusion between the parties, courts look to whether the settlement negotiation is "intense, vigorous, and at arm's length." *In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d at 1020. The Parties were able to settle this action only after they engaged in substantial discovery, motion practice and vigorous and prolonged mediation process overseen by the Court. Such arm's length negotiations conducted by competent counsel constitute prima facie evidence of a fair settlement. *Berenson v. Fanueil Hall Marketplace,* 671 F. Supp. 819, 822 (D. Mass. 1987) ("where . . . a proposed class settlement has

been reached after meaningful discovery, after arm's-length negotiation by capable counsel, it is presumptively fair."). In the absence of any evidence of collusion, this factor favors final approval of the settlement. See *Winston v. Speybroeck,* No. 3:94-CV-150AS, 1996 U.S. Dist. LEXIS 12131, at *15-16 (N.D. Ind. Aug. 2, 1996).

       7.       *The Criteria in the 2018 Amendments to Rule 23(e)(2) Are Also Met*

On December 1, 2018, Rule 23(e)(2) was amended to set forth a list of criteria a court must address in determining whether a settlement is fair, reasonable and adequate. Fed.R.Civ.P. R 23(e)(2)[1]; and see, *Snyder v. Ocwen Loan Servicing, LLC,* No. 14 C 8461, 2018 U.S. Dist. LEXIS 167471, at *10 (N.D. Ill. Sep. 28, 2018). The Advisory Committee Notes state the goal of the Amendments is "not to displace" any factor previously relied upon by federal courts, but rather, is to focus the court on core concerns that should guide its decision whether to approve the proposal. 2018 Advisory Committee Notes, Fed.R.Civ.P. 23(e)(2). These factors have also been met, for similar reasons to those set forth above. The class representatives and class counsel have adequately represented the class, including for the reasons set forth in the Court's class certification order. The proposal was negotiated at arm's length, as set forth above. The settlement treats class members equitably relative to each other – class members will all benefit (directly or indirectly) from the injunctive relief, and the settlement fund will be distributed equitably based on class member responses to the claim forms that will be reviewed by a neutral administrator who has processed similar settlements in two prior cases. As described above, the

---

[1] The factors in Amended Rule 23(e)(2) are: the class representatives and class counsel have adequately represented the class; the proposal was negotiated at arm's length; it treats class members equitably relative to each other; and the relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal; the effectiveness of the proposed method of distributing relief; the terms of any proposed award of attorney's fees; any agreements made in connection with the proposed settlement.

relief provided by the settlement is adequate, taking into consideration the costs, risks, and delay of trial and appeal. The effectiveness of the proposed method of distributing relief is adequate for the aforementioned reasons. The terms of any proposed award of attorney's fees are just as described above. And, the only agreement made in connection with the proposed settlement is the settlement itself.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, the Court should grant the Motion for Preliminary Approval of the Proposed Settlement, and issue the Order attached hereto as Exhibit 1.

Respectfully submitted,

/s/ Robin Potter and M. Nieves Bolanos
Class Counsel

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER BOLAÑOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org

# CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and correct copy of the above and foregoing **Plaintiffs Memorandum of Law in Support of Motion for Preliminary Approval of Class Action Settlement** was served upon all parties by ECF on February 21, 2020.


                                                By: /s/ Nieves Bolanos
                                                Attorneys for the Plaintiffs