**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEASTERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM and JULIE HULL, on Behalf of Themselves and a Class of Similarly Situated Persons, <br><br>Plaintiffs, <br><br>COOK COUNTY; AMY CAMPANELLI, in her official and individual capacity as Public Defender of Cook County; and THOMAS DART, in his official and individual capacity as Sheriff of Cook County, <br><br>Defendants. | Case No. 17-cv-8085 <br><br> Judge Matthew Kennelly |

**DECLARATION OF M. NIEVES BOLAÑOS IN SUPPORT
OF PRELIMINARY APPROVAL OF SETTLEMENT**

1.  I am an attorney and partner with the law firm POTTER BOLAÑOS, LLC. I have been appointed as Class Counsel by the Court in the above-captioned lawsuit, along with my law partner, Robin Potter.

2.  I am submitting this Declaration in support of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement reached between the parties to this lawsuit and which is attached to this Declarations as Attachment A. My background and qualifications are set forth fully at the end of this Declaration.

3.  For the reasons below, I believe the settlement attached hereto as Attachment A is fair, reasonable, and adequate and satisfies the standard for preliminary approval.

*My Firm Investigated the Case*
*Adequately to Assess the Fairness of the Settlement*

4. The Litigation has advanced to the point that my Firm and I can assess the fairness and adequacy of the settlement.

5. My Firm filed this suit on November 8, 2017.

6. On November 9, 2017, my Firm filed Plaintiffs' Motion for Entry of Temporary Restraining Order and Scheduling of Preliminary Injunction Hearing. Doc. #9.

7. On November 28, 2017, the Court entered Agreed Preliminary Injunction Orders between Plaintiffs and the CCSO (Doc. #45) and the CCPD (Doc. #46). These Orders have remained in effect during the suit.

8. As was detailed in our Motion for Class Certification, the evidence in this lawsuit reflected that masturbation and indecent exposure incidents substantially abated following implementation of injunctive relief measures, and the number of reported incidents dramatically declined after January 2018, thus enabling us to assess the injunctive relief necessary for settlement. See, Doc. #202, at 30.

9. Shortly after the lawsuit was filed, the parties began discussing prospects for settlement, with the assistance and supervision of the Court.

10. During the litigation, the parties exchanged numerous settlement letters and email communications, and had extensive discussions and negotiations about the injunctive relief and monetary terms that were ultimately agreed upon in the settlement agreement. These settlement negotiations were supervised by the Court, including during numerous in-person mediation sessions that were held over the last two years.

11. On January 31, 2018, my Firm filed Plaintiffs' First Amended Complaint ("FAC"). Doc. #81. Defendants moved to dismiss the FAC. Docs. #91, 102. Following extensive briefing (see, Docs. #107, 110), the Court denied the Motions on June 26, 2018. Doc. #122.

12. During discovery, the CCSO, CCPD and County produced more than 145,000 pages of documents, including *inter alia* the Defendants' relevant policies, reports relating to detainee masturbation attacks and sexual misconduct directed toward female APDs and law clerks maintained during the relevant period, correspondence between and among the Defendants relating to the issues in the suit, internal correspondence between and among Defendants' managerial employees, notes, files maintained by the County's EEO office, personnel files of the plaintiffs and other relevant documents.

13. The CCSO, CCPD and Cook County each answered sworn interrogatories.

14. The three Defendants answered a total of 244 Requests to Admit relating to the core issues in the suit.

15. The Class Representatives and the Named Plaintiffs (Rocio Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan, Takenya Nixon, Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati Thakur, and Julie Willis) each answered sworn interrogatories.

16. The Class Representatives and Named Plaintiffs also searched for, reviewed and produced voluminous documents, including emails, text messages, and social media posts relating to the issues in the suit, medical records relating to injuries sustained, policies and other

3

relevant documents and information in their possession. I and my staff reviewed voluminous ESI from the Plaintiffs (including emails, text messages and social media postings) for privilege and relevance and to prepare the Class Representatives and Named Plaintiffs' document production responses.

17. Nine of the plaintiffs (Celeste Addyman, Crystal Brown, Saran Crayton, Brett Gallagher, Rachelle Hatcher, Julie Hull, Erika Knierim, Samanth Slonim, and Julie Willis) gave depositions on all topics relevant to the suit, including damages. The depositions generally lasted approximately seven hours each. During depositions, the Plaintiffs each underwent extensive examinations by multiple counsel for the Defendants, including on topics which were sensitive, such as past medical histories and intimate details of the many ways in which they were impacted by the sexual harassment at issue in this suit.

18. Attorneys from my Firm took the depositions of Amy Campanelli (the Public Defender), Brad Curry (the CCSO's Chief of Staff), Karen Dimond (the CCPD's Deputy for Employment Litigation and Financial Development), Lester Finkle (the CCPD's Chief of Staff), Michael Morrisey (the CCPD's Deputy), Cara Smith (the CCSO's Chief Policy Officer) and Marc Stahl (the CCPD's Chief of the Felony Trial Division).

19. This discovery, along with the extensive briefing in connection with the Motions to Dismiss and Plaintiffs' Motion for Class Certification, and the months of mediation sessions and settlement discussions that occurred under the supervision of this Court, enabled me and my Firm as Class Counsel to fully assess the factual and legal issues in this suit, and the risks of trial and/or continued litigation.

*In My Opinion, the Injunctive and Monetary Relief
Provided by the Settlement Are Fair, Reasonable and Adequate*

20. Based on the knowledge I gained through the process of discovery, motion practice and settlement negotiations in this case, and based on my experience and my Firm's experience in handling in other class actions, I believe the settlement is fair, reasonable and adequate.

21. A primary reason that the case can settle at this time is that the injunctive relief entered by the Court in November 2017 has been effective in preventing masturbation and indecent exposure incidents directed toward female APDs and law clerks.

22. The Settlement Agreement ensures that the key elements of the relief from these agreed orders, including for instance that detainees accused of indecent exposure and masturbation incidents remain handcuffed and in preventative jumpsuits, will remain in place for at least another two years following final approval if granted.

23. The continuation of the injunctive relief is an enormous benefit to the Class. The Class Representatives, except Julie Hull who recently retired, all the Named Plaintiffs, and a substantial number of putative class members are current employees of the Defendants and will benefit from the continued injunctive relief requirements set forth in the settlement.

24. The evidence in this suit demonstrates that prior to January 2018, detainee sexual harassment was both severe and pervasive, as detailed in our Motion for Class Certification. Doc. #202. The injunctive relief has been an enormous benefit to class members and in my opinion is a great achievement of the settlement and this litigation.

25. The Settlement Fund is $14,000,000, and in my opinion, the monetary relief provided in the settlement is also fair, reasonable and adequate.

5

26. In *Ferguson et al. v. Whitaker*, EEOC No. 480-2016-00563X, the Plaintiffs (prison employees) alleged claims of detainee sexual harassment occurred at the Victorville Federal Correctional Complex. The EEOC approved a settlement fund of $11,000,000. See, Attachment D, Para 38; Attachment G. The damages period for the Victorville settlement was from January 1, 2007 through at least November 9, 2018, a period much longer than that here, particularly in light of the fact that attacks here substantially abated by January 2018. See, Attachment D, at 12. Similarly, in *White v. Sessions*, EEOC No. 510-2012-00077X, the EEOC approved a settlement fund of $20,000,000 for 524 class members who worked at the Coleman Federal Correctional Facility. Attachment B, at 3. The damages period for the *Coleman* class was April 2011 to January 2017, also a longer period than here. See, Attachment C, at 8.

27. There are 534 members in the class in this suit. In this suit and according to CCPD's records, approximately thirty-four APD members of the class were hired after January 1, 2018, the date injunctive relief went into effect and masturbation incidents abated. Approximately 233 members of the class were law clerks, who often did not work full time and in many cases did not have the same level of detainee interactions as APDs. Further, some APDs and law clerks worked in divisions or worksite locations which had less interaction with detainees, and/or had fewer incidences of masturbation.

28. The risk of continued litigation is also a factor weighing in favor of settlement. My Firm is confident in the merits of Plaintiffs' claims. However, it is possible that a jury or the Court could ultimately rule against Plaintiffs on some (or all) of the complex legal and factual issues in this litigation, including for instance, whether the CCSO is liable under Title VII (due to its unique employment relationship with the class), whether any of the Defendants acted

"intentionally" within the meaning of 42 U.S.C. Section 1983, whether the CCPD and County took reasonable corrective measures in light of their more limited ability (as compared to the CCSO) to impact security measures in the lockups and jail, and whether the state law claims are barred or limited by the Tort Immunity Act.

29. As set forth above, many class members are still employed by the Defendants. Absent settlement, more class members will be required to give testimony in this suit, to produce ESI and other information. In such instances, these additional class members will be required, effectively, to testify against their current supervisors and the Public Defender herself, and also the Sheriff and his deputies, who are responsible for their safety at work. The settlement provides immediate closure and finality in this regard, particularly when the injunctive relief is also considered. Litigation could go on for another year or perhaps much longer absent settlement. Class members have difficult jobs, and the settlement, if approved, will allow them to move forward without further litigation.

<em>Plaintiffs' Proposed Distribution of the Settlement Fund<br>is Fair Reasonable and Adequate</em>

30. The Settlement Agreement provides that class counsel and the Claims Administrator will determine the allocation of the settlement fund to class members. Attachment A, Para 25.

31. Class counsel propose that the $14,000,000 settlement fund be distributed as follows: (1) a minimum of $9,510,000 will be distributed to all the Class Representatives, the Named Plaintiffs and class members *pro rata* based on their responses to Claim Forms that will be scored by the Claims Administrator; (2) $290,000 will be distributed as service awards described as follows, and (3) Class Counsel will petition for attorneys' fees in an amount of up to

$4,200,000, which will also cover litigation costs and costs of notice and administration of the settlement, which continue to accrue.

33. We also propose that Eric Schachter of A.B. Data, Ltd., Class Action Administration Company serve as Claims Administrator for the settlement. A.B. Data's Curricula Vitae is attached hereto as Attachment E to this Declaration.

33. The Claims Administrator's duties will include: (1) issuing Class Notice and Claim forms by U.S. Mail to the class members listed in Exhibit A to the Settlement Agreement; building and maintaining a webpage where class members may easily submit their claims; (2) reviewing and scoring Claim Forms; (3) issuing Settlement Payments upon final approval of the Settlement, if granted; and (4) issuing Form 1099s to class members.

34. The Claims Administrator will also promptly conduct a second mailing for any Class Member whose Notice is returned as undeliverable within forty-five (45) days of the date of the initial mailing, provided that a forwarding address is provided by the U.S. Postal Service or otherwise located by his best efforts.

35. In my opinion and that of my Law Firm, Mr. Schachter is highly qualified to administer this settlement. Mr. Schachter was the Claims Administrator in the class action settlements in *Ferguson et al. v. Whitaker*, EEOC No. 480-2016-00563X and *White v. Sessions*, EEOC No. 510-2012-00077X, described above. See para. 27, *supra*.

*Proposed Pro Rata Distribution to Class Members*

36. The Proposed Notice is attached hereto as Exhibit 2 to the Settlement Agreement. See Attachment A, Exhibit 2.

37. A copy of the proposed Claim Form will be included with the proposed Notice at

8

the time it is mailed out to class members and is attached hereto as Attachment F (Proposed Claim Form).

38. The claim forms that Plaintiffs propose to use here were created with the assistance of A.B. Data, Ltd. and are similar to the types of claim forms that were used in the Victorville and Coleman settlements, which also resolved litigation involving inmate masturbation and sex harassment. See Attachment G (Proposed Claim Form).

39. In my opinion, the method of distributing the fund to class members is fair, reasonable and adequate – Class members will be treated equally based on their answers to the straight-forward and objective questions in the claim forms, as scored by a neutral and experienced third-party administrator.

*Proposed Service Awards*

40. Class counsel also proposes Service Awards be allocated from the Settlement Fund as follows:

41. **Class Representatives.** Plaintiffs propose service awards of $25,000 for each of the six Class Representatives -- Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, and Julie Hull.

42. The Class Representatives initiated and lent their names to this action, and undertook the risks associated with bringing the lawsuit against their current employer and the media attention that came with this lawsuit, and also risked potential cost-shifting if Defendants were to prevail. The Class Representatives were all currently employed as APDs at the time the suit was filed. The Class Representatives devoted substantial time and effort to representing the Class, including time consulting with Class Counsel about the case and settlement, providing

depositions and voluminous discovery regarding a wide range of subjects, which required them in many instances to revisit traumatic attacks by detainees, to testify about their private medical histories, and to describe in detail the damages they suffered. The Class Representatives are also providing general release in connection with the settlement.

43. **Named Plaintiffs.** The Named Plaintiffs in this suit are: Rocio Armendariz, Brett Gallagher, Rachelle Hatcher, Kyan Keenan, Takenya Nixon, Carly Patzke, Stephanie Schlegel, Ashley Shambley, Coryn Steinfeld, Niyati Thakur, and Julie Willis.

44. In connection with Final Approval, class counsel will seek service payments of $15,000 for the three Named Plaintiffs who gave depositions in this suit (Mses. Hatcher, Willis, and Gallagher) and $10,000 for the eight Named Plaintiffs (Mses. Schlegel, Shambley, Thakur, Keenan, Nixon, Steinfeld, Armendariz, and Patzke) who answered sworn interrogatories but did not give depositions. Their contributions were invaluable to the case, for the reasons above. Unlike the class representatives, the Named Plaintiffs will only be giving a limited release, and they had less involvement in the settlement negotiations than the class representatives.

45. **Class Members Who Made Significant Contributions.** Plaintiffs will seek service payments of $5,000 for three class members (Sarah Fransene, Patricia Dillon, and Judie Smith). Ms. Fransene provided a sworn Declaration in support of Plaintiffs' Motion for Class Certification (Doc. 202-40) and filed an EEOC charge which alleged she did not receive a promotion in retaliation for her opposition to protected conduct relating to detainee masturbation. Ms. Dillon submitted a sworn Declaration in support of Plaintiffs' Motion for Preliminary Injunction filed at the outset of the suit. (Doc. #9-9). Ms. Smith assisted the suit in its initial stages by meeting with me and class counsel extensively prior to help prepare the suit to be filed.

*Proposed Award for Attorneys' Fees, Costs and Costs of Administration of the Settlement*

46. Class Counsel will apply for their reasonable attorneys' fees and costs in an amount up to 30% of the total settlement fund, or Four Million Two Hundred Thousand Dollars ($4,200,000). Costs will not be separately awarded from the Class Fund but are included in the 30% award. Class Counsel will file their Motion for Fees seven days prior to the deadline to file objections. If the Court rejects any of the fees or costs sought by Class Counsel, those amounts will be added to the Class Member fund.

47. Based on my experience, and as we will explain more fully in our fee motion, a 30% fee is reasonable in this suit and is in line with other suits. Twenty-one APDs signed retainers with my Firm for representation in this suit which provided for a forty percent (40%) contingent fee. My Firm has been awarded fees between 25 and 35% of the common fund in class actions on numerous occasions. In *Brand v. Comcast*, No. 11-cv-8471, this Court approved a 40% attorney fee award to class counsel in a hostile work environment suit. See, Doc. 163, 169. In the Victorville settlement, above, the EEOC approved a fee award of 27% of the common fund. Attachment D at 39; Attachment G. And in the Coleman settlement, above, the EEOC approved a fee award of 33% of the common fund. Attachment B, Coleman Final Approval Order, at 13.

48. Large-scale class actions of this type are, by their nature, complicated and time consuming. Any lawyer undertaking representation of large numbers of affected employees in class actions inevitably must be prepared to make a tremendous investment of time, energy and resources. Due also to the contingent nature of the customary fee arrangement, lawyers must be prepared to make this investment with the very real possibility of an unsuccessful outcome and

no fee of any kind. The demands and risks of this type of litigation overwhelm the resources – and deter participation – of many traditional claimants' firms.

49. My Firm was prepared to prosecute and finance this litigation for as long as necessary, with the possibility that we could come away with nothing.

*There Is No Known Opposition to the Settlement*

50. The Class Representatives support the settlement, as do Plaintiffs' counsel, and Defendants.

51. At this preliminary stage, I am unaware of any opposition to the settlement.

*My Background and Qualifications*

52. I graduated from the DePaul University College of Law in Chicago, Illinois in May 2009. I received my undergraduate degree from the University of Washington, Seattle.

53. I am admitted to practice in the State of Illinois since November 2009 and before the United States District Court for the Northern District of Illinois since January 2010.

54. My Firm, POTTER BOLAÑOS, LLC (formerly, Robin Potter & Associates, P.C.) has represented Plaintiffs in employment and wage and hour cases for more than forty years. Robin Potter, my partner in the Firm, is a nationally renowned practitioner with extensive experience in wage and hour, class action and complex litigation. See, Doc. #202-75.

55. I am a member of the National Employment Lawyers Association (NELA), a nation-wide bar association of attorneys who represent plaintiffs-employees in employment and wage and hour cases. I am also an active member of NELA-Illinois, NELA's Illinois affiliate.

56. In June 2015, I was appointed to the Executive Board of the National Employment Lawyers Association for a three-year term. In April 2018, I was elected to NELA's

12

Executive Board for another three-year term. The Executive Board is NELA's highest governing body and includes preeminent employment law practitioners from jurisdictions throughout the country.

57. Since July 2017, I have served as NELA's Secretary and a member of the Executive Committee of NELA's Executive Board. I also currently serve on NELA's Strategic Planning Committee, Legislative Action Team, and Executive Transition Committee. I also serve as Co-Chair of the Low Wage Worker Committee.

58. I also served as a committee member of NELA's Annual Convention Committee and Diversity, Equity & Inclusion Committee. I was one of two co-Chairs of the 2016 NELA Annual Convention held in Los Angeles, California.

59. On January 9, 2019, I testified on behalf of my firm and NELA to the Advisory Committee on Civil Rules, at its Public Hearing regarding Proposed Amendments to the Federal Rules of Civil Procedure. The transcript of my testimony is available here: https://www.uscourts.gov/sites/default/files/transcript_of_civil_rules_public_hearing_1-4-19.pdf

60. I am a member of the Labor and Employment committee of the Chicago chapter of the National Lawyers Guild.

61. I co-authored a brief on behalf of *amici curiae* Steve Viscelli, Domingo Avalos, Gabriel Procel, Brion Gray, James Zuber, Hector Zelaya, Desiree Ann Wood, the Wage Justice Center and Real Women in Trucking, Inc. in the case, *New Prime Inc. v. Oliveira*, __ U.S. __, 139 S.Ct. 532, 202 L.Ed. 2d 536 (2019).

62. I worked as a volunteer with Interfaith Worker Justice Coalition in a pilot program, developed in concert with the Illinois Department of Labor and the Center for

9

Economic Progress, to provide consultation regarding potential wage and hour violations through volunteer tax preparation sites.

63. I have attended numerous educational seminars and events sponsored by Taxpayers Against Fraud ("TAF"), an organization of attorneys representing *qui tam* relators, and throughout my career, including its annual convention in Washington D.C.

64. I frequently lecture to bar association groups on various topics, including employment law, wage and hour litigation, and the representation of low wage workers. In February 2013, I was one of three panelists to present on Electronically Stored Information (ESI) and social media issues in employment litigation at NELA-Illinois' Annual 7th Circuit Conference. In October 2013, I spoke before the Chicago Bar Association Young Lawyers Section, on its *Wage and Hour Updates* panel. In February 2015, I spoke on a panel regarding summary judgment motion practice for NELA-Illinois' Seventh Circuit Conference. In June 2015, I spoke on a panel titled *Strategies for Handling Post-Settlement Setbacks* for the NELA National Annual Convention. In June 2016, I spoke on a panel titled *Successfully Representing Undocumented Workers* for the NELA Annual Convention. In October 2016, I spoke at NELA's Fall Seminar regarding Summary Judgment. In January 2017, I spoke at the Federal Bar Association's Annual Employment Law Seminar on a panel entitled *New Ways to Sue and Be Sued: Equal Pay Litigation Re-Ignited; Use of Social Media and Related Protected Concerted Activity Issues*. In January 2018, I gave a presentation to NELA's Illinois Affiliate regarding the most recent changes to the Federal Rules of Civil Procedure. In June 2018, I spoke at an interdisciplinary seminar organized by the Illinois Legal Services Committee for Immigrants ("ILSCI") on a panel entitled *ICE in the Workplace*. I was a panelist at NELA's Fall Wage and

10

Hour Seminar April 13, 2019, on a panel titled *Representing Low-Wage Workers & Immigrant Workers* held in Denver, Colorado. In March 2019, I was a #MeToo Sex Harassment Presenter with Robin Potter for the Decalogue Society. I was a panelist at the 2019 Institute for Law in the Workplace Employment Law Conference and presented on the *Liability of Employers Caused by the Actions of Third Parties in the Age of #MeToo*. I am slated to speak at NELA's Spring Seminar on Race and National Origin Discrimination in The Workplace on a panel titled *The Effects of Immigration Status On Race & National Origin Litigation*.

65. I was invited to and did attend the Courts Matter Convening hosted by The Leadership Conference Education Fund in May 2018 and plan to attend again in March 2019. I applied to and was accepted to attend and participate in The Worldwide #MeToo Movement: A Conference on Global Resistance to Sexual Harassment and Violence hosted by Berkeley Law in May 2019.

66. In 2015 and 2016, I served as a contributing author to *The Fair Labor Standards Act's Midwinter Treatise Supplement*, Ellen C. Kearns. This publication is widely recognized as the leading wage and hour treatise for wage and hour practitioners in both the Plaintiff and Defense bars.

67. During my career, I have successfully represented single plaintiffs and employees in class and collective actions at all stages of litigation in state and federal courts in Illinois. I have also represented employees in administrative agencies, including the Equal Employment Opportunity Commission, the Illinois Department of Human Rights, and the Illinois Education Labor Relations Board. I have also represented plaintiffs in private arbitrations.

11

68. At the present time, my practice is highly concentrated in representing employees in class actions. The following is a representative sample of cases in which I have been appointed and/or served as class counsel or counsel in collective actions: *Dietrich et al. v. C.H. Robinson Worldwide Inc.*, No. 18-cv-4871 (N.D.Ill.) (Guzman, J.) (Doc. 179, Mem. Op. 2/11/2020, granting Plaintiffs' motion for class certification); *LaPlaca v. Malnati et al.,* No. 15-cv-1312 (N.D.Ill.) (Class action on behalf of restaurant employees, $850,00 court-approved settlement); *Ponce et al. v. Rodriguez et al.*, No. 16-cv-8296 (N.D.Ill.) (Class action on behalf of restaurant employees, $370,000 court-approved settlement); *Ferkel v. Board of Education*, No. 11-C-09322, 45 F.Supp.3d 824 (N.D.Ill. 2014) (Collective action conditionally certified under the Age Discrimination in Employment Act on behalf of six tenured teachers with related procedural due process claim); *Washington v. Silverleaf Resorts, Inc.*, No. 14-cv-03772 (N.D.Ill.) (FLSA, IMWL and IWPCA collective and class action representing approximately 800 employees who alleged they were not paid for all hours worked. Court approved settlement on behalf of nationwide and Illinois classes); *Schlink et al. v. Fireking International, Inc.*, 15-cv-5894 (N.D.Ill.) (Class action on behalf of customer service representatives, $136,000 court-approved settlement); *Daniels et al v. Rush University Medical Center et al.*, No. 1:15-cv-03882 (N.D.Ill.) (Collective action on behalf of medical coders for unpaid overtime; $225,000 settlement with payment of 1/3 of fund in attorneys fees and costs); *Arango et al. v. Landrys*, No 12-cv-09354 (N.D.Ill.) (Class action certified under the FLSA, IWML and IWPCA on behalf of servers, bar tenders and hosts nation-wide for off the clock work, illegal tip pool violations, and failure to reimburse for uniform expenses; $2,527,500 settlement, including $750,000 attorneys fees award); *Balonek et al v. Safeway et al.*, No. 14-cv-01457 (N.D.Ill.) (Class action settlement

12

under FLSA and IMWL for $1.7 million on behalf of General Merchandise Managers and Assistant General Merchandise managers who worked in Illinois at Dominick's Stores; $450,000 attorneys fees); *Silva et al. v. Sabatino's, Inc.,* No. 10 C 4226 (N.D. Ill.) (Rule 23 class action under the IMWL and IWPCA, and FLSA collective action, certified in wage and hour case alleging off the clock work by restaurant employees; class-wide settlement of $500,000, including attorneys fees and costs in the amount of $202,421.32); *Cruz v. Unilock Chicago, Inc.*, Case No. 05 CH 259 (Ill. Cir. Ct. 1st Dist.) (certified class of 300 plant employees under IMWL and IWPCA; class-wide settlement of $1,600,000).

   69. The following is a representative sample of labor and employment cases in which I have successfully represented Plaintiffs: *Mauldin v. Stroud et al.*, 14-cv-08341 (N.D.Ill.) (Kennelly, J.) (Individual case alleging sex harassment, discrimination, and unlawful retaliation; Confidential Settlement); *Chicago Teachers Union v. City of Chicago*, Grievance No. 4106/10-10-013 et al (6/9/14) (favorable arbitration decision, following evidentiary hearing, on behalf of seven tenured teachers who were improperly laid off during a reduction in force); *Coates v. Entertainment Cruises, Inc., et al.*, Case No. 11 C 1986 (N.D. Ill.) (Sex harassment, discrimination and retaliation claim; Confidential Settlement); *Chicago Teachers Union, Local No. 1, AFT v. Bd. of Educ. of Chi.*, Case No. 10 C 4852 (N.D. Ill.) (Due Process violation claim and request for injunctive relief; settled through labor contract negotiations); *Kelley v. Bd. of Educ. of Chi.*, Case No. 10 C 7875 (N.D. Ill.) (Due Process violation and age discrimination case on behalf of single plaintiff; settlement of $335,000).

   70. The following is a representative sample of cases in which I have successfully represented Plaintiffs and/or *qui tam* relators under the False Claims Act and related state laws:

13

*U.S. ex rel Howard v. Urban,* No. 03 C 7668, 2013 U.S. Dist. LEXIS 127987 *11 (N.D.Ill. 9/9/13), *modified on other grounds,* 2014 U.S. Dist. LEXIS 28278 (N.D.Ill. 3/5/14) (Leinenweber, J.) (I successfully represented the Plaintiff at a jury trial in a retaliation case under the False Claims Act.); *U.S.A. ex rel. Kiefer v. Khokha,* No. 12-cv-01861 (N.D.Ill.) (Settlement reached); *U.S.A. ex rel. Lokesh Chandra, M.D. v. Sushil A. Sheth, M.D.,* Case No. 06 C 2191 (N.D. Ill.) (False Claims Act case; $20 million settlement with the United States government); *U.S.A. ex rel Perius v. Abbott Laboratories,* Case No. 07 C 1251 (N.D. Ill.) (Retaliation under the False Claims Act and related claims under Illinois law; Confidential Settlement). In addition, continue to represent whistleblowers and work with the federal and state government in other *qui tam* litigation currently under seal.

Respectfully Submitted,

M. Nieves Bolaños

Dated: February 21, 2020