**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CRYSTAL BROWN, SARAN CRAYTON, SAMANTHA SLONIM, CELESTE ADDYMAN, ERIKA KNIERIM and JULIE HULL, et al., on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) ) ) | |
| | ) | Case No. 17-cv-8085 |
| Plaintiffs, | ) ) | Judge Matthew Kennelly |
| | ) | |
| COOK COUNTY; AMY CAMPANELLI, in her capacity as Public Defender of Cook County; and THOMAS DART, in his official capacity as Sheriff of Cook County, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Submitted by Class Counsel:

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER BOLAÑOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org

# TABLE OF CONTENTS

I.     INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.   THE NOTICE REQUIREMENTS OF RULE 23 HAVE BEEN MET . . . . . . . . . 3

IV.   FINAL APPROVAL IS APPROPRIATE BECAUSE THE
SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE . . . . . . . . . . . . . . 7

    A.  The Settlement Agreement is Fair, Reasonable and
Adequate for the Reasons Set forth in the Preliminary
Approval Motion and Order . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.  The Proposed *Pro Rata* Distribution of the Settlement Fund
to Individual Class Members Is Fair, Reasonable and Adequate . . . . . . . . . . 8

    C.  The Claim Form Scoring Rubric and Proposed Distribution
of the Settlement Fund Are Fair, Reasonable and Adequate . . . . . . . . . . . . 8

    D.  Late Claim Forms and the Claim Form Submitted by
a Class Member Omitted from Exhibit A to the Settlement
Agreement Should be Credited. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    E. The Proposed Service Awards Are Fair, Reasonable and Adequate . . . . . . . . . 13

    F. The Proposed Attorney Fee Is Reasonable . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

V.    TIMING OF FINAL APPROVAL AND ENTRY OF JUDGMENT . . . . . . . . . . 18

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

i

**TABLE OF AUTHORITIES**

*Am. Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898,
2012 U.S. Dist. LEXIS 25265 (N.D. Ill. Feb. 28, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP,
2014 U.S. Dist. LEXIS 12037 (S.D. Ill. Jan. 31, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Briggs v. PNC Fin. Servs. Grp.,* No. 1:15-cv-10447,
2016 U.S. Dist. LEXIS 165560  (N.D. Ill. Nov. 29, 2016) . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chesemore v. Alliance Holdings, Inc.,* No. 09-cv-413-wmc,
2014 U.S. Dist. LEXIS 123873 (W.D. Wis. Sep. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cook v. Niedert,* 142 F.3d 1004 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Craft v. Health Care Serv. Corp.*, No. 14 C 5853,
2018 U.S. Dist. LEXIS 184108 (N.D. Ill. Oct. 26, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Donovan v. Estate of Fitzsimmons*, 778 F.2d 298 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . 6

*Furman v. At Home Stores LLC*, No. 1:16-cv-08190,
2017 U.S. Dist. LEXIS 73816 (N.D. Ill. May 1, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000) . . . . . . . . . . . 6

*In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*,
No. 06 C 7023, 2018 U.S. Dist. LEXIS 33956 (N.D. Ill. Mar. 2, 2018) . . . . . . . . . . . . . . 12

*Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645,
2017 U.S. Dist. LEXIS 65478 (N.D. Ill. Apr. 20, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Scovil v. FedEx Ground Package Sys.*, No. 1:10-CV-515-DBH,
2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Velez v. Majik Cleaning Serv.,* 03-cv-8698, 2007 U.S. Dist. LEXIS 46223
(S.D.N.Y. June 22, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Will v. Gen. Dynamics Corp.*, No. 06-698-GPM,
2010 U.S. Dist. LEXIS 123349 (S.D. Ill. Nov. 22, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**RULES**

Fed.R.Civ.P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

### I.  INTRODUCTION

The Class Representatives, Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, and Julie Hull, and Class Counsel, Robin Potter and M. Nieves Bolaños, bring this Motion to request final approval of the class action settlement reached by the parties in this action. As set forth below, Plaintiffs submit that the settlement should be approved because it is fair, reasonable and adequate within the meaning of Fed.R.Civ.P. 23(e).

The Court in its preliminary approval order, determined the above-noted standard was satisfied because (1) the $14 million common fund is adequate and comparable to awards in similar settlements, and (2) the settlement, if approved, continues the injunctive measures that effectively mitigated masturbation incidents since January 2018 for another two years. Doc. 249, 250. These factors continue to apply and justify final approval of the settlement.

As described below, Class Counsel and the Claims Administrator AB Data (hereafter "Claims Administrator") have administered the Notice and claim-in process in accordance with the Court's preliminary approval order. No class members objected to the settlement and no one requested to be excluded. Each participating class member answered the same questions in the claim form, under oath. Class Counsel created a scoring rubric described below to assess the responses that is well-grounded in the claims and evidence in this case, and the Claims Administrator scored each response in the same manner based on this fair and objective rubric. As such, the proposed *pro rata* distribution of the settlement fund treats class members fairly and equitably relative to one another, and proportionally higher payments will be allotted to class members who attested to more severe incidents of harassment and damages relative to the responses of the entire class.

The proposed service awards are justified by the Plaintiffs' contributions to the litigation and the well-documented risks they undertook in prosecuting this action on behalf of themselves and the class, and they are within the range deemed appropriate in employment discrimination cases and Seventh Circuit jurisprudence. The attorney fee award requested by Class Counsel is reasonable for the reasons set forth in Plaintiffs' fee petition (Doc. 261), and no class member has objected to the proposed attorney fee or service awards. The relevant equitable factors strongly favor the eight class members who submitted late claims and warrant their inclusion in the settlement. Although the vast majority of Class Members were successfully provided with direct Notice during the claim in process, Class Counsel seek leave to locate and contact a small number of Class Members whose Notices were returned or for whom alternate addresses may be available, and as explained herein, request an additional thirty days to reach them to determine if they wish to file claims, before the suit is dismissed with prejudice pursuant to the Settlement Agreement. For all these reasons, the settlement satisfies the criteria for approval and the Court should enter an Order in the form attached hereto as Exhibit 1.

## II.     RELEVANT FACTS

The Plaintiffs brought this action to challenge Defendants' policies and practices that fostered an egregious hostile work environment in the Cook County courthouse lockups and jail caused by detainee masturbation and sexual harassment. Doc. 81. In their preliminary approval motion, Plaintiffs summarized the facts underpinning the litigation, the parties' various claims and defenses, the extensive discovery that was conducted, the Court's preliminary injunction orders, its orders on the motions to dismiss and class certification, other relevant procedural history and the parties' efforts during settlement negotiations. Doc. 249. Plaintiffs do not repeat this summary here.

2

The Court granted Plaintiffs' preliminary approval motion on March 5, 2020. Doc. 250. In the Preliminary Approval Order, the Court certified the following Settlement Class:

> All female assistant public defenders (not including supervisors) and female law clerks who have worked for the Defendants for any period of time from November 1, 2015 through and including October 28, 2019 and who have visited the jail and/or lockup in connection with their employment and whose names appear on the Class List attached to the Settlement Agreement as Exhibit 1.

Doc. 253, ¶5. Certification of this class continues to be appropriate for all the reasons set forth in the preliminary approval motion and order and for the additional reasons set forth below. *Id.*

### III.    THE NOTICE REQUIREMENTS OF RULE 23 HAVE BEEN MET

Rule 23(c)(2)(B) requires the Court to direct to Class Members the "best notice that is practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Where the names and addresses of class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'" *Id.* at 175. In the Preliminary Approval Order, the Court determined that the form, content, and proposed distribution of the Class Notice met the requirements of Rule 23. *See* Doc. 253, ¶8. Class Counsel and the Claims Administrator have fulfilled their obligations under this Order and thus satisfied Rule 23's notice requirements as follows.

On March 30, 2020, the Claims Administrator mailed a copy of the notice and claim form packet to the members of the settlement class by U.S. Mail. Exh. 2, Declaration of Eric Schacter, ¶9. Defendant CCPD, through its counsel, reviewed, provided updated information, and confirmed the Class List in Exhibit A to the Settlement Agreement for completeness. Contact information for Class Counsel and the Claims Administrator was included in the Notice and class members could request additional information if needed. Exh. 2, Attachment A. The Claims

Administrator created a dedicated website for this case. Exh. 2, ¶9. The website made available downloadable copies of the Settlement Agreement, the Court's Preliminary Approval Order, and the Notice packet. *Id*. Claimants were given the option to submit their claims online through the website during the claim-in period, or to fill out hard copies of the forms and return them to the Claims Administrator by U.S. Mail. *Id*. The deadline to request exclusion or tender an objection to the Settlement was May 29, 2020. Ex. 2, at ¶11. As of this filing, neither Class Counsel nor the Claims Administrator has received a request for exclusion or objections. *Id.*¸ ¶12.

If a notice packet was returned by USPS as undeliverable and without a forwarding address, the Claims Administrator re-mailed the packet if a new address was available from the U.S. Postal Service or through a third-party information provider. *Id.*, ¶6. As of this date, forty-six packets were returned, and thirty-one were successfully re-mailed in this manner. *Id.*, ¶6. As of this date, the remaining packets class members were not re-mailed because the Claims Administrator was unable to obtain an alternate address. *Id.* In the Claims Administrator's experience, this is below the typical rate in class actions he has administered. *Id.*, ¶6.

In an abundance of caution, as set forth in the proposed Order attached as Exhibit 1, Class Counsel ask the Court to approve the settlement and the proposed method of distribution outlined herein, but to allow an additional thirty (30) days for Class Counsel and the Claims Administrator to make an additional attempt to locate these class members and allow them the opportunity to claim in, if they choose, prior to granting an order for the final distribution of the Settlement Funds.[1] Exh. 1, ¶13. Class Counsel will seek to locate these class members immediately if additional time is allotted, and have submitted a proposed Order to that effect.

---

[1] One of the fifteen class members, Maria Gonzalez, did submit a claim form on May 30, 2020 and via the Claims Administrator's website and is included in the settlement distribution. Exh. 2, ¶9.

4

Exh. 4. Defendants do not object to this request and have agreed to provide social security numbers for these persons to help locate them if they are in possession of that information, and subject to the protective order entered in this case. [2] Doc. #149. This request, if granted, will further the aims of the litigation and settlement to ensure all class members who wish to claim in are reached. If the scoring and distribution method described in Sections IV.B and C, below, are approved, the Claims Administrator can easily adjust the proposed distribution to account for additional claims before the distribution and dismissal with prejudice is finally granted by the Court pursuant to the Settlement Agreement. Doc. 249-3, at 6, ¶23(c).

In an abundance of caution, Class Counsel also request leave to, conduct a secondary review of the mailing addresses for approximately thirty-three (33) class members whose Notices were returned after the first Notice (advising that the class was certified) was mailed in October 2019, before A.B. Data was retained. Class Counsel obtained alternative addresses for these persons at that time, re-mailed Notices of the Settlement, and provided the updated data, including whether the re-mailed notices were returned, to A.B. Data. However, in preparing this Motion, Class Counsel learned that additional updated addresses for these persons may be ascertainable, and that at least one mailing address was incorrect. Class Counsel have phone numbers and/or email information for most of these approximately 33 class members and, if leave is granted, will request the social security numbers of the APDs included in this query. Class Counsel therefore request an opportunity to use that information to determine whether any updated mailing addresses may be found and/or to confirm receipt of the notice and, ask that they be given an additional opportunity to claim in, similar to the fourteen class members

---

[2] It is Class Counsel's understanding that Cook County maintains social security numbers for class members who worked as APDs, but not for law clerks.

described above. A.B. Data is prepared to conduct these searches and process any additional notices and, if necessary, claim forms within the thirty days requested.

## IV. FINAL APPROVAL IS APPROPRIATE BECAUSE THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE

### A. The Settlement Agreement is Fair, Reasonable and Adequate for the Reasons Set forth in the Preliminary Approval Motion and Order

Settlement of class action litigation is favored by federal courts. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). Class settlements must be approved by the district court and the court's inquiry is limited to the consideration of whether the proposed settlement is fair, reasonable, and adequate. *Id*. In determining whether a class settlement meets that standard, courts in the Seventh Circuit consider a variety of factors including: (a) the strength of plaintiffs' case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *In re Mexico Money Transfer Litig*., 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) *citing Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985). On December 1, 2018, Rule 23(e)(2) was amended to set forth a list of criteria a court must address in approving a settlement. Fed.R.Civ.P. R 23(e)(2). The amendments do not displace any factor previously relied upon by federal courts, but rather, their goal is to focus the court on core concerns that should guide its decision whether to approve the proposal. 2018 Advisory Committee Notes, Fed.R.Civ.P. 23(e)(2). See, Doc. 249, at 15.

As Plaintiffs set forth in their preliminary approval motion, the monetary and non-monetary provisions of the Settlement Agreement satisfy each of these criteria. Doc. 249, at 11-16. No class member has objected to the terms of the settlement and no class member has opted

6

out. As such, the settlement continues to meet these requirements, for the reasons set forth in the Court's preliminary approval order. Doc. 250.

**B.** **The Proposed *Pro Rata* Distribution of the Settlement Fund to Individual Class Members Is Fair, Reasonable and Adequate**

The claim-in process has been completed, save for the additional time requested on behalf of a very limited number of class members, and Class Counsel and the Claims Administrator's proposed allocation of the settlement fund is fair, reasonable, and adequate for the following reasons.

Each claimant filled out the same claim form, which was approved by the Court in its preliminary approval order. See, Doc. 249-8, Doc. 253, ¶4. The claim form required each claimant to certify, under oath, that she is female, that she worked as an Assistant Public Defender or Law Clerk during the relevant time period, and that her responses were true and accurate to the best of her personal knowledge and belief. Doc. 249-8.

The information sought in the claim form was objective and grounded in the evidence and claims in this suit. See, Doc. 202. The claim form asked for detailed information regarding the nature and extent of harassment each claimant personally experienced, including for instance, estimates of the number of times detainees masturbated at the claimant with penises exposed, the number of times detainees masturbated with penises in their clothing, the number of indecent exposure incidents that did not involve masturbation, whether the claimant was touched by detainees in an unwanted sexual manner, whether masturbation incidents occurred while the claimant was locked in a cell or room with the detainee, whether the claimant was exposed to semen or other bodily fluids, rape threats and other oral harassment experienced. Doc. 249-8.

7

The claim form also asked for detailed information regarding physical and emotional damages claimants suffered as a result of detainee sexual misconduct, including for instance, the specific identification of symptoms and impairments (anxiety, sleeplessness, depression, etc.), the names of treaters, dates of consultation, and resulting diagnoses, if any. The claim form also asked claimants to identify any negative professional ramifications related to the harassment, including for instance, resigning from the Public Defender's office, foregoing applying for a promotion the claimant otherwise would have applied for, or taking paid leave days as a result of harassment by detainees. The claim form asked whether the Claimants were APDs impacted by the "lockup ban" Amy Campanelli implemented in October 2017 barring APDs from entering the lockups. See, Doc. 202, at 30.

The claim form sought detailed information regarding reports claimants made about detainee sexual harassment incidents to the Defendants. It asked whether claimants filed criminal charges in connection with any incident of detainee sexual harassment. It also asked whether the claimants provided information, i.e., gave interviews or provided documents to Class Counsel, in connection with the suit.

Two-hundred-thirty two (232) class members submitted claim forms. Exh. 2, ¶13. This is an acceptable participation rate considering the fact that individual class members had varying levels of contact with detainees, an issue explained at class certification. See, Doc. 218, at 21-22. Further, class members who did not claim in will benefit from the injunctive relief provided by the settlement, which creates a significantly safer work environment for female APDs and law clerks going forward.

### C. The Claim Form Scoring Rubric and Proposed Distribution of the Settlement Fund Are Fair, Reasonable and Adequate

Class Counsel and the Claims Administrator created a scoring rubric to score the claim form responses that is well-grounded in the claims and evidence in this suit. Exh. 2, ¶¶16-18. The rubric and scoring methodology were also fair, reasonable and adequate.

Under the rubric, a maximum of 100 potential Award Units was available. *Id.*, ¶18(e). A maximum of forty Award Units was available for answers to the "Harassment Experienced" section of the claim form (Questions 6-15); a maximum of twenty Award Units was available for the Reporting section (Questions 16-19); a maximum of thirty-eight Award Units was available for answers to the Damages section (Questions 20-24); and a maximum of two Award Units was available for answers to the Participation in the Lawsuit section (Question 25). *Id.*, ¶18(f).

With respect to Section IV (Harassment Experienced), greater weight was given to forms of harassment which were generally more severe based on the evidence in this case (i.e., masturbation with penises exposed, exposure to semen, batteries, and attacks that occurred in a locked room) versus forms of harassment that were comparably less severe (i.e., oral harassment). See, Doc. 202; Ex. 2, ¶18(g).

With respect to Section V (Reporting), class members were credited for their estimated number of attempts to report incidents of sexual harassment to any of the three Defendants. Ex. 2, ¶18(h). Class members who filed criminal charges in connection with detainee sexual harassment received the full 20 award units available for the reporting section because the evidence in this case showed that filing criminal charges against their own and/or their colleague's clients was strongly discouraged and thus caused special difficulties for class members. *Id.*, ¶18(h)(iii); and see, Doc. 202, at pp. 17-19. Filing criminal charges was less

common than other forms of reporting, helped bring greater attention to the issue of detainee masturbation, and potentially subjected the class member to discouragement or retaliation. *Id.* Claimants received five Award Units for reports to a Sheriff's Deputy, to management of the Public Defender's Office, or the County's EEO officials, as these forms of reporting were also discouraged and also put the Defendants on notice of the problem.

With respect to Section VI (Damages), physical and emotional distress damages comprised 55% of the total potential Award Units. Exh. 2, at ¶18(i). Significant value was accorded to claimants who identified treaters and diagnoses in response to the questionnaire as opposed to claimants who indicated symptoms with no formal diagnoses. *Id.* The remaining 45% of award units were allocated for professional ramifications related to the hostile work environment. *Id.* Greater weight was accorded to more serious ramifications, for instance a resignation, than to other work-related effects such as using leave time or not taking on a client or case assignment. *Id.*

Finally, with respect to Section VII (participation in the suit), class members who provided information for the suit (for instance by in-person or phone interviews with Class Counsel or providing documents), were allotted two Award Units as their efforts helped advance the litigation and bring relief for the class as a whole. *Id.*, ¶18(j).

The Claims Administrator used the rubric to assign a score to each Claimant based on her answers. *Id.*, ¶19. The Claims Administrator's proposed *pro rata* distribution of the settlement fund is based on this scoring. *Id.* The maximum potential score was 100 Award Units. *Id.* The highest score was 87.9 Award Units resulting in a proposed estimated award of $134,153.03. The lowest score (other than two claimants who received zero Award Units) was 16 Award Units resulting in a proposed estimated award $244.19. The median (mid-point) score was 22.22

Award Units resulting in a proposed estimated award of $33,912.18. The mean (average) score was 26.86 Award Units, resulting in a proposed estimated award of $40,991.38[3]. *Id*. Class Counsel submit that this is a fair and reasonable allocation of the settlement fund in that it treats class members equitably relative to each other, and because the distribution is based on both the class members' individual experiences attested to in their claim form responses and the evidence in the record as a whole. To the extent one or more of the persons described above who may not have received notice to claim in, the Claims Administrator would treat them similar to the other claim ins, add them to the computations, and re-apportion the claims.

> **D.** **Late Claim Forms and the Claim Form Submitted by a Class Member Omitted from Exhibit A to the Settlement Agreement Should be Credited**

Eight claimants submitted their claim forms after the deadline date of May 29, 2020. Exh. 2, ¶14. As follows, Class Counsel request the Court credit these claims and allow these class members to participate.

Courts have discretion to permit the filing of late claims when the equities, on balance, favor the claimants. *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985). In balancing the equities, courts consider several factors, including the danger of prejudice to Defendants, the length of the delay and its potential impact on judicial proceedings, the reason for delay, and whether Plaintiffs acted in good faith. *Craft v. Health Care Serv. Corp.*, No. 14 C 5853, 2018 U.S. Dist. LEXIS 184108, at *14-19 (N.D. Ill. Oct. 26, 2018) (citations omitted).

Here, these factors favor inclusion of the late claims. The length of delay was insubstantial -- all claimants submitted claims with sufficient time for the Claims Administrator to process them with the other claims, and three of the claims were just one day late. Exh. 2, ¶14.

---

[3] The full unredacted Claims Output can be made available for the Court's *in camera* review.

For similar reasons, the timing of the claims has no impact on the proceedings, and the Final Approval proceedings and hearing will go forward as scheduled. Each late claimant has provided a sworn statement explaining the reasons her submission was not timely, and all acted in good faith. Group Exh. 3. The reasons include delays caused by the postal service (for instance because the claim form was sent to a prior address) or by circumstances relating to the coronavirus pandemic. *Id. see*, *Craft,* 2018 U.S. Dist. LEXIS 184108, at *20-21. The additional claims do not increase liability to the Defendants or cause them any prejudice at all. Further, the settlement agreement expressly provides that the distribution of the settlement fund will be solely determined by the Claims Administrator and Class Counsel and that Defendants will not object to their proposed allocations. Doc. 249-3, ¶25; *and see*, *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig*., No. 06 C 7023, 2018 U.S. Dist. LEXIS 33956, at *15-19 (N.D. Ill. Mar. 2, 2018).

Crediting these submissions will further the aims of the litigation by compensating class members who attested that they were subjected to the egregious sexual harassment at issue in this suit and for which the settlement fund was created. The late claims do not prejudice the other claimants or significantly impact their awards as the late claimant's claims constitute an insignificant portion of the settlement fund and comprise only 1.3% of the total Award Units for the claimants as a whole. Exh. 2, ¶14.  For all these reasons, Class Counsel therefore request the Court approve their proposed distribution to these late claimants.

In addition, one claimant, Jessica Brierly-Snowden, submitted a timely claim, but was not included on the Class List attached as Exhibit A to the Settlement Agreement and was not previously identified by the Public Defender. The Public Defender has confirmed that this Claimant worked during the relevant time period and should have been on the List. Class

Counsel therefore requests that the class list be amended and that her claim be credited, as set forth in the Proposed Final Approval Order. Exh. 1. Defendants do not oppose her inclusion.[4]

### E.    The Proposed Service Awards Are Fair, Reasonable and Adequate

Class Counsel requests service payments of $25,000 for each of the six Class Representatives (Crystal Brown, Saran Crayton, Samantha Slonim, Celeste Addyman, Erika Knierim, and Julie Hull); $15,000 for the three Named Plaintiffs who gave depositions (Rachelle Hatcher, Julie Willis, and Brett Gallagher); $10,000 for the eight Named Plaintiffs who answered sworn interrogatories but did not give depositions (Stephanie Schlegel, Ashley Shambley, Niyati Thakur, Kyan Keenan, Takenya Nixon, Coryn Steinfeld, Rocio Armendariz, and Carly Patzke); and $5,000 for three class members (Sarah Fransene, Patricia Dillon and Judie Smith) who assisted the suit by providing sworn testimony and/or met with class counsel extensively to help prepare the suit to be filed. Doc. 249-2, ¶40-44. The class notice advised class members of the proposed service payments and no class member objected to the settlement on any basis, including the service payments. Exh. 2, Attachment A, at 6. As follows, the awards are fair, reasonable and adequate pursuant to Seventh Circuit jurisprudence.

"Incentive awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Furman v. At Home Stores LLC*, No. 1:16-cv-08190, 2017 U.S. Dist. LEXIS 73816, at *5 (N.D. Ill. May 1, 2017)

---

[4] Upon the discovery that Ms. Brierly-Snowden was not included on the Class List, Class Counsel re-reviewed past class lists produced by Defendants to determine whether she had previously been disclosed as a potential class member. The claimant's name did not appear in any lists Defendants produced however during their review, Class Counsel identified two other female APDs that Defendants previously disclosed, but were not included in updated lists and/or the final Class List. Class counsel investigated further and found that one of the female APDs had passed away and would be unable to submit a claim form in this matter. The other female APD confirmed after reviewing the Notice and Claim Form, that she did not wish to participate in the settlement.

(citations omitted). In deciding whether such an award should be approved, relevant factors a court may consider include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998); *Am. Int'l Grp., Inc. v. Ace Ina Holdings, Inc.*, No. 07 CV 2898, 2012 U.S. Dist. LEXIS 25265, at *57-58 (N.D. Ill. Feb. 28, 2012).

Incentive awards are of special importance in employment cases, where employees incur risk to their professional reputations, careers and livelihoods, on top of the other risks that come with filing suit, such as the potential for shifting costs or possibly attorneys' fees if the suit is deemed frivolous. *Briggs v. PNC Fin. Servs. Grp.,* No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *8-9 (N.D. Ill. Nov. 29, 2016); *Beesley v. Int'l Paper Co.*, No. 3:06-cv-703-DRH-CJP, 2014 U.S. Dist. LEXIS 12037, at *13-14 (S.D. Ill. Jan. 31, 2014) ("ERISA litigation against an employee's current or former employer carries unique risks and fortitude, including alienation from employers or peers."); *Sanchez v. Roka Akor Chi. LLC*, No. 14-cv-4645, 2017 U.S. Dist. LEXIS 65478, at *10-11 (N.D. Ill. Apr. 20, 2017) ("Although Plaintiff was no longer employed by Defendant when he filed the Complaint, he risked retaliation from future employers for the benefit of all Settlement Class Members."); *Velez v. Majik Cleaning Serv.,* 2007 U.S. Dist. LEXIS 46223, at *23 (S.D.N.Y. June 22, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers.") (quoted source omitted).

As a result of these factors, courts routinely award higher service payments in class actions alleging employment discrimination as compared to other types of suits. *See*, *Scovil v.*

14

*FedEx Ground Package Sys.*, No. 1:10-CV-515-DBH, 2014 U.S. Dist. LEXIS 33361, at *22-26 (D. Me. Mar. 14, 2014) (Noting a 2006 empirical study recognized incentive awards in employment discrimination cases were higher than in other class action suits), *citing,* Theodore Eisenberg & Geoffrey P. Miller, Incentive Awards to Class Action Plaintiffs: An Empirical Study, 53 UCLA L.Rev. 1303, 1308 (2006) (additional string citation omitted).

These factors are fully applicable here. The Plaintiffs for whom awards are requested made substantial contributions to this action that directly impacted the excellent result that has been achieved for the class as a whole. They did so despite risks to their careers that were well-documented in this litigation. *Inter alia*, Defendants repeatedly discouraged female APDs and law clerks from reporting masturbation incidents throughout the relevant period, as detailed in Plaintiffs' Motion for Class Certification. Doc. 202 at 17-24. APDs who filed complaints or charges against detainees were viewed by the Public Defender's office as not cut out for the job, and the Defendants collectively deemed masturbation incidents as something APDs should simply handle on their own as part of the job. *Id.* Class members who did come forward, especially those who filed criminal charges, were shunned by management and senior APDs. *Id.* Public Defender Amy Campanelli opposed measures implemented by the CCSO to prevent the masturbation attacks and personally apologized to detainees after they were handcuffed in February 2017. Doc. 202, at 27. The employees who put their names to this action risked alienating their superior, the Public Defender herself, along with senior and supervisory APDs who are influential in case assignments and promotions. Further, they risked alienating the Sheriff and his deputies who are responsible for their physical safety in the lockups and jail. *Id.*

In addition, scores of news articles about the lawsuit and its attention-grabbing allegations are readily available on the internet in an age when prospective employers routinely

15

search the internet before bringing in new hires. Further, the preliminary injunction orders in this suit imposed policy changes on the Cook County courtrooms where the Plaintiffs practice law every day, and one judge even threatened to bring ARDC charges if APDs did not enter the lockup and defy Ms. Campanelli's "lockup ban" in October 2017. Doc. 202, at 30-31. The Class Representatives and Plaintiffs for whom service awards are sought thus spearheaded this action knowing it could negatively impact their careers in myriad ways in the criminal justice bar, with no prior assurance of success.

Bringing this action and prosecuting it for almost three years also created additional pressures and time-consuming obligations for APDs whose jobs were already notoriously difficult. The six Class Representatives spent substantial time consulting with Class Counsel about the case and settlement negotiations (including the extensive injunctive measures), providing depositions and voluminous discovery regarding a wide range of subjects which required them to revisit traumatic attacks by detainees, to testify about their private medical histories, and to describe in detail the damages they suffered under examination by counsel for the Defendants. Doc. 249-2, ¶40-44. The fact that the Class Representatives provided evidence and testimony regarding their private medical histories and the myriad other ways in which they were impacted by the harassment substantiated damages for the class as a whole and helped make the settlement possible. The six Class Representatives are also providing general releases in connection with the settlement. These factors support the requested $25,000 awards on their behalf.

The Named Plaintiffs in this suit also spent substantial time on the case and provided information to Class Counsel that was used for both settlement and the litigation. Ms. Hatcher, Ms. Willis and Ms. Gallagher each gave full depositions, answered interrogatories and produced

16

documents and ESI on the gamut of issues in the suit, similar to the class representatives above. Their depositions were pivotal to Plaintiffs' class certification motion, and Plaintiffs cited to them throughout their Memorandum. Doc. 202. Mses. Schlegel, Shambley, Thakur, Keenan, Nixon, Steinfeld, Armendariz, and Patzke also answered detailed and extensive written discovery, interrogatory answers and provided other information to Class Counsel that was invaluable to the litigation and settlement, in addition to lending their names to this action. *Id.*, and see, Doc. 249-2, ¶40-44.

The three additional class members for whom service payments are requested (Sarah Fransene, Patricia Dillon, and Judie Smith) also made impactful contributions. *Id.* Ms. Fransene was subjected to a particularly horrific attack that occurred while she was in a locked room and that she detailed in a sworn declaration submitted in connection with Plaintiffs' class certification motion. Doc. 202-40. This testimony provided support for Plaintiffs' claims that the harassment at issue in this suit was sufficiently analogous to the attack on male APD Rick Kruss to create an inference of discriminatory intent, an element of liability for Plaintiffs' equal protection claims. *Id.* Ms. Fransene also filed an EEOC charge which alleged she did not receive a promotion in retaliation for her opposition to Defendants' practices at issue in this suit, which provided additional evidence that class members were discouraged from reporting incidents. Doc. 249-2, ¶40-44. Ms. Dillon submitted a sworn Declaration in support of Plaintiffs' Motion for Preliminary Injunction at the outset of the suit that helped create the injunctive measures that are part of the settlement and that successfully mitigated masturbation incidents. *Id., and* Doc. 9-9. Ms. Smith assisted the suit in its initial stages by meeting with Class Counsel extensively prior to help prepare the suit to be filed, and thus helped counsel frame the issues for the entire litigation. *Id.*

These proposed service payments are comparable to awards approved by courts in this District and are warranted based on the considerations set forth above. *Chesemore v. Alliance Holdings, Inc.,* No. 09-cv-413-wmc, 2014 U.S. Dist. LEXIS 123873, at *17 (W.D. Wis. Sep. 4, 2014) (Noting, "[D]istrict courts in this circuit have awarded incentive fee awards ranging from $5,000 to $25,000."); *Briggs v. PNC Fin. Servs. Grp.,* No. 1:15-cv-10447, 2016 U.S. Dist. LEXIS 165560, at *9 (N.D. Ill. Nov. 29, 2016) (citing empirical study finding that the mean incentive award in employment class actions is approximately $12,000); *Will v. Gen. Dynamics Corp.*, No. 06-698-GPM, 2010 U.S. Dist. LEXIS 123349, at *12 (S.D. Ill. Nov. 22, 2010) ("Awards of $25,000 for each Plaintiff are well within the ranges that are typically awarded in comparable cases.") (citations omitted).

### F.     The Proposed Attorney Fee Is Reasonable

On May 22, 2020, prior to the end of the objection period, Class Counsel filed Plaintiffs' Motion for Attorneys' Fees which sought attorneys' fees and costs in an amount equal to thirty percent (30%) of the Settlement Fund, or Four Million Two-Hundred Thousand Dollars ($4,200,000). Doc. 261. Plaintiffs incorporate the arguments and authorities set forth therein by reference. The notice explained to class members that Class Counsel would file a motion for fees and costs in this amount on or before May 22, 2020. Doc. 249-3, at 41-42. No class member objected to the settlement, including the requested fee. The requested fee is in line with awards approved in similar cases and Seventh Circuit jurisprudence, and it should be granted for the reasons set forth in the Motion.

### V.     TIMING OF FINAL APPROVAL ORDER AND ENTRY OF JUDGMENT

Plaintiffs request the Court enter the proposed Order attached as Exhibit 1 after the Final Approval Hearing. The proposed Order allows Class Counsel the additional time described

18

above to contact the Class Members who may not have received Notice and to submit a supplemental report. After that process is completed, and pursuant to the proposed Final Approval Order, Plaintiffs will request the Court enter the Order and Final Judgment attached as Exhibit 1A dismissing the suit with prejudice as set forth in Paragraph 23 of the Settlement Agreement. In so doing, Plaintiffs request the Court time its entry of the Proposed Order and Final Judgment attached as Exhibit 1A on the day before one of the Internal Deadlines listed in Exhibit B attached for the Cook County Board Finance Meetings and direct the Cook County Board to seek approval of the settlement pursuant to Paragraph 24 of the Settlement Agreement at the next Board meeting in order to allow Plaintiffs time to bring a Rule 59 motion if for some reason it is not approved, contrary to the assurances Cook County's counsel made to Plaintiffs and the Court during the negotiations. Plaintiffs have attached hereto as Exhibit 1B an email from Cook County's counsel with the relevant dates and internal deadlines for the Board's meetings. Plaintiffs have attached as Exhibit 1C a final copy of the Settlement Agreement signed by all parties.

## CONCLUSION

**WHEREFORE,** for the reasons set forth above, the Court should grant the Motion for Final Approval of the Proposed Settlement, and issue the Orders attached hereto as Exhibit 1 and Exhibit 4 (allowing Class Counsel to begin contacting the Class Members noted above before the Final Approval Hearing).

Respectfully submitted,

/s/ Robin Potter and M. Nieves Bolanos
Class Counsel

Robin Potter, Esq.
M. Nieves Bolaños, Esq.
POTTER BOLAÑOS LLC
111 East Wacker Drive, Suite 2600
Chicago, Illinois 60601
(312) 861-1800
robin@potterlaw.org
nieves@potterlaw.org

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the above and foregoing

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF

CLASS ACTION SETTLEMENT was served upon all parties by e-filing this **11th** day of

**September**, 2020 with the Clerk of the Court using the CM/ECF system.


/s/ Robin Potter
One of Plaintiffs' Attorneys